**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiffs and Class

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
JOSEPH S. GELMIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

       Plaintiff,

       vs.

EARL W. COLE, III, MICHAEL L. FALCONE, WILLIAM S. HARRISON, MARK K. JOSEPH, MELANIE M. LUNDQUIST, GARY A. MENTESANA, ROBERT J. BANKS, CHARLES C. BAUM, RICHARD O. BERNDT, EDDIE C. BROWN, ROBERT S. HILLMAN, DOUGLAS A. McGREGOR, ARTHUR S. MEHLMAN, FRED N. PRATT, JR., and MUNICIPAL MORTGAGE & EQUITY, LLC,

       Defendants.

---------------------------------------------------------------------------X
*[caption continues]*

CASE No.: 08-CV-980 (RMB)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF THE MMA INVESTORS FOR APPOINTMENT AS LEAD PLAINTIFFS; APPROVAL OF COUNSEL; AND IN OPPOSITION TO COMPETING MOTIONS**

<u>CLASS ACTION</u>

```
---------------------------------------------------------------------------X
JULES ROTHAS, Individually and on Behalf of All Others      CASE NO. 08-CV-01120 (RMB)
Similarly Situated,

                Plaintiff,                                  CLASS ACTION

        vs.

MUNICIPAL MORTGAGE & EQUITY, LLC,  MARK K.
JOSEPH,  MICHAEL L. FALCONE,
WILLIAM S. HARRISON, and DAVID B. KAY,

                Defendants.
---------------------------------------------------------------------------X

---------------------------------------------------------------------------X
ARNOLD J. ROSS, Individually and on Behalf of All Others    CASE NO. 08-CV-1299 (RMB)
Similarly Situated,

                Plaintiff,                                  CLASS ACTION

        vs.

EARL W. COLE, III, MICHAEL L. FALCONE,
WILLIAM S. HARRISON, MARK K. JOSEPH, and
MUNICIPAL MORTGAGE & EQUITY, LLC,

                Defendants.
---------------------------------------------------------------------------X
```

*[caption continues]*

```
-----------------------------------------------------------------------------X
ALEX D'ANGELO, Individually and on Behalf of All Others      CASE NO. 08-CV-01331 (RMB)
Similarly Situated,

        Plaintiff,                                           CLASS ACTION

        vs.

MUNICIPAL MORTGAGE & EQUITY, LLC, MICHAEL L.
FALCONE, WILLIAM S. HARRISON, EARL W. COLE,
III, MARK K. JOSEPH, and MELANIE M. LUNDQUIST,

        Defendants.


-----------------------------------------------------------------------------X
NAOMI RAPHAEL, Individually and on Behalf of All Others      CASE NO. 08-CV-02190 (RMB)
Similarly Situated,

        Plaintiff,                                           CLASS ACTION

        vs.

MUNICIPAL MORTGAGE & EQUITY, LLC, MARK J.
JOSEPH, MICHAEL L. FALCONE, WILLIAM S.
HARRISON, MELANIE M. LUNQUIST, DAVID B.
KAY,CHARLES C. BAUM, EDDIE C. BROWN, ROBERT
S. HILLMAN, ARHTUR S. MEHLMAN, and FRED N.
PARATT, JR.

        Defendants.
-----------------------------------------------------------------------------X
```

## PRELIMINARY STATEMENT[1]

On March 31, 2008, Plaintiffs Norman Feinberg, Robert W. Stark,[2] Leonard Klorfine, Daryl Bonyor,[3] and Alan Fetch (collectively "Movants" or "MMA Investors") timely moved this

---

[1] All movants agree that the cases should be consolidated. Thus, this opposition will not address consolidation.

[2] Mr. Stark's purchases were made by him in a joint account he has with his wife, Jamie Stark.

Court to be appointed Lead Plaintiffs and for approval of their selection of the Rosen Law Firm, P.A. as Lead Counsel.[4] As demonstrated in their opening papers and upon further analysis of the four other competing movants,[5] the MMA Investors are the movant with the largest financial interest in this litigation *and* that has made the requisite *prima facie* showing of the group's adequacy and typicality.

All movants agree, as they must, that under the PSLRA, the lead plaintiff is a "person or a group of persons" that has the largest financial interest in the relief sought by the class and otherwise satisfies the adequacy and typicality requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(B)(iii)(I); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); *In re Fuwei Films Secs. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008).

The MMA Investors have suffered $1,002,735.28 in losses. Only two of the competing movants claim larger losses than the MMA Investors: the three-member FAFN/Slater Group ($1,454,865.89 in losses) and the four-member Rawden Group ($1,324,322.17 in losses). A chart of the losses claimed by each competing group is as follows:

---

[3]   Ms. Bonyor's purchases were made by her individually and as the trustee of a revocable trust that benefits her mother.

[4]   A similar motion was filed by the MMA Investors in the District of Maryland on that date. An opposition substantially similar to this opposition is being filed in the District of Maryland today.

[5]   Competing movants that have not withdrawn their motions are: (1) The FAFN/Slater Group consisting an investment advisory network and two investment vehicle entities allegedly represented by Ken Slater; (2) the Kremser Group, a group consisting of five individuals; (3) the Yates Group, a group of five individuals; and (4) the Rawden Group, a group consisting of four individuals.

Chart No. 1.

| Movant | Approximate Losses as Claimed by Each Movant[6] |
|---|---|
| 1.   ~~FAFN/Slater Group~~ | ~~$1,454,865.89~~ Inadequate |
| 2.   ~~Rawden Group~~ | ~~$1,324,322.17~~ Inflated Losses over 100% |
| 3.   MMA Investors | $1,002,735.38 |
| 4.   Kremser Group[7] | $792,258.87 |
| 5.   Yates Group | $757,010.65 |

As discussed below, the movant in the first position, the FAFN/Slater group, is inadequate to serve as lead plaintiff. Group member FAFN, a "network" of investment advisors, has failed to demonstrate that it has standing to pursue this action on behalf of its numerous undisclosed clients, and group member Ken Slater is a serial plaintiff—precisely the type of plaintiff the PSLRA was enacted to prevent from serving as a lead plaintiff. Thus, the FAFN/Slater group must be rejected.

The movant in the second position, the Rawden Group has inflated their losses by more than double. Much of their claimed losses result from "in-and-out" transactions, where both the purchase and sale are made prior to any revelation of the alleged fraud to the market. *But see Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (holding that securities plaintiff must allege and prove a causal connection between the alleged fraudulent statement or conduct and plaintiff's economic loss). Since they sold their stock prior to the January 28, 2008 corrective disclosure, they were never damaged by the fraud and have no compensable losses for

---

[6] Chart No. 1 uses the varying PSLRA lookback prices for held shares used by the movants in their loss charts submitted to the Court. Although the lookback prices utilized by the competing movants differ only by pennies, in the interests of consistency the lookback price provided by each in its original loss chart is used here in calculating that movant's approximate loss.

[7] The Kremser Group's calculated losses were inflated, as they included shares purchased outside of the Class Period alleged in any of the actions before this Court. Mr. Kremser included a purchase of 25,000 shares was made on January 29, 2008. Likewise, Mr. Kornfield of the Kremser Group listed in his loss chart 4,000 shares that were purchased on January 29, 2008. These 29,000 shares have been omitted from the analysis.

those shares. When eliminating these "in-and-out" transactions, which the court must do at the lead plaintiff stage as discussed below, the Rawden Group has only $613,925.64 in losses.

In contrast, the MMA Investors, having suffered the next largest loss ($1,002,735.38), has the greatest financial interest in the litigation and satisfies the pertinent requirements of Rule 23. The MMA Investors have further demonstrated their adequacy by filing herewith a Joint Declaration explaining the group's genesis; the group's knowledge of the action and its duties as serving as lead plaintiff; the decision-making process of the group; the modes of communication that are available to the group; and the like. *See* Kim Decl., Ex. 1.[8]

Thus, having the largest financial interest *and* otherwise satisfying the pertinent requirements of Rule 23, the Court must appoint the MMA Investors as Lead Plaintiffs, approve their selection of counsel, and the deny all other competing motions.

## ARGUMENT

I.  **THE FAFN/SLATER GROUP IS INADEQUATE**

    A.  **Group Member FAFN, a Network of Investment Advisors,[9] Has Failed to Demonstrate It Has Standing to Sue on Behalf of Its Clients**

Courts in this district and elsewhere have repeatedly required that investment advisors seeking to serve as lead plaintiffs that did not purchase the stock for their own accounts, precisely such as FAFN, must make an evidentiary showing that the advisor is the attorney-in-

---

[8]    All references to the "Kim Decl., __" refer to the Declaration of Phillip Kim, filed in support hereof.

[9]    There should be no confusion amongst the competing movants: FAFN is not the type of institutional investor (i.e., pension funds) that Courts have given a certain level of preference in the lead plaintiff appointment process. Investment advisors and other private investment entities are notorious "disappearing lead plaintiffs." *See e.g., Blau v. Harrison,* 2006 WL 850959, at *1 n.1 (N.D. Ill. Mar. 24, 2006) (American Growth Fund withdrew as lead plaintiff)*; In re NeoPharm, Inc. Sec. Litig.,* 2004 WL 742084, at *1 (N.D. Ill. Apr. 7, 2004) (Larson Capital Management inexplicably withdrew at class certification stage); *In re Conseco, Inc. Sec. Litig.,* 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) (court refused to appoint Thales Management Fund, L.P. because, *inter alia,* "in a case where Thales was appointed lead plaintiff, it subsequently withdrew without explanation")*; Sakhrani v. Brightpoint, Inc.,* 78 F. Supp. 2d 845, 848 (S.D. Ind. 1999) (after being noticed for a deposition, L.A.L.W., Inc. moved to withdraw as lead plaintiff).

fact for their clients *and* have unrestricted decision making authority in order to have standing to sue in a securities class action, i.e., that that the investment advisor is a "purchaser" under the federal securities laws.  *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (holding that the mere fact a client grants authority to an investment manager to purchase stock on his or her behalf does not confer authority to commence suit on his or her behalf; rather, investment advisor must be attorney-in-fact for its clients with unrestricted decision making authority); *Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007) (same); *In re eSpeed, Inc. Secs. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005) ("In order for an investment advisor to attain standing on behalf of investors[,] the transactions in question must have been executed as if by a single person.  Moreover, the advisor must be the attorney in fact for his clients, and he must be granted bother unrestricted decision-making authority and the specific right to recover on behalf of his clients."); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp.2d 627, 633-34 (D.N.J. 2002).

      Here, there is absolutely no showing that FAFN has unrestricted decision making authority on behalf its clients with attorney-in-fact status—let alone that the claimed transactions were made and executed as if by a single person.  While FAFN has submitted a declaration of its CEO, George Gay (Docket No. 20), the declaration creates more questions than it answers.  The declaration is devoid of any statement that FAFN has unrestricted decision making authority on behalf of its clients or that FAFN has attorney-in-fact status; does not identify the clients; does not identify the particular investment advisors; and does not even state if Mr. Gay or any of FAFN's alleged clients even reviewed a complaint.  *See* Docket no. 20.  As we know from the Court's hearing on March 10, 2008, FAFN's attorney was not even certain if written consent had been received by FAFN to proceed in this case.  This is no surprise, as FAFN appears to be

nothing but a loose confederation of investment advisors who can join by simply paying FAFN a subscription fee for various membership levels. *See* Kim Decl., Ex. 2. Thus, without more,[10] FAFN does not have standing to sue in this case—let alone serve as lead plaintiff, and the entire group must be rejected.

### B. Ken Slater and His Investment Vehicles Are Serial Plaintiffs, Precisely the Type of Plaintiffs the PSLRA Was Enacted to Avoid

Mr. Slater has been a busy litigant for his chosen lead counsel, the Wolf Haldenstein firm. Mr. Slater is currently a named plaintiff in a securities class action lawsuit entitled *Kenneth Z. Slater, as Manager of KT Investments, LLC, v. Thornburg Mortgage, et al.*, Case No. 1:07-CV-008150-JB-WDS (D.N.M.), filed by the Wolf Haldenstein firm. *See* Kim Decl., 3. Any mention of this case is notably missing from Mr. Slater's declaration, to which he swore under penalty of perjury was true and correct. *See* Docket No. 19. On January 3, 2008, the Wolf Haldenstein firm filed a derivative action against officers and directors of Washington Mutual entitled *Kenneth Slater, as Manager of KT Investments, LLC v. Kerry K. Killinger, et al.*, 2:08-cv-00005-RAJ (W.D. Wash.). *See* Kim Decl., Ex. 3. On March 4, 2008, the Wolf Haldenstein firm filed a derivative action against officers and directors of Bank of America entitled *KT Investments, LLC v. Lewis, et al.*, (Del. Ch.) once again using the same Ken Slater as a plaintiff. *Id.*

On October 15, 2004, the Wolf Haldenstein Firm filed a securities class action against March & McLennan, that lawsuit entitled *The Kendall Trust v. March & McLennan, et al.*, (S.D.N.Y.) using an entity represented by Mr. Slater once again as a plaintiff. *Id.* On July 27, 2003, the Wolf Haldenstein firm filed a securities class action entitled *Ken Slater v. Central*

---

[10] *Olsen v. N.Y. Comm. Bancorp, Inc.*, 233 F.R.D. 101, 107-08 (E.D.N.Y. 2005) (investment advisor appointed only because the advisor's funds' "respective shareholders have each entered into a contract …explicitly authorizing [the advisor] to control all investments and to commence litigation on behalf of the funds").

*Parking System, Corp.*, *et al.*, Case no. 3:03-cv-00546 (M.D. Tenn.).  Mr. Slater was ultimately appointed a lead plaintiff in that action.  *Id.*  This action is thus at least the sixth shareholder litigation in which Wolf Haldenstein used Mr. Slater or his entities as a plaintiff – yet only two actions were disclosed to the Court in Mr. Slater's declaration.  *See Burke v. Ruttenberg,* 102 F.Supp.2d 1280, 1320 (N.D. Ala. 2000) (finding compliance with certification requirements required for all lead plaintiff candidates).

Such serial litigation begun by the same firm and Mr. Slater is precisely the kind of 'serial plaintiff' activity the PSLRA was enacted to avoid.  "Class counsel's use of serial plaintiffs raises the specter of credibility problems and conflicts of interest, among other issues." *In re Chiron Corp. Secs. Litig.*, 2007 WL 4249902 * 12 (N.D. Cal. Nov. 30, 2007); *see also Chiaretti v. Orthodontic Ctrs. of Am.*, 2003 U.S. Dist. LEXIS 25264 (E.D. La. Aug. 28, 2003) (stressing that prevention of over-representation is a primary tenet of the PSLRA).[11]

Moreover, it is unclear whether Mr. Slater is not spread too thin based on the number of cases he filed in 2008 alone.  It is no wonder, in his declaration he agreed that FAFN in the alternative should be appointed sole-lead plaintiff.  Indeed, despite Mr. Slater's extensive experience in securities litigation, Mr. Slater's declaration does not even mention that he has reviewed a complaint in this action.  *See* Docket no. 19; *see also In re Enron Corp. Secs. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002) ("[S]imultaneous participation in securities class actions or applications for appointment as lead plaintiff could result in the []investor having fewer resources available and being less able to police counsel's conduct, and thus undermine the purposes of the PSLRA."); *Burke*, 102 F. Supp. 2d at 1320, *citing In re Network Associates, Inc.,*

---

[11] Although Mr. Slater does not exceed the letter of the professional plaintiff limits in 15 U.S.C. § 78u-4(a)(3)(B)(vi), that a person may not serve as a lead plaintiff in 5 securities class actions in any 3 year period, that does not mean that he should escape intense scrutiny as a serial plaintiff as described in *Chiron.*

9

*Sec. Litig.,* 76 F.Supp.2d 1017, 1047 (N.D. Cal. 1999) ("the Reform Act essentially bars from the lead plaintiff role a person … who does not read the complaint before a lawsuit is filed in his or her name"). As such, Mr. Slater is inadequate to serve as Lead Plaintiff.

## II. THE RAWDEN GROUP'S LOSSES ARE INFLATED BY OVER 100% THROUGH "IN AND OUT" TRADES

The four member Rawden Group initially claimed losses of $1,324,322.17, however that number improperly includes losses from "in and out" trades. Indeed, group member Beth Rawden (claimed losses of $420,284.69) and Richard & Isabel Bordow (claimed losses of $290,111.84) are complete "in an out" traders. They therefore have zero compensable losses and no financial interest in this litigation. "In and out" traders are those who both purchase and sell their shares during the class period. Where both the purchase and sale are made prior to any corrective disclosure, *i.e.*, before the end of the class period, such traders may well have no damages–even if the trades result in a loss–because the Supreme Court requires that to be recoverable as damages, the losses must result from the fraud. Proof of causation is typically accomplished by identifying a corrective disclosure of the fraud that causes the stock to drop. "But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342. (holding that securities plaintiff must allege and prove a causal connection between the alleged fraudulent statement or conduct and plaintiff's economic loss).[12] Since Rawden and Bordow of the Rawden Group sold

---

[12] "When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura,* 544 U.S. 336, 343.

all of their shares before the January 28, 2008 corrective disclosure of the fraud, none of the Rawden Group members suffered any compensable damages.[13]

As such, courts have expressed a reluctance to appoint "in-and-out" purchasers who will likely be subject to the unique defenses that they sustained no damages and thus will be unable to plead or prove loss causation. As Judge Garaufis of the Eastern District of New York explained:

> In short, it is clear that under *Dura* and its progeny, any losses that [movant] may have incurred before [defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation. While the *Dura* Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff. *See Kops v. NVE Corp.*, 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006) (refusing to credit competing plaintiff's in-and-out losses, despite the allegation that a partial disclosure occurred before some of those sales).

*In re Comverse Technology, Inc. Sec. Litig.*, 2007 WL 680779 *4 (E.D.N.Y. Mar. 2, 2007) (reversing a magistrate's decision to appoint an "in-and-out" trader as lead plaintiff).[14] Even if there were, arguably, partial disclosures over the course of the class period that could result in

---

[13]   Each of the complaints filed in the related actions identify January 28, 2008 as the date the fraud was first disclosed.

[14]   The Court in *Comverse* went on to provide a compelling example in a footnote:

> It is clear that courts cannot include non-recoverable losses in a calculation of each litigant's financial interest. To illustrate the point, the court offers the following example: If a plaintiff in this case had alleged that it suffered losses from sales of Comverse stock in 1990, years before any alleged misconduct (stock options backdating) had even begun, it is undisputed that such losses would not be recoverable. It follows that a court would be remiss to include such losses in calculating a litigant's approximate recoverable loss, simply because a plaintiff included those losses in its complaint. The facts of this case present a similar challenge. Before calculating a plaintiff's financial interest, the court must first determine what portion, if any, of a plaintiff's losses constitute potential *recoverable* losses for purposes of the necessary PSLRA/Olsten-Lax analysis. And under *Dura,* failure to demonstrate loss causation constitutes a fatal flaw that necessitates removing those losses from the financial interest calculation.

2007 WL 680779, at *5 n.6.

11

recoverable damages, courts have concluded that such questions are best deferred, and the movants who did not face "in-and-out" questions were appointed as lead plaintiffs. *See e.g,. Ruland v. Infosonics Corp.,* 2006 WL 3746716 * 5 (S.D. Cal. June 13, 2006) (finding it "too complicated at [the lead plaintiff appointment] stage of the litigation to make findings of fact regarding any potential partial disclosures and the effect, if any, these disclosures had on the price of the stock" and concluding that "the Court will not consider any losses suffered by [movant] as a result of transactions prior to" the date of the alleged disclosure); *In re Mckesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993, 997-98 (N.D. Cal. 1999) (concluding that even though argument that "fraud premium" varied during class period "may ultimately turn out to be correct," it was "not feasible at this early stage of the litigation" to credit "in-and-out" losses).

Here, Rawden and Bordow, were complete "in-and-out" traders of MMA shares during the Class Period. By excluding their losses altogether, the Rawden Group's losses are reduced from $1,324,322.17 to $613,925.64. FAFN also conducted substantial in-and-out trades, sometimes on the same day. A summary of the financial interests following this required discount to the Rawden Group is set forth below.

Chart No. 2

| Movant | Approximate Losses as Claimed by Each Movant |
|---|---|
| 1. ~~FAFN/Slater Group~~ | ~~$1,454,865.89~~ Inadequate |
| 2. MMA Investors | $1,002,735.38 |
| 3. Kremser Group | $792,258.87 |
| 4. Yates Group | $757,010.65 |
| 5. Rawden Group | $613,925.64 |

In addition to the considerable legal question of whether "in-and-out" traders have compensable damages, there are practical reasons to refrain from appointing individuals who have primarily "in-and-out" trades as lead plaintiffs. In *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960 * 6 (N.D. Ill. Mar. 15, 2005), the Court refused to appoint an "in-and-out"

trader as lead plaintiff because it would "have to use considerable resources to establish that even though it was an in-and-out trader, its losses nevertheless were caused by the alleged fraudulent statements." And it bears noting that when courts have nonetheless appointed "in-and-out" purchasers as lead plaintiffs, this practice has led to summary judgment being granted against the lead plaintiff for failure to show any damages – hardly a desirable result. *See e.g., In re Compuware Sec. Litig.*, 386 F.Supp.2d 913, 920 (E.D. Mich. 2005) (granting summary judgment to defendants because plaintiff had sold defendant's shares before disclosure of the misrepresentation).

As such, Beth Rawden and Richard and Isabel Bordow of the Rawden Group, who have 100% "in and out" trades, should be rejected as lead plaintiffs in favor of those like the MMA Investors who purchased and held their securities throughout the class period and who will not face the significant obstacles of proving that they were damaged.

## III. THE MMA INVESTORS SHOULD BE APPOINTED LEAD PLAINTIFFS

### A. The MMA Investors Has the Largest Financial Interest of the Remaining Movants

As noted in the MMA Investors' Opening Br.[15] at 7, when determining the most appropriate lead plaintiff under the PSLRA, courts do not solely look at financial interest. That is the first step. *Id.* Here, the only movant with a loss greater than the MMA Investors, the FAFN/Slater Group, which, for reasons discussed above, is inadequate to serve as lead plaintiff. Thus, MMA Investors have the largest financial interest.

---

[15] All reference to the "Opening Br. __" refers to the Memorandum of Law in Support of Motion of the MMA Investors to: (1) Consolidate Related Action; (2) Appoint Lead Plaintiffs; and (3) Approve Lead Plaintiffs' Selection of Counsel. Docket no. 23.

### B. MMA Investors Otherwise Satisfy the Requirements of Rule 23

The second step, when determining the most appropriate lead plaintiff under the PSLRA, the Court determines whether a *prima facie* showing of adequacy and typicality has been made by the movant with the largest financial interest. *Fuwei Films*, 247 F.R.D. at 436, 439 (citations omitted). As set forth in the Opening Br. at 10, the MMA Investors, collectively and as individuals, satisfies the typicality and adequacy requirements of Rule 23, and has demonstrated that it can fairly and adequately protect the interests of the class.

Additionally the MMA Investors is a proper group under the PSLRA. Preliminarily, there is no dispute, amongst the competing movants that a lead plaintiff under the PSLRA can be a "person or a group of persons." 15 U.S.C. ¶ 78u-4(a)(3)(B)(iii)(I); *Constance Sczesny Trust*, 223 F.R.D. at 323; *Fuwei Films Secs. Litig.*, 247 F.R.D. at 436. That said, the MMA Investors, with only five group members, all with substantial losses in the six figures, is a well-thought-out and appropriate group. The group has and can act collectively and separately from their lawyers. *See* Kim Decl., Ex. 1; *In re Taragon Corp. Secs. Litig.*, 2007 WL 4302732, * 2 (S.D.N.Y. Dec. 6, 2007) ("The issue is not whether losses or holdings may be aggregated by members of the group seeking to become the lead plaintiff; indisputably, they may. But…, there must be some evidence that the members of the group will act collectively and separately from their lawyers.") (citing *Weltz v. Lee*, 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001)); *see also* Opening Br. pp. 8-10.

As such, the MMA Investors group satisfies all prongs of the Exchange Act's prerequisites for appointment as Lead Plaintiffs in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii) and are presumed to be the most adequate plaintiffs. As no movant has yet to challenge and cannot credibly challenge the MMA Investors' presumption, the Court should appoint the MMA Investors' and each of its members as Lead Plaintiffs.

**IV.   THE COMPETING MOTIONS FOR LEAD PLAINTIFF SHOULD BE DENIED**

As set forth above, the MMA Investors have the largest financial interest and has *prima facie* established its typicality and adequacy under Rule 23. Under these circumstances, the Court must appoint each of them as Lead Plaintiffs without consideration of the other competing movants with lesser financial interests. That said there are numerous unanswered questions about the competing movants that further supports the appointment of the MMA Investors.

### A.   The Kremser Group Is Inadequate

Beyond the fact that even their claimed losses are less than those of the MMA Investors, there are serious questions about the adequacy of this group. While each of the group members have submitted sworn certifications that they have reviewed a complaint, presumably the two complaints their chosen counsel has filed in the District of Maryland, it is unclear that these group members even read it. The *two* complaints filed by the Kremser Group's counsel named John Gifford and Carl Jasper as defendants.[16] In these *two* complaints it is claimed that Gifford and Jasper are MMA's CEO and CFO, respectively. However, Gifford and Jasper never worked for MMA. Rather these persons are/were the CEO and CFO of an entirely different company, Maxim Integrated Products, Inc., a semiconductor company based in Northern California.[17]

### B.   The Court Should Not Allow Competing Movants to Disaggregate

The Court should not permit any of the competing movants to disaggregate to suggest that a particular group member has the single largest financial interest as compared to any other single group member. Such a maneuver screams of lawyer-driven litigation, and is not permitted by the PSLRA. Indeed,

---

[16] *See Manson v. Municipal Mortgage & Equity, LLC, et al.*, Case No. 1:08-cv-00269-MJG; *Engel v. Municipal Mortgage & Equity, LLC, et al.*, Case No. 1:08-cv-292-MJG.

[17] To date counsel for the Kremser Group has not amended their two complaints filed in Maryland. MMA Investors are not aware of the Kremser Group's counsel ever filing a securities class action against Maxim Integrated Products.

> the [Reform Act] is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, *or any other pleading*, for that matter, filed after the sixty (60) day window has closed ....

*Ferrari v. Gisch,* 225 F.R.D. 599, 603 (C.D. Cal. 2004) (emphasis added) (rejecting as untimely attempt by formerly separate lead plaintiff movants to "revise" their original lead plaintiff motion by combining losses and seeking co-lead plaintiff status) (citing *In re Texlon Corp. Sec. Litig.,* 67 F.Supp.2d 803 (N.D. Ohio 1999)); *see also Erikson v. Cornerstone Propane Partners LP*, 2003 WL 22232387 *1 n.2 (N.D. Cal. Sept. 15, 2003) (noting with disdain proposed alterations to group after original lead plaintiff motions were filed: "[r]egardless of what may have caused the group to first shrink and then bow out, this is the type of instability that the [PSLRA] was expressly designed to avoid . . . ."). Allowing any member of competing lead plaintiff groups to reformulate would offend both the letter and the spirit of the PSLRA and should not be entertained by the Court.

## V.     MMA INVESTORS' SELECTION OF COUNSEL SHOULD BE APPROVED

As set forth in the Opening Br. at 12, the Rosen Law Firm has extensive experience in successfully prosecuting securities class actions and is adequate to serve the interests of the Class. Indeed, the Rosen Law Firm was the firm that initiated the first-filed lawsuit that spurred the filing of copy-cat lawsuits in this Court and elsewhere. Counsel has been actively investigating this action from the start. Consequently, the Court should approve the MMA Investors' selection of the Rosen Law Firm as Lead Counsel.

## CONCLUSION

For the foregoing reasons, the Movants respectfully request the Court issue an Order: (1) appointing the MMA Investors and each of its members as Lead Plaintiffs of the class; (2)

approving the MMA Investors' selection of The Rosen Law Firm, P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

                                              Respectfully submitted,

Dated: April 17, 2008

**THE ROSEN LAW FIRM, P.A.**

      /s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this on the 17th day of April, 2008, a true and correct copy of the foregoing document, was served by CM/ECF to the parties registered to the Court's CM/ECF system.

                                     /s/ Phillip Kim