UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSEPH S. GELMIS, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:08-cv-00980-RMB |
| Plaintiff, | CLASS ACTION |
| vs. | |
| EARL W. COLE, III, et al., | |
| Defendants. | |
| JULES ROTHAS, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 08-cv-01120-RMB |
| Plaintiff, | CLASS ACTION |
| vs. | |
| MUNICIPAL MORTGAGE & EQUITY L.L.C., et al., | |
| Defendants. | |
| ARNOLD J. ROSS, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:08-cv-01299-RMB |
| Plaintiff, | CLASS ACTION |
| vs. | |
| EARL W. COLE, III, et al., | |
| Defendants. | |

[Caption continued on following page.]

MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF
THE YATES GROUP FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF
LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

```
———————————————————————  x
ALEX D'ANGELO, Individually and on     :     Civil Action No. 1:08-cv-01331-RMB
Behalf of All Others Similarly Situated,  :
                                        :     CLASS ACTION
              Plaintiff,                :
                                        :
       vs.                              :
                                        :
MUNICIPAL MORTGAGE & EQUITY, LLC,       :
et al.,                                 :
                                        :
              Defendants.               :
———————————————————————  :
NAOMI RAPHAEL, Individually and on      :     Civil Action No. 1:08-cv-02190-RMB
Behalf of All Others Similarly Situated, :
                                        :     CLASS ACTION
              Plaintiff,                :
                                        :
       vs.                              :
                                        :
MUNICIPAL MORTGAGE & EQUITY, LLC,       :
et al.,                                 :
                                        :
              Defendants.               :
———————————————————————  x
```

**Table of Contents**

**Page**

I.    PRELIMINARY STATEMENT .........................................................................................1

II.   ARGUMENT ............................................................................................................3

   A.   The Yates Group is the Movant with the Largest Financial Interest that
        Otherwise Satisfies the Requirements of Fed. R. Civ. P. 23(a) ...............................3

   B.   The PSLRA Allows the Appointment of a Group of Unrelated Investors as
        Lead Plaintiff Where the Group Provides Evidence that It Is Cohesive.................4

        1.   The Adequacy of Lead Plaintiff Groups Should be Analyzed By a
             "Rule of Reason" ...........................................................................................4

        2.   The Yates Group Is the Only Movant to Provide A Joint
             Declaration Describing Its Members, Their Pre-Motion
             Communications and Explaining How Its Members Will Function
             Collectively ...................................................................................................6

        3.   "Groups" of Unrelated Investors that Failed to Prove Their
             Cohesiveness Should Not Be Permitted to Aggregate Their Losses ..........8

   C.   Three Members of the Rawden Group (Beth Rawden and Richard and
        Isabel Bordow) and Elk Meadows Are "In-and-Out" Traders Whose "In-
        and-Out" Losses Must Be Excluded from the Calculation of the Group's
        Financial Interest.....................................................................................................13

   D.   FAFN/Slater Group and Elk Meadows Are Investment Advisors Who Do
        Not Have a Financial Interest in this Litigation.....................................................15

III.  CONCLUSION..........................................................................................................18

*Burke v. Ruttenberg*,
    102 F. Supp. 2d 1280 (N.D. Ala. 2000) ...................................................................4

*Chill v. Green Tree Fin. Corp.*,
    181 F.R.D. 398 (D. Minn.1998)..............................................................................4

*Davidson v. Belcor, Inc.*,
    933 F.2d 603 (7th Cir. 1991) .................................................................................18

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................2, 10, 13, 14

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004) .............................................................................6

*In re Bally Total Fitness Sec. Litig.*,
    No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243
    (N.D. Ill. March 15, 2005) ...............................................................................10, 15

*In re Bank One S'holders Class Actions*,
    96 F. Supp. 2d 780 (N.D. Ill. 2000) ......................................................................18

*In re Cardinal Health, Inc., Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) ......................................................................6, 12

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG) RER), 2007 U.S. Dist. LEXIS 14878
    (E.D.N.Y. Mar. 2, 2007) ............................................................................2, 13, 14

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002)......................................................................10, 13

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ................................................................... *passim*

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001) ........................................................................5

*In re MicroStrategy Inc. Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ....................................................................10

*In re Milestone Scientific Sec. Litig.*,
    183 F.R.D. 404 (D.N.J. 1998).................................................................................4

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................5, 6

**Page**

*In re Northwestern Corp. Sec. Litig.*,
    299 F. Supp. 2d 997 (D.S.D. 2003) ...................................................................6

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .....................................................................4

*In re Party City Sec. Litig.*,
    189 F.R.D. 91 (D.N.J. 1999) ...........................................................................4

*In re Tarragon Corp. Sec. Litig.*,
    No. 07-CV-7972 (PKC), 2007 WL 4302732
    (S.D.N.Y. Dec. 6, 2007)....................................................................................6

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
    209 F.R.D. 353 (S.D.N.Y. 2002) ...................................................3, 9, 12, 17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    236 F.R.D. 62 (D.N.H. 2006) .........................................................................17

*In re Versata, Inc. Sec. Litig.*,
    No. C 01-1439 SI, 2001 WL 34012374
    (N.D. Cal. Aug. 20, 2001).................................................................................5

*In re Waste Mgmt., Inc. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) .............................................................6

*Kops v. NVE Corp.*,
    No. 06-574, 2006 U.S. Dist. LEXIS 49713
    (D. Minn. July 17, 2006)................................................................................13

*Schonfeld v. Dendreon Corp.*,
    No. C07-800MJP, 2007 WL 2916533
    (W.D. Wash. Oct. 4, 2007) ...............................................................................6

*Smith v. Suprema Specialties, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ...........................................................3, 17

*Switzenbaum v. Orbital Sciences Corp. ("Orbital I")*
    187 F.R.D. 246 (E.D.Va.1999) .........................................................................6

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV-07-2204-PHX-FJM, 2008 WL 942273
    (D. Ariz. April 7, 2008) ............................................................................10, 12

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a) ................................................................................................................4, 9, 17

Federal Rules of Civil Procedure
    23(a) ................................................................................................................................3, 4

The Yates Group[1] respectfully submits this memorandum of law in further support of their motion seeking consolidation of the above-captioned related actions, their appointment as Lead Plaintiff, and approval of their selection of Lead Counsel and in opposition to the competing motions.[2]

## I.    PRELIMINARY STATEMENT

On March 31, 2008, seven lead plaintiff motions were filed in this case.  Since that time, two motions have been withdrawn.[3]  Each of these motions is being pursued on behalf of small groups of investors seeking to be appointed as Lead Plaintiff.  As detailed herein, these types of groupings are consistent with the Private Securities Litigation Reform Act (the "PSLRA") (which specifically describes the presumptive lead plaintiff as being a "person or group of persons"), but only when a proper showing of the group's cohesiveness has been made.

The Yates Group, with a claimed financial interest of $757,010.65, is the only movant that is able to make – and has made – a timely showing of its cohesiveness.  Indeed, as set forth in the previously-filed Declaration of Mario Alba, Jr. in Further Support of the Motion of the Yates Group

---

[1]    The Yates Group is comprised of class members Robert Yates, as Trustee for Robert L. Yates Living Trust, Debra Yates Jerdon Family Trust and Kathleen Yates Carter Family Trust; Alan S. Barry; David Young; Carlo Hornsby; and Ed Friedlander, as Trustee for the Ed Friedlander Trust.

[2]    Competing motions were filed by: (i) First Affirmative Financial Network, KT Investments LLC and Kendall Investments LLC ("FAFN/Slater Group"); (ii) Beth Rawden, Joseph Rawden, Richard & Isabel Bordow and Niel Nielsen (the "Rawden Group"); (iii) Norman Feinberg, Robert Stark, Leonard Klorfine, Daryl Bonyor and Alan Fetch ("MMA Investors"); (iv) David Kremser, Elk Meadows Investments LLC ("Elk Meadows"), Richard Martin, Harrison J. Kornfield, Jay L. Goozh and William D. Felix (the "Kremser Group"); (v) Tony Broy; and (vi) Arnold J. Ross.  On April 11, 2008, this Court granted Arnold J. Ross's motion to withdraw.  On April 17, 2008, this Court granted Tony Broy's motion to withdraw.

[3]    Lead Plaintiff motions were also filed in the District of Maryland by the Yates Group, the Rawden Group, MMA Investors and the Kremser Group – all of which are still pending.

for Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel ("Alba Decl.") (Docket entry No. 32), the members of the Yates Group submitted declarations describing how they spoke with one another about filing this motion together ***prior*** to its filing, explained how they have worked together and will continue to work together as a group that directs the litigation and controls its chosen counsel, and sets forth the strategies that it intends to employ in ensuring that it will best represent the interests of the Class in this case.

Aside from not making a similar type of showing, several of the other movants, who claim to have a financial interest that is larger than the Yates Group, actually overstated their losses when reporting their financial interests. This was done either because the losses they claim are not their own (as is the case with the motions filed by FAFN/Slater Group and the Kremser Group), but rather belong to unidentified and unspecified clients who likely have no knowledge that this lawsuit is being pursued on their behalf, or their losses are trading losses (as is the case with the motions filed by Beth Rawden, Richard & Isabel Bordow and Elk Meadows Investments, LLC) that occurred before the decline in the stock price that is attributable to the fraud, commonly referred to as "in and out" losses.

With respect to those "in and out" losses, defendants will likely argue that such losses are not recoverable following the Supreme Court's ruling in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344-47 (2005), which requires that plaintiffs plead that their loss was proximately caused by defendants' misrepresentations. In recognition of the validity of this argument, courts have routinely denied motions for lead plaintiff by "in and out" investors. *See e.g., In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) RER), 2007 U.S. Dist. LEXIS 14878, at *16 (E.D.N.Y. Mar. 2, 2007) (stating that where "it is clear from the face of the pleadings that most of [plaintiff's] losses

- 2 -

were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage").

For these reasons, and as set forth herein in further detail, the Yates Group is the movant with the largest financial interest in this litigation that otherwise satisfies the requirements of Fed. R. Civ. P. 23(a).  Accordingly, it is respectfully requested that its motion be granted in full.

## II.    ARGUMENT

### A.    The Yates Group is the Movant with the Largest Financial Interest that Otherwise Satisfies the Requirements of Fed. R. Civ. P. 23(a)

The Yates Group is the ***only*** lead plaintiff movant with standing to pursue this litigation that has provided timely proof that it is a cohesive group whose members conferred ***prior*** to the filing of their motion and explained how they have worked and will continue to work together as a group that directs the litigation and controls its chosen counsel.[4]  *See* Alba Decl.  None of the other groups of movants has produced any similar evidence of their cohesiveness.  This failure by all of the other

---

[4]    Although the FAFN/Slater Group and Kremser Group have submitted joint declarations, as explained herein at 8-9, 15-17, these groups are comprised of asset managers who do not own any Municipal Mortgage & Equity L.L.C., ("MuniMae") shares and, thus, do not have standing to serve as lead plaintiff.  "In order for an investment advisor to attain standing on behalf of investors the transactions in question must have been executed as if by a single person.  Moreover, the advisor must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005) (emphasis added, footnotes omitted). ***The FAFN/Slater Group and Kremser Group have not adequately established that they fulfill these conditions***.  *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357 (S.D.N.Y. 2002) (finding a pure asset manager inadequate because, in contrast to an institutional investor that "invested its own assets," an investment advisor is "not itself an investor" and has no financial stake in the outcome of the litigation); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634 (D.N.J. 2002) (asset manager could not aggregate its losses with the 22 entities it represented, and could not bring the action on behalf of its clients because it did not function as a "single investor" and it had not submitted any evidence that it received permission to move on its clients' behalf.)  Thus, the declarations submitted by the FAFN/Slater Group and the Kremser Group are inadequate to support their motions.

movants is sufficient to rebut the presumption that any of them is the most adequate plaintiff. Thus, the Yates Group – the only legitimate group – has the largest financial interest of any lead plaintiff movant that otherwise satisfies the requirements of Fed. R. Civ. P. 23(a) and is the most adequate plaintiff to direct this litigation.

      **B.**    **The PSLRA Allows the Appointment of a Group of Unrelated Investors as Lead Plaintiff Where the Group Provides Evidence that It Is Cohesive**

          **1.**    **The Adequacy of Lead Plaintiff Groups Should be Analyzed By a "Rule of Reason"**

The PSLRA specifically provides for the appointment of multiple investors to serve as lead plaintiffs. In pertinent part, the PSLRA states that a court, "shall appoint as lead plaintiff the member or ***members*** of the purported plaintiff class that the court determines to be most capable of adequately representing" the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). Moreover, when choosing the lead plaintiff, the court should appoint the "person or ***group of persons***" that meets the rebuttable presumption requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). However, "***the surrounding statutory language forecloses the appointment of multiple groups or multiple persons not part of a cohesive group***." *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1329-1330 (N.D. Ala. 2000) (emphasis in original) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 113 (D.N.J. 1999) (noting that "apart from the sole reference to a 'group of persons,' the PSLRA is worded in the singular, providing a mechanism for the appointment of 'the most adequate plaintiff,' not the most adequate plaintiffs."))

Courts allowing unrelated investors to serve as a group employ a "case-by-case inquiry," guided by "a rule of reason." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). A "rule of reason" should prevail. *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 409 (D. Minn.1998); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 417 (D.N.J. 1998)

("the surrounding statutory language [of the PSLRA] forecloses the appointment of … multiple persons not part of a cohesive group.")  As one court aptly put it: "a Court should not blindly aggregate the losses of unrelated plaintiffs to confer lead plaintiff status on a group without considering whether the grouping is sufficiently coherent to control the litigation." *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 44 (D. Mass. 2001).

The rationale behind the "rule of reason" approach is to determine whether the purported group has the ability to represent the class without undue influence from counsel:

> A case-by-case approach governed by the rule of reason allows the court both to guard against improper plaintiffs-whether or not they have a pre-litigation relationship-and to select investors who are most willing and able to represent the interests of the class.  Under such an approach, ***the singular focus will be whether the asserted group has demonstrated the ability to represent the class and direct the litigation without undue influence from counsel***. [Emphasis added.]

*In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001).

Although there are no set criteria to assess groups, under the "rule of reason" approach, courts typically require "specific information from proposed lead plaintiffs, including 'descriptions of [the group's] members, including any pre-existing relationship among them, an explanation of how its members would function collectively, and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.'" *Versata*, 2001 WL 34012374, at *5 (quoting *In re Network Assocs., Inc., Sec. Litig*., 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999)).[5]

---

[5]     *See also eSpeed,* 232 F.R.D. at 99 (adopting "rule of reason" approach); *Lernout*, 138 F. Supp. 2d at 45 (same).

   2.    **The Yates Group Is the Only Movant to Provide A Joint Declaration Describing Its Members, Their Pre-Motion Communications and Explaining How Its Members Will Function Collectively**

It is firmly established that, "[t]he burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and that *failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff*." *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (emphasis added) (citing *Switzenbaum v. Orbital Sciences Corp. ("Orbital I")*, 187 F.R.D. 246, 248-50 (E.D.Va.1999)).

Many courts have found that a group's submission of a joint declaration is necessary to provide the required evidence of its members' prior communication and proof that the members will control counsel, instead of counsel controlling the group. *See Schonfeld v. Dendreon Corp.*, No. C07-800MJP, 2007 WL 2916533, at *2 (W.D. Wash. Oct. 4, 2007) ("proposed groups with no pre-litigation connection should submit a declaration providing information about the group's members, its structure and its intended functioning") (quoting *Network*, 76 F. Supp. 2d at 1026); *In re Cardinal Health, Inc., Sec. Litig.*, 226 F.R.D. 298, 307 (S.D. Ohio 2005) (appointing group that "adduced information about its proposed manner of communication and decision-making" through a joint declaration); *Ferrari v. Gisch*, 225 F.R.D. 599, 607-08 (C.D. Cal. 2004) (appointing group of three investors that submitted a joint declaration); *In re Northwestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D.S.D. 2003) (same).

The Yates Group is the only movant to make a sufficient and timely showing, through the submission of a joint declaration, "that the members of the group will act collectively and separately from their lawyers." *In re Tarragon Corp. Sec. Litig.*, No. 07-CV-7972 (PKC), 2007 WL 4302732,

at *2 (S.D.N.Y. Dec. 6, 2007) (noting that "The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may."). Specifically, the Yates Group's Joint Declaration states: (i) the identity of each of the four members of the Yates Group, their professional background, and where they reside; (ii) that all members of the group participated in a conference call prior to filing the lead plaintiff motion, during which they discussed their fiduciary duties as lead plaintiff and class representatives; (iii) that the Yates Group reached an agreement with counsel as to fees; (iv) that the Yates Group will exercise joint decision-making and work together to direct the litigation and oversee counsel; (v) that the members of the Yates group will meet regularly via telephone to discuss the status of the case; (vi) that the members of the Yates Group have agreed upon a mechanism for reaching a consensus on important issues and if a consensus cannot be reached, a mechanism for reaching a decision; (vii) that the members of the Yates Group discussed the qualifications and experience of their selected counsel, Berger & Montague, P.C. and Coughlin Stoia Geller Rudman & Robbins LLP; and (viii) that the members of the Yates Group are committed to working together with one another and with their counsel to maximize the recovery for the class. *See* Alba Decl.

Although other lead plaintiff movants may attempt to rehabilitate their motions by submitting declarations with their opposition or reply briefs, such belated submissions should be rejected as little more than a reaction to the Court's concerns about groups as expressed at the April 10, 2008 conference (*see* April 10, 2008 Transcript, attached hereto as Exhibit A); in other words, too little, too late. Where a group submits a joint declaration ***after*** filing its initial motion, the Court should draw an adverse inference that it is a lawyer-driven attempt to repair a defective motion.

- 7 -

**3.** **"Groups" of Unrelated Investors that Failed to Prove Their Cohesiveness Should Not Be Permitted to Aggregate Their Losses**

In contrast to the Yates Group, the other lead plaintiff movants leave the Court to guess as to the identity of their members, whether their members communicated before filing their motion, whether they have any plan to communicate in the future, whether they are aware that they are members of a purported "group," how they plan to function as a group, whether they have negotiated a fee arrangement with their counsel, and/or how they plan to control their counsel. In short, as set forth below, no other group has provided any indicia of its cohesiveness. As such, their motions fail under the "rule of reason" analysis. *See eSpeed*, 232 F.R.D. at 99. Their failures to provide the required evidence rebuts the presumption that any of these groups is the most adequate lead plaintiff.

**FAFN/Slater Group:** the so-called FAFN/Slater Group is comprised of First Affirmative Financial Network, LLC ("FAFN"), an "investment advisory firm," and KT Investments, LLC ("KT Investments") and Kendall Investments, LLC ("Kendall Investments"), which purport to be "investment vehicles."

Although FAFN/Slater Group submitted declarations from George Gay, the CEO of FAFN, and Ken Slater, who purports to "represent" KT Investments and Kendall Investments, in which they state that Mr. Gay and Mr. Slater have "conferred with each other "via conference call," and that they "have agreed to act as a group," it is apparent that neither FAFN nor Ken Slater is the owner of any MuniMae shares and, therefore, these declarants have no financial interest in this litigation. As detailed further herein, FAFN/Slater Group has not identified the actual owners of the MuniMae stock for whom FAFN and Ken Slater serve as investment advisors or representatives, let alone provided declarations or affidavits from the clients of FAFN, KT Investments, and Kendall Investments establishing that: (i) they are aware that a class action has been commenced against MuniMae; (ii) they are aware that FAFN, KT Investments, and Kendall Investments have formed a

- 8 -

group and moved for appointment as lead plaintiff; or (iii) they have granted FAFN, KT Investments, and Kendall Investments both: (a) unrestricted decision-making authority and (b) the specific right to recover on their behalf through litigation. Their lack of cohesiveness – and lack of authority to pursue this litigation – is further evidenced by the representation made by their counsel at the April 10 conference that, as of April 10 (*i.e.*, ten days ***after*** the motion had already been filed), not all of the investors of FAFN had authorized FAFN to pursue this litigation on their behalf. *See* Transcript from April 10, 2008 conference at 28-30.

Moreover, the FAFN/Slater Group has failed to comply with the requirements of the PSLRA with regard to the filing of a certification in support of its motion. *See* 15 U.S.C. §78u-4(a)(2)(A). Although its declaration makes several of the representations that would normally be found in a certification filed in support of a motion for lead plaintiff (*i.e.*, the cases in which the movant previously sought appointment as lead plaintiff and a reference to its Class Period transactions), it suspiciously omits two significant representations that are required to be made by any movant seeking appointment as Lead Plaintiff: (1) a statement that it did not purchase the security that is the subject of this action at the direction of its counsel or to participate in this private action, 15 U.S.C. §78u-4(a)(2)(A)(ii); and (2) a statement that they have not accepted and will not accept any payment for serving as a representative plaintiff on behalf of the class beyond their pro rata share of any recovery, 15 U.S.C. §78u-4(a)(2)(A)(vi). Thus, the FAFN/Slater Group's declarations are fatally flawed and do not support its motion. *See eSpeed,* 232 F.R.D. at 98; *Turkcell,* 209 F.R.D. at 357.

**The Rawden Group:** Although Beth Rawden and Joseph Rawden, according to their counsel, are husband and wife, *i.e.*, they have a pre-existing relationship, the Rawden Group has failed to provide any evidence explaining whether they have any prior relationship with the other members of this group: Richard and Isabel Bordow, who filed their motion on behalf of the

"Richard/Liz Living Trust and as "Trustees for the benefit of Isabel R. Bordow," and Niel Nielsen. The Rawden Group has also failed to submit any evidence that Beth Rawden and Joseph Rawden communicated with Richard and Isabel Bordow or Niel Nielsen regarding this motion or that they are even aware that they are all members of the "Rawden Group."[6]  Thus, there is no evidence whatsoever that the Rawden Group is a cohesive group that is capable of leading this litigation and controlling its counsel.

Moreover, as detailed below at page 13-15, the financial interest of the Rawden Group has been overstated because only two of its members, Joseph Rawden and Niel Nielsen (who appear to have no relationship), will be able to prove loss causation with respect to their trades.  *See Dura*, 544 U.S. 336.  With their trading losses excluded from the claimed financial interest of the Rawden Group, the Rawden Group's revised financial interest of slightly over $600,000 is significantly smaller than the financial interest of the Yates Group ($757,010.65).  *See In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. March 15, 2005) (denying the appointing of the presumptive lead plaintiff by finding that in-and-out traders would likely be subject to the unique defense regarding loss causation).

---

[6]      *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. April 7, 2008) (rejecting group that consisted of "three completely unrelated individuals from different parts of the country. There is no suggestion how they plan to work together as a cohesive unit. As far as we can tell, each individual has so far participated only to the extent of signing his name onto a boilerplate 'certification in support of application of lead plaintiff.'"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (rejecting motion where, "there was nothing in the record to provide any assurance that the group was cohesive, comprised of like-minded members, or otherwise likely to function as a unified group. The group failed to present evidence with respect to its formation, its operational structure, or whether the members of the group had ever communicated with one another about their roles."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002) (denying motion of group consisting of two institutional investors for failing to provide persuasive evidence "that they are the kind of cohesive group envisioned by the statute for Lead Plaintiff," or evidence as to why they "joined together to apply for Lead Plaintiff …").

**MMA Investors Group:** the MMA Investors Group (comprised of individual investors Norman Feinberg, Robert W. Stark, Leonard Klorfine, Daryl Bonyor individually and as trustee of a revocable trust for the benefit of her mother, and Alan Fetch) suffers from the same infirmities as the Rawden Group. Specifically, the MMA Investors Group has failed to submit a joint declaration providing a description of the members of the group, how, when or why the group was formed, whether the members of the group communicated with one another prior to filing their motion, or whether they are even aware that they are members of the "MMA Group." *See* fn. 6, *supra*. Thus, the MMA Investors Group has also failed to demonstrate its cohesiveness.

**The Kremser Group:** the Kremser Group is comprised of David A. Kremser, individually and on behalf of Elk Meadows Jay L. Goozh, William D. Felix, and Richard V. Martin. *See* Declaration of David A.P. Brower at Ex. A, filed in support of their Motion for Consolidation Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel.

Although David Kremser purportedly accounts for $555,911 of the Kremser Group's losses, his certification discloses that the Class Period shares that he seeks recovery for are not his own. Similar to FAFN and Ken Slater, David Kremser appears to be an investment manager who purchased MuniMae shares during the Class Period on behalf of unidentified clients of Elk Meadows and no evidence has been provided to demonstrate his authority to pursue this action on their behalf.

Kremser has not identified the clients of Elk Meadows (the actual owners of the MuniMae stock for whom David Kremser and/or Elk Meadows serve as investment managers), nor have they provided declarations or affidavits from the clients of Elk Meadows establishing that: (i) they are aware that a class action has been commenced against MuniMae; (ii) they are aware that the Kremser Group was formed and moved for appointment as lead plaintiff; or (iii) they have granted Elk Meadows both: (a) unrestricted decision-making authority and (b) the specific right to recover

- 11 -

on their behalf.  Thus, the declaration of David Kremser does nothing to support the Kremser Group's motion.  *See eSpeed,* 232 F.R.D. at 98; *Turkcell*, 209 F.R.D. at 357.

The utter lack of cohesiveness of the Kremser Group is further demonstrated by the memorandum of law and declaration filed in support of its motion.  Specifically, the Kremser Group memorandum states: "The movants move together as a group.  Alternatively, each agrees to have the Court consider their losses individually and appoint an individual from amongst the four of them, should the Court so desire."  Kremser Mem. at 1 fn. 1.  The declarations signed by the members of the Kremser Group reinforce the willingness to abandon the "group," stating: "Though the members of the Kremser Group move together for appointment as Lead Plaintiff, the group members have agreed to consider group members' losses individually and appoint an individual from the group as Lead Plaintiff. . . ."  *See* Brower Declaration at Ex. B.  As the Court in *Syntax-Brillian* recently noted, "At one point, the group suggests that we pluck one of its top-two constituents to serve as lead plaintiff . . . . We decline to do so. The [Kremser] Group moved for lead plaintiff as a group and will be evaluated as such. ***The willingness to abandon the group only suggests how loosely it was put together***."  *Syntax-Brillian,* 2008 WL 942273, at *4 (emphasis added).

In addition, the certification filed by David A. Kremser discloses that he himself purchased 25,000 shares in his individual capacity only after MuniMae made its disclosure on January 28, 2008 that precipitated this litigation.  His one purchase was on January 29, 2008 – the very next day.  Because his sole purchase took place after MuniMae already disclosed that it would be expanding the scope of its restated financial results and dramatically reducing its dividend, defendants will argue that his purchases, as well as those of other investors on that day, should not be part of the class.  Regardless, because of the timing of his purchases, he is not an appropriate lead plaintiff.  *See Cardinal,* 226 F.R.D. at 310 (declining to appoint as lead plaintiffs those movants who purchased the

- 12 -

"vast bulk" of their shares *after* the disclosure of the fraud); *Enron,* 206 F.R.D. at 455 (listing precedents, and finding a public fund that purchased Enron stock "after the SEC announced that it was investigating Enron" both atypical and "'subject to "unique defenses" concerning his individual reliance'").

Accordingly, the Kremser Group is not a cohesive group and is inadequate to serve as lead plaintiff.

> **C.**    **Three Members of the Rawden Group (Beth Rawden and Richard and Isabel Bordow) and Elk Meadows Are "In-and-Out" Traders Whose "In-and-Out" Losses Must Be Excluded from the Calculation of the Group's Financial Interest**

In *Dura*, 544 U.S. at 344-47, the Supreme Court held that plaintiffs can recover in fraud-on-the-market cases only if their loss was proximately caused by a defendant's misrepresentations. Any losses that a plaintiff suffers before the defendants' misconduct is disclosed to the public are not recoverable because those losses cannot be proximately linked to the misconduct at issue in the litigation. "While the *Dura* Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff." *Comverse*, 2007 U.S. Dist. LEXIS 14878, at *13-*14 (citing *Kops v. NVE Corp.*, No. 06-574, 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006)). Judge Garaufis stated in *Comverse* that where "it is clear from the face of the pleadings that most of [plaintiff's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage." *Id.* at *16.

A court deciding a lead plaintiff motion must determine precisely which losses a plaintiff stands to recover as the litigation proceeds. *Id.* at *18. In this case, no partial corrective disclosures

are alleged before January 28, 2008[7] in any complaint on file which would provide a factual basis for

claiming any recoverable losses for purchases and sales of MuniMae stock before January 29, 2008.[8]

As set forth in her certification, Beth Rawden purchased and sold 31,115 shares of MuniMae stock

during the Class Period and retained no shares at the end of the Class Period on January 28, 2008,

yet claims a "financial interest in the relief sought by the class" of $417,098.  Richard and Isabel

Bordow purchased and sold 12,747 shares during the Class Period and retained no shares on January

28, 2008, yet claim a financial interest of $290,020.

    Defendants will likely argue that their losses are not recoverable because they were incurred

on trades that took place prior to the disclosure by the Company on January 28, 2008.  *See Dura,* 544

U.S. 336.  Since Beth Rawden and Richard & Isabel Bordow were no longer holding any shares of

MuniMae stock by January 28, 2008, they cannot serve as Lead Plaintiffs.  *See Comverse*, 2007 U.S.

Dist. LEXIS 14878, at *16 fn. 6 ("It is clear that courts cannot include non-recoverable losses in a

calculation of each litigant's financial interest.").  With their losses excluded from the claimed

financial interest of the Rawden Group, the Rawden Group's revised financial interest of slightly

---

[7]    On that date, the Company announced that it would be reducing its dividend distribution from $0.5250 to $0.33 per share and that it would not complete its restatement of its financial results by the NYSE imposed deadline of March 3, 2008, and therefore, the Company's stock was expected to be delisted.

[8]    As Judge Garaufis stated in *Comverse*:

> . . .  [I]t would be unfair to speculate that P&P will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege facts in support thereof.  Moreover, such a practice would encourage plaintiffs competing to lead a PSLRA litigation to overstate their losses at the outset of a lawsuit, in hope of a court's declining to look beyond those conclusory allegations until after discovery, when it might be too late to appoint a more deserving lead plaintiff.

*Id.* at *19.

over $600,000 is significantly smaller than the financial interest of the Yates Group ($757,010.65). *See Bally*, 2005 U.S. Dist. LEXIS 6243, at *19 (denying the appointing of the presumptive lead plaintiff by finding that in-and-out traders would likely be subject to the unique defense regarding loss causation).

Similarly, the losses of Kremser and Elk Meadows have been overstated because it had sold off more than half of its Class Period shares prior to the Company's disclosure. As with the Rawden Group, Elk Meadows will have difficulty establishing loss causation with respect to those trades. Elk Meadows' financial interest has therefore been overstated and should be reduced to $297,456.15. As a result, the Kremser Group's losses are now $664,109.41 – below the claimed financial interest of the Yates Group.

### D.    FAFN/Slater Group and Elk Meadows Are Investment Advisors Who Do Not Have a Financial Interest in this Litigation

Although certain of the competing movants claim to have a financial interest that is larger than the Yates Group, as explained above, those movants are investment advisors who do not have any claim for damages against defendants in this action. These movants, which include FAFN, KT Investments, Kendall Investments and Elk Meadows, did not purchase shares of MuniMae for their *own account* as the Yates Group did, and therefore, have no financial interest in this case.

FAFN/Slater Group, for example, consists of three entities: FAFN, KT Investments and Kendall Investments. FAFN operates as a manager of asset managers, with 120 financial advisers in its network that use FAFN for back-office support and portfolio management. These advisers then construct portfolios for their own clients. FAFN makes money in two ways: through management fees it charges investors and annual membership fees advisers pay to be part of the network.

At the status conference on April 10, 2008, counsel for KT Investments and Kendall Investments represented that both entities were investment vehicles operated by Kenneth Z. Slater on

behalf of his mother.[9]  *See* Transcript from April 10, 2008 conference at 27.  However, a closer look at the entities illustrates that they are much more than that.  According to its website (http://www.kendallinvestments.com), Kendall Investments describes itself as a "private equity fund-of-funds management company," which "focuses on managers with a proven record of investment results."  Moreover, KT Investments describes itself as an entity which "manages a family trust," which invests in "real estate assets" and "various types of securities."[10]  As such, both Kendall Investments and KT Investments appear to represent interests beyond Mr. Slater's mother.  Without any evidentiary support (other than a generic statement by Mr. Slater that "I represent KT Investments, LLC and Kendall Investments, LLC"), there is insufficient information in the record to establish: (i) Mr. Slater's authority to act on behalf of the entities that he claims to represent; and (ii) also whether he is specifically authorized to pursue this litigation on their behalf.

The Kremser Group's motion is similarly flawed.  The member of that group that claims the largest financial interest is David Kremser, who is seeking to represent Elk Meadows and his own individual account.  As previously explained, defendants will argue that Mr. Kremser's personal trades should be excluded from the class since they consisted of a single transaction that was made ***after*** the Company already made its disclosure after the close of trading on January 28, 2008, that it

---

[9]    Mr. Slater also seems to be related to an entity named the Kendall Family Trust.  It is unknown whether the Kendall Family Trust, or any other entity managed or owned by Mr. Slater, invested in other MuniMae shares during the Class Period.  These trades, which have not been disclosed, could result in a gain for Mr. Slater.  Any such gain would reduce the amount of Mr. Slater's claimed loss.  Accordingly, without more information, it is impossible to know Mr. Slater's (or whoever it is that he is purporting to represent) true financial interest in this case.

[10]    *See* Declaration of Kenneth Z. Slater in support of the motion of The Turcot Family/KT Investments Group for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel filed in *In re American Home Mortgage Sec. Litig.*, 2:07-md-01898-TCP (E.D.N.Y. Oct. 1, 2007), a copy of which is attached hereto as Exhibit B.

would be delaying its restatement of its financial results and would likely be delisted and dramatically reducing its dividend.

With respect to Elk Meadows there has been no information provided in the record to establish what type of entity it is or the authority of Mr. Kremser to act on its behalf.

While the PSLRA directs the Court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," 15 U.S.C. §78u-4(a)(3)(B)(i), it is obvious that any lead plaintiff selected by the Court necessarily must be a member of the purported class.  Since these investment advisors are not the ones who actually purchased the stock – rather certain of their unidentified clients did – they have no valid claim to make against defendants.  Indeed, numerous courts have recognized this and refused to appoint these types of investment advisors as Lead Plaintiffs.[11]  *See eSpeed,* 232 F.R.D. at 98 ("[i]n order for an investment advisor to attain standing on behalf of investors the transactions in question must have been executed as if by a single person. Moreover, the advisor must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients."); *Turkcell,* 209 F.R.D. at 357-58 (refusing to appoint as lead plaintiff or class representative an investment advisor who had not purchased the stock for its own behalf, but rather for the accounts of its clients); *see also In re Tyco Int'l, Ltd. Multidistrict Litig.*, 236 F.R.D. 62, 72-73 (D.N.H. 2006) (refusing to certify as class representative an investment advisor who did not suffer its own losses); *Suprema,*

---

[11]    It is unknown which investment advisors and which clients FAFN, KT Investments, Kendall Investments and Elk Meadows Investments, LLC are purporting to represent.  This leads to the risk that if there is a recovery in this action, their clients will submit proofs of claim independently of their investment advisors, resulting in double-dipping of their claims and thereby diminishing the rest of the Class.

206 F. Supp. 2d at 634 (investment advisor "may not bring the action on behalf of its clients because it did not function as a 'single investor' and it has not submitted any evidence that it received permission to move on its clients' behalf"); *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (finding investment manager with the largest aggregate losses was not the most adequate plaintiff because, among other things, it was not buying the stock in question for its own account, but rather for investors who were participants in the managed funds); *Davidson v. Belcor, Inc.*, 933 F.2d 603, 606 (7th Cir. 1991) ("only actual purchasers and sellers of securities have standing to pursue private causes of action under the anti-fraud provisions of the Securities Exchange Act").

Accordingly, the motions of these investment advisors should be denied.

## III.    CONCLUSION

For the reasons set forth above, and in its prior submission, the Yates Group respectfully requests that the Court grant its motion consolidating the related Actions, appointing it as Lead Plaintiff and approving of its selection of Lead Counsel.

DATED: April 17, 2008                    COUGHLIN STOIA GELLER
                                         RUDMAN & ROBBINS LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         MARIO ALBA, JR.


                                         /s/ *David A. Rosenfeld*
                                         _____
                                         DAVID A. ROSENFELD

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)

- 18 -

BERGER & MONTAGUE, P.C.
SHERRIE R. SAVETT
BARBARA A. PODELL
ERIC LECHTZIN
1622 Locust Street
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)

[Proposed] Co-Lead Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Mario Alba, Jr., hereby certify that on April 17, 2008, I caused a true and correct copy of the attached:

Memorandum In Further Support Of The Motion Of The Yates Group For Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel And In Opposition To The Competing Motions

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to all additional counsel on the attached service list.


                         /s/ *Mario Alba, Jr.*
                            Mario Alba, Jr.

MUNIMAE (NY)

Service List - 4/3/2008   (08-0030)

Page 1 of  2

**Counsel For Defendant(s)**

David W.T. Daniels
Michael D. Mann
Richards Kibbe & Orbe LLP
701 8th Street, N.W.
Washington, DC  20001
   202/261-2990
   202/261-2999 (Fax)

**Counsel For Plaintiff(s)**

Arthur N. Abbey
Nancy  Kaboolian
Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, NY  10016
   212/889-3700
   212/684-5191 (Fax)

Evan J. Smith
Brodsky & Smith, LLC
240 Mineola Blvd., 1st Floor
Mineola, NY  11501
   516/741-4977
   516/741-0626 (Fax)

Joshua M. Lifshitz
Bull & Lifshitz LLP
18 East 41st Street, 11th Floor
New York, NY  10017
   212/213-6222
   212/213-9405 (Fax)

Sherrie R. Savett
Barbara A. Podell
Eric  Lechtzin
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
   215/875-3000
   215/875-4604 (Fax)

David A.P. Brower
Brower Piven, P.C.
488 Madison Avenue, 8th Floor
New York, NY  10022
   212/501-9000
   212/501-0300 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Mario  Alba, Jr.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)

MUNIMAE (NY)

Service List - 4/3/2008    (08-0030)

Page 2 of  2

Christopher J. Keller
Labaton Sucharow LLP
140 Broadway, 34th Floor
New York, NY  10005
   212/907-0700
   212/818-0477 (Fax)

Phillip  Kim
Laurence M. Rosen
The Rosen Law Firm P.A.
350 Fifth Avenue
New York, NY  10118
   212/686-1060
   212/202-3827 (Fax)

Thomas H. Burt
Wolf Haldenstein Adler Freeman & Herz, LLP
270 Madison Avenue
New York, NY  10016
   212/545-4600
   212/545-4653 (Fax)

```
                                                            1
        84A3ROTC                    Conference
  1  UNITED STATES DISTRICT COURT
  1  SOUTHERN DISTRICT OF NEW YORK
  2  ------------------------------x
  2  JOSEPH S. GELMIS, et al.,
  3
  3              Plaintiffs,
  4       v.                        08 Civ. 980 (RMB)
  4
  5  EARL W. COLE, et al.,
  5
  6              Defendants.
  6  ------------------------------x
  7  JULES ROTHAS, individually and
  7  on behalf of all others
  8  similarly situated; and
  8  KREMSER GROUP,
  9
  9              Plaintiffs,
 10       v.                        08 Civ. 1120 (RMB)
 10
 11  MUNICIPAL MORTGAGE AND EQUITY,
 11  L.L.C., et al.,
 12
 12              Defendants.
 13  ------------------------------x
 13  ARNOLD J. ROSS, individually
 14  and on behalf of all others
 14  similarly situated; and
 15  KREMSER GROUP,
 15
 16              Plaintiffs,
 16       v.                        08 Civ. 1299 (RMB)
 17
 17  EARL W. COLE, III, et al.,
 18
 18              Defendants
 19  ------------------------------x
 19  ALEX D'ANGELO, individually
 20  and on behalf of all others
 20  similarly situated; and
 21  KREMSER GROUP,
 21
 22              Plaintiffs,
 22       v.                        08 Civ. 1331 (RMB)
 23
 23  MUNICIPAL MORTGAGE & EQUITY,
 24  LLC, et al.,
 24
 25              Defendants.
 25  ------------------------------x
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

```
                                                                        2
        84A3ROTC                      Conference
 1                                            New York, N.Y.
 1                                            April 10, 2008
 2                                            11:45 a.m.
 2
 3      Before:
 3
 4                      HON. RICHARD M. BERMAN,
 4
 5                                            District Judge
 5
 6                            APPEARANCES
 6
 7      THE ROSEN LAW FIRM
 7           Attorneys for Plaintiff Joseph Gelmis and Movants MMA
 8      Investors Group
 8      BY:  PHILLIP KIM
 9           TIMOTHY BROWN
 9
10      COUGHLIN STOIA GELLER RUDMAN & ROBBINS
10           Attorneys for Plaintiff Jules Rothas and The Yates Group
11      BY:  DAVID A. ROSENFELD
11                -and-
12      BERGER & MONTAGUE
12      BY:  ERIC LECHTZIN
13
13      BROWER PIVEN
14           Attorneys for Plaintiff The Kremser Group
14      BY:  DAVID A.P. BROWER
15
15      LAW OFFICES OF CURTIS V. TRINKO
16           Attorneys for Plaintiff Judith Greenberg
16      BY:  CURTIS V. TRINKO
17
17      SPECTOR ROSEMAN & KODROFF
18           Attorneys for Movant The Rawden Group
18      BY:  DAVID FELDERMAN
19                -and-
19      LABATON SUCHAROW
20      BY:  ANDREI RADO
21      WOLF HALDENSTEIN ADLER FREEMAN & HERZ
21           Attorneys for Plaintiffs First Affirmative and Kenneth
22      Slater
22      BY:  THOMAS H. BURT
23             GEORGE PETERS
24      CLIFFORD CHANCE
24           Attorneys for Defendant Municipal Mortgage and Equity,
25           L.L.C.
25      BY:  JAMES B. WEIDNER
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

3

84A3ROTC                    Conference

1
1    RICHARDS KIBBE & ORBE
2        Attorneys for Defendant Melanie Lundquist
2    BY:  NEIL S. BINDER
3
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

4

84A3ROTC                    Conference

1                (In open court)
2                THE COURT:  As I understand where things stand here,
3      we were in the middle of a briefing schedule for lead
4      plaintiffs and lead counsel with the initial briefs having been
5      filed on or before March 31 and opposition briefs are due
6      April 17.
7                Let me see at the outset, are there going to be
8      opposition briefs?
9                MR. ROSENFELD:  Yes, your Honor.
10               MR. KIM:  Yes, your Honor.
11               THE COURT:  And then replies are due by April 28.  So,
12     I would like in everybody's subsequent filing, and I mean
13     everybody who has filed already, whether they put it in I guess
14     in the reply if they're plaintiffs that we're talking about, I
15     would like every plaintiff to indicate who they think is the
16     lead plaintiff under the PLSRA, because I didn't think there
17     was as much room for debate in these matters, and it is only
18     the initial set of briefing.  But so now that you all have seen
19     the other briefs, and I would like everybody's view as to who
20     is or should be the lead plaintiff.
21               And has anybody so far or is anybody planning such
22     that they would say so publicly to not be considered further as
23     a lead plaintiff?
24               I take that as a no.  I think I must have misread.  I
25     didn't read them in detail, but I must have misread some of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5

84A3ROTC                    Conference
1  motions.  So everybody here still thinks they are lead
2  plaintiff.  Is that right?
3              MR. KIM:  Yes, your Honor.
4              THE COURT:  Let's hear, for example, what the loss is
5  of your client and how that makes you the lead plaintiff.
6              MR. KIM:  Your Honor, my name is Phillip Kim and we
7  represent the movants MMA Investors.  We have --
8              THE COURT:  This is just a partial, but I'm just
9  curious so you --
10             MR. KIM:  Based --
11             THE COURT:  Your firm is?
12             MR. KIM:  We are the Rosen Law Firm and we've moved on
13 behalf of the MMA Investors.  We have claimed losses of a
14 little over a million dollars.  I believe there are two movants
15 ahead of us that claim higher losses, however, we believe that
16 it will play out in the briefing that these claimed losses are
17 not compensable losses.
18             THE COURT:  How do you aggregate your losses?
19             MR. KIM:  We have five clients.
20             THE COURT:  Yes.
21             MR. KIM:  The way we aggregated the losses --
22             THE COURT:  Under the law.  Not the way you aggregate.
23 I know how you aggregated, you added them together.  But how
24 under statute, how did you aggregate them?
25             MR. KIM:  There were five clients of ours who wanted
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

84A3ROTC                    Conference

```
 1   to work together.
 2           THE COURT:  I didn't read that anywhere in the statute
 3   that there is a want-to-work-together provision that calls
 4   for -- I'm serious about this.  I'm dead serious.  Because if
 5   you submit motions, and I'm not suggesting that you are, that's
 6   why I'm saying that in the next submission I expect everybody
 7   to have the next submission, that they say to me and explain
 8   with cases how they are the lead plaintiff.  And I don't mean
 9   this personally, I think it is a good example, but apart from
10   this notion of wanting to work together, I don't know how
11   legally your losses are aggregated.
12           MR. KIM:  Sure.  We'll address those issues.  There
13   are also other aggregated groups as well.
14           THE COURT:  This is a good time.  So it will help me.
15           MR. KIM:  Under the PSLRA contemplates that the lead
16   plaintiff can be a person or a group of persons.  There is a
17   body of case law that allows the aggregation of investors who
18   even may be unrelated.
19           THE COURT:  Who want to work together?
20           MR. KIM:  Yes, who have no prior existing
21   relationship.
22           THE COURT:  I'm not familiar with those cases.
23           MR. KIM:  There are also a line of cases that say
24   that's not okay.  That will be up to the Court to decide.
25           THE COURT:  No, no.  I don't think people are hearing
```

84A3ROTC                    Conference
 1  me in this room.  I'm saying that I want briefs that don't say
 2  on the one hand and on the other hand.  I want briefs that --
 3  and if there is no valid legal basis for your not being lead
 4  plaintiff, I suggest you say that --
 5          MR. KIM:  All right.
 6          THE COURT:  -- in your brief.  I'm not looking for
 7  throw it up against the wall and see what sticks.  I'm looking
 8  for a legal analysis.  And that's why I say to you, and I'm
 9  only midway through the briefing schedule.  But I'm not
10  interested in wasting your time, counsel, if in fact there is
11  no viable basis for you to claim you have the lead plaintiffs.
12          Get it?
13          MR. KIM:  Understood, your Honor.  We believe we do.
14          THE COURT:  I hope so because you made a filing to
15  that effect.
16          MR. KIM:  Yes.
17          THE COURT:  But I am suggesting, I don't know if
18  you're hearing me even yet, that you take a hard look at your
19  position when you come to file the reply.
20          MR. KIM:  We will, your Honor.  We will.
21          THE COURT:  Who else, anybody else in this same
22  category?  Which group do you represent?
23          MR. ROSENFELD:  David Rosenfeld on behalf of the Yates
24  Group.  The firm Coughlin Stoia.  PSLRA does contemplate that a
25  group of plaintiffs can be appointed appropriately as lead

84A3ROTC                    Conference
1   plaintiff.  The number of courts --
2           THE COURT:  Those that want to work together, the same
3   theory he has?
4           MR. ROSENFELD:  That's correct, your Honor.  And a
5   number of courts have actually favored groups, given that it
6   provides for a diverse representation.  Better chances of
7   surviving class certification and --
8           THE COURT:  You have a court of appeals case from the
9   Second Circuit?
10          MR. ROSENFELD:  No.  The Second Circuit has not
11  addressed the issue, your Honor.  But there is a split among
12  the district courts, judge specific, not only southern and
13  eastern, but judge specific, about whether or not groups of
14  lead plaintiffs are appropriate.
15          THE COURT:  What does the statute provide?
16          MR. ROSENFELD:  The statute is not clear.  The statute
17  says group of plaintiffs.  So it does give you the option to
18  allow groups of plaintiffs.  And because of that, courts have
19  appointed groups of individuals who wanted to work together.
20  And a number of courts have actually required a showing that
21  these investors have spoken prior to the filing of their
22  motions and they have a plan in place to work together.  We've
23  actually submitted a joint declaration of our clients to that
24  effect showing that they did have a conference call.
25          THE COURT:  If you didn't aggregate, you would not be

```
          84A3ROTC                    Conference
 1    the lead plaintiff; isn't that right?
 2              MR. ROSENFELD:  Not necessarily, your Honor.
 3              THE COURT:  How would you be if you didn't aggregate?
 4              MR. ROSENFELD:  Aside from the actual size of the
 5    financial interests, there is also --
 6              THE COURT:  Financial interest or is it the loss?
 7              MR. ROSENFELD:  Well, it is financial interest is what
 8    it required for lead plaintiff.  It is the movant who
 9    represents --
10              THE COURT:  Not the loss sustained?
11              MR. ROSENFELD:  Well, there is a difference between
12    financial interest and damages.
13              THE COURT:  I am not talking damages.  I am talking
14    about losses sustained.  You don't think that's relevant?
15              MR. ROSENFELD:  Well, it depends how you calculate
16    losses.
17              THE COURT:  How do you calculate them and then you get
18    to be lead plaintiff if you don't aggregate in your case?
19              MR. ROSENFELD:  Well, your Honor, putting aside the
20    number for a moment, it is not only who represents the largest
21    financial interest, but there are also issues with respect to
22    the adequacy and typicality of the lead plaintiff movants.
23              THE COURT:  I am not there.  I'm somewhere else.  I am
24    trying to figure out how, if you don't aggregate, you become
25    the lead -- your client becomes -- which one of your clients
```

10

84A3ROTC                    Conference

 1  becomes the lead plaintiff?
 2          MR. ROSENFELD:  Well, your Honor, Mr. Yates, who is
 3  the namesake of our group, he represents the largest financial
 4  interest from our members with a loss of $237,000.
 5          THE COURT:  He would be the lead plaintiff?
 6          MR. ROSENFELD:  If the Court was inclined to appoint
 7  only one investor --
 8          THE COURT:  You don't think anybody else that
 9  submitted a motion has a greater loss than Mr. Yates?
10          MR. ROSENFELD:  They may have reported a greater loss.
11          THE COURT:  What?
12          MR. ROSENFELD:  They may have reported initially a
13  greater loss.  We do believe they have issues either with
14  respect to their adequacy or typicality or the way they
15  calculate their losses.
16          For example, some of the movants sold their entire
17  position prior to the slowage of the fraud, so they would have
18  great -- tremendous issues demonstrating loss causation.
19          THE COURT:  You think on an individual basis Mr. Yates
20  is the lead plaintiff?
21          MR. ROSENFELD:  I think he has a good shot.
22          THE COURT:  I don't know what "good shot" means.
23          MR. ROSENFELD:  Well, your Honor --
24          THE COURT:  This is not a crap shoot.
25          MR. ROSENFELD:  I understand that.

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

84A3ROTC                    Conference

```
 1            THE COURT:  No, you don't.  I don't think you do.  It
 2   doesn't sound like I'm making myself clear here, you know.  I
 3   don't think this is a lottery.  I think this is a lot more
 4   objective than maybe you all think.
 5            And so if you're thinking that you have a shot, as it
 6   were, I don't understand that idea.  I only understand the idea
 7   that you can persuade me legally.  And I am trying to
 8   understand how you can persuade me legally that Robert Yates
 9   would be the lead plaintiff if you don't aggregate.
10            MR. ROSENFELD:  Well, your Honor, in addition to
11   having the largest financial interest, as I was saying
12   beforehand, there is also a requirement to show that the other
13   movants are adequate and typical.
14            THE COURT:  Talking about Mr. Yates, tell me why
15   Mr. Yates would be the lead plaintiff in this case.
16            MR. ROSENFELD:  Well, Mr. Yates is --
17            THE COURT:  Do you know him?
18            MR. ROSENFELD:  I've spoken with him.
19            THE COURT:  Yes.  You ever met him?
20            MR. ROSENFELD:  Personally, no.  But I've spoken with
21   him on the phone.  He is very interested in this case.
22            THE COURT:  Once, twice?
23            MR. ROSENFELD:  Two or three times.
24            THE COURT:  Okay.
25            MR. ROSENFELD:  And other attorneys from my firm have
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

```
84A3ROTC                    Conference
 1   spoken with him as well.
 2            THE COURT:  Right.
 3            MR. ROSENFELD:  But we believe that he has a very
 4   strong financial incentive to pursue this case.  He is very
 5   motivated to pursue this case.  He wants to pursue this case.
 6            THE COURT:  Motivation, I bet you every one of these
 7   people sitting in this room, I bet you every one of them has
 8   spoken to a client who is motivated.
 9            MR. ROSENFELD:  I'm sure that's correct.
10            THE COURT:  Motivation probably be a wash, I would
11   say.
12            MR. ROSENFELD:  It would be a wash.
13            THE COURT:  It wouldn't be?
14            MR. ROSENFELD:  It would be a wash.
15            THE COURT:  So give me something more tangible than
16   motivation.
17            MR. ROSENFELD:  Your Honor, we are in the process
18   right now of evaluating the other movants, and going through
19   our analysis of their numbers, the way they have arrived at
20   their numbers, and the issues with respect to their adequacy
21   and typicality.  If we determine that there is a legitimate
22   basis for pursuing the motion further, we will file an
23   opposition brief.  If after reviewing the information we come
24   up with nothing, we realize there is no opportunity for our
25   clients to be lead plaintiffs, we will not file a motion.  A
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

84A3ROTC                     Conference

1   brief.
2            THE COURT:  Well, I am expecting -- what I am trying
3   to say is I am expecting everybody to file something.
4            MR. ROSENFELD:  That's right.  I know.  I meant in
5   further support.
6            THE COURT:  To tell me whether they're still in or
7   whether they're not in --
8            MR. ROSENFELD:  That's correct, your Honor.  That's
9   correct.
10           THE COURT:  That's what I am expecting.
11           MR. ROSENFELD:  That's exactly what we intend to do.
12           THE COURT:  Anybody else want to be heard?
13           MR. BROWER:  David Brower.  We represent the Kremser
14   Group.  I am going to try to answer some of the questions you
15   posed to my colleagues because I don't think they completely
16   answered.
17           First of all, the statute provides that it is the
18   plaintiff with the largest financial interest in the relief
19   sought by the class.  I think your Honor understands the relief
20   sought by the class, which would certainly be the damages in
21   the case and the recovery of what has been lost in the
22   litigation, which may have nothing to doing with market losses,
23   but clearly the course --
24           THE COURT:  Which of your clients?
25           MR. BROWER:  Mr. Kremser, who has $555,000.

14

84A3ROTC                    Conference

```
 1   Mr. Kremser, if you look at the papers, and I'm going to answer
 2   the Court's question now, if you look at the papers, right now
 3   there are three movants who have the largest claimed losses
 4   among all of the rest of the movants.  Okay.  Those are the
 5   First Affirmative Financial Network, who is the Wolf
 6   Haldenstein client, Mr. Burt's client.  KT Investments and
 7   Kendall Investments, which are I believe are claimed to be the
 8   same entity, they've put them together.  If you treat them
 9   separately one has 423 and one has 267.
10          THE COURT:  So your Mr. Kremser would be larger than
11   all but one of those.  You would be number two to FAFN?
12          MR. BROWER:  Correct.  You are going to say why don't
13   I step aside.
14          THE COURT:  I am not urging anybody to step aside.
15   Because I haven't read all the papers.  But now that you've
16   raised the question, it is an interesting hypothetical.
17          MR. BROWER:  Happy to respond.  As my colleague from
18   Mr. Coughlin's firm was trying to explain to the Court, there
19   are three requirements to be the lead plaintiff.  One is that
20   you have the largest financial interest.
21          THE COURT:  You would lose on that by $200,000.
22          MR. BROWER:  Correct.  Second, that you are typical of
23   the members of the class and that you will adequately represent
24   the class.  We believe we will demonstrate beyond gain set that
25   Affiliated -- whatever it is calling itself -- cannot and is
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84A3ROTC                    Conference

1   not a member of the class.  Never mind adequate or typical,
2   they have to -- to move, the first step before you start
3   looking at the financial loss and that sort of stuff, are they
4   a member of the class.  We are going to demonstrate that entity
5   is not a member of the class.
6         And even if it were a member, arguably a member of the
7   class, it is not typical nor adequate to represent the class.
8   That's going to be the fight.  And I think your Honor knows
9   from experience --
10        THE COURT:  The fight is between two of you.
11        MR. BROWER:  What I've heard is I'm going to see
12  motions from everybody saying everybody is no good.
13        I should point out to the Court there is an elephant,
14  there is one of these 800 pound elephants in the room.
15  Everyone sitting here are experienced lawyers.  There is case
16  law out there that says you cannot reconstitute your group
17  after the motions are made.  And everyone is kind of afraid to
18  bring that up.  What people are concerned about is once
19  Mr. Berger Montague's firm moved with this group of six people
20  to carve out Mr. Yates, is contrary to some of the case law
21  that says you can't redo your motion after you make it, you're
22  stuck with your group.
23        It doesn't allow, for instance, the two groups to go
24  talk to Mr. Burt and say we have the two largest people, let's
25  not make defendants happy and have a big fight, let's put

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84A3ROTC                    Conference
1  together our two largest people and go forward with that, which
2  would in this case be almost $2 million, would be a million and
3  a half bigger than everybody else, and frankly not subject
4  to -- ours is not subject to any meaningful attack.  You can
5  make up anything you want.  There are very creative lawyers
6  here.  At the end of the day there is going to immaterial sort
7  picky stuff.  But people are afraid to do that.  They are
8  afraid what the Court is going to do is look at those cases.
9  The one person who doesn't do it who comes in third or forth is
10 going to say this case in the Southern District of Florida or
11 this case in the Northern District of California where someone
12 tried to reconstitute a group, and boom, they were thrown out
13 automatically.  Because the argument under those cases is your
14 motion is your motion when you meet the 60-day deadline, and
15 anything you do after that is a new motion, and that makes it
16 moot because it's too late.
17         That's the 800 pound gorilla in the room.
18         The problem is, your Honor, except for one movant who
19 I am not sure counsel is even here today representing that
20 movant, who has a $43,000 loss, everyone is a group of
21 unrelated people.  There is no debate about that.  Every one of
22 these groups was aggregated.  Aggregation is appropriate under
23 lots of the case law.  The statute kind of suggests that an
24 aggregation has been going on since 1995.  And there are tests
25 for what's proper aggregation and not proper aggregation.  And

17

84A3ROTC                        Conference

1   it is pretty clear now you don't have to have people who are
2   related to have proper aggregation, but you do have to meet
3   certain requirements when you make your motion to demonstrate
4   your group is really a group.  Because we go back to what I
5   said earlier with regard to Affiliated whatever it's called,
6   Mr. Burt's client, you have to be a, quote, member of the class
7   when you make your motion.  That's step one.
8           Then you go into whether you have largest financial
9   interest and otherwise meet the requirements of Rule 23.  You
10  also have to be a proper group, as that term is understood
11  under the PSLRA when you make the motion.  You can't repair
12  your group later.
13          At the same time, if the Court is kind of indicating
14  to the parties it wants to hear from the largest individual
15  members of each of these groups, and why that person or entity
16  is the proper lead plaintiff as opposed to the other lead
17  plaintiffs, because we all know what everybody claims each
18  member's losses are, they are in all the papers, your Honor had
19  those numbers, they're there.  Well, then, I am sure the
20  parties are happy to talk to the members of their groups and
21  give them the Court's inclinations on this and advise them like
22  we advise any other clients.
23          But the moving plaintiffs here are in sort of a
24  Catch-22 circumstance.  To satisfy the Court, what the Court
25  seems to be indicating it's interested in hearing --

18

84A3ROTC                    Conference

 1          THE COURT:  No, no.  You would have me wrong because
 2    I'm not giving you any direction.  I'm just giving the
 3    direction that you have to comply with the statute.
 4          MR. BROWER:  I understand.
 5          THE COURT:  I will do my best to figure out who is the
 6    lead plaintiff in compliance with the statute.  I am not
 7    pushing you in one direction or another.
 8          MR. BROWER:  I understand.  I will note courts have
 9    sua sponte or at invitations of parties, typically at
10    footnotes, reached in and taken the largest satisfactory
11    members of a group or groups and appointed them as lead
12    plaintiff in cases, because the Court's obligation is obviously
13    to the class at the end of the day.
14          THE COURT:  Yes, but I'm not going to do your work for
15    you, so to speak.  That's not my intention.  So I'm looking for
16    a brief that explains and does so to the best that I understand
17    the law and in compliance with the law.  That's who I'll pick
18    as lead plaintiff.
19          MR. BROWER:  I hope I answered the Court's questions.
20          MR. RADO:  I'm Andrei Rado.  My firm represents the
21    Rawden Group.  I don't want to get into the motion.  I've heard
22    what the Court has said.  I can assure the Court we won't be
23    wasting anyone's time.  If there is no basis to continue with
24    our motion, we won't do so.
25          I think the real elephant in the room is there are
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

19

84A3ROTC                    Conference

1  parallel proceedings in the District of Maryland.
2          THE COURT:  So far, I can only deal with one case at a
3  time.  I've got enough on my hands with this case in the
4  Southern District for the moment.
5          So if counsel is right that everybody has submitted a
6  group, then why is it -- well, I am not really asking that
7  question.  You are saying if all other things were equal, I
8  would just add up the size of the group and the largest group
9  would win.
10         MR. BROWER:  That --
11         THE COURT:  If the other criteria were met, if they
12 were members of the class and they were typical.
13         MR. BROWER:  If you're a member of the class, if the
14 people, you look at the loss, you look at when they lost their
15 money.
16         THE COURT:  Do you think all these groups are legal
17 groups under the statute?  You are saying everybody's a group.
18         MR. BROWER:  The answer is no.
19         THE COURT:  You are saying you are allowed a group --
20         MR. BROWER:  No.  But they're not, and I will tell you
21 why without pointing fingers today.
22         THE COURT:  I understand.
23         MR. BROWER:  But I will tell you why.  The threshold
24 question has to be are you a member of the class in order to be
25 in the group.

20
84A3ROTC                    Conference

1           THE COURT:  Right.
2           MR. BROWER:  And because we believe there are several
3    members of various groups who are not legitimate class members
4    as a matter of standing under federal securities laws, they're
5    out.  You throw them out, and then readd up the losses of the
6    groups.
7           THE COURT:  Got it.
8           MR. BROWER:  They're back with the individual movant
9    with 42,000.  Some of them are back behind those guys.
10          THE COURT:  You think the case law is such that if
11   they're in the class you can group as you wish?
12          MR. BROWER:  If they're in the class you can group as
13   you wish, provided they have met the requirements to be an
14   appropriate group as that term has been interpreted by the
15   courts that allow groups.  And as was indicated, there is some
16   split, but there is some very, very well reasoned lengthy case
17   law on this issue.  It is now 12, 13 years under the statute.
18   There are a lot of cases, there has been a lot of litigation of
19   groups, and there is a lot of law on the issue both in this
20   district, within this circuit, and all over the country.  And
21   everybody looks to everybody else on this issue.  We're dealing
22   with federal statute after all.
23          And what you need -- there was some discussion of the
24   kinds of things courts have looked to to determine whether the
25   group is a cohesive, functioning entity.  Because at the end of

84A3ROTC                    Conference
1    the day the idea is to find the, quote, most adequate
2    plaintiff.  When it is a group, you need to know it can
3    function as a plaintiff like a human would function, give
4    instructions to his lawyer, control the litigation, supervise
5    the litigation.
6            Aggregations of hundreds of people, which were done in
7    1995 and 1996, people would get hundreds of people with 10
8    shares.  Courts have said no, that's not happening.
9            THE COURT:  How about aggregation of a husband and
10   wife?
11           MR. BROWER:  Aggregation of a husband and wife is the
12   classic aggregation, but they are two people.  They would be
13   treated as two.  Because they're not a single entity.  Husbands
14   and wives are no longer considered a single entity in this
15   country.  You have to demonstrate they can work together.  That
16   both of them are bringing their business acumen to the table,
17   to instruct the lawyers.  Otherwise you have one person who is
18   actually the plaintiff and one person who is a tool.  And the
19   statute is you can't have a member of a group who is a
20   non-entity, who is there for show.
21           But assuming they are both willing to do their job,
22   married people are the classic related aggregated group of two.
23   And then they can join other people if those other people have
24   a mechanism for working together.
25           Another perfect example is Fidelity.  That's what
                SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

84A3ROTC                    Conference

1   Congress had in mind, if you look at the legislative history,
2   it is the mutual funds, we're going to come in as plaintiffs in
3   securities cases.  Putting aside the naivete of Congress when
4   they thought those would be the lead plaintiffs, what they were
5   thinking is a family of mutual funds that were controlled by
6   Fidelity, and all purchased the same stock, would come in
7   together as a group.  So that would be another example of the
8   classic related group.
9           Again, none of the groups here as currently
10  constituted are groups of related persons.
11          THE COURT:  I get it.  So do the Rawdens get along?
12          MR. RADO:  Yes.  As far as I know, the Rawdens get
13  along quite well.
14          THE COURT:  Neither one of them is a tool?
15          MR. RADO:  Not my tool in any event.  The judge in
16  Maryland is presiding over the same motions as are before this
17  Court.  It is the same action, the same litigation, the same
18  class action, the same defendants.
19          THE COURT:  Right.
20          MR. RADO:  There is going to be -- the venue issue
21  will have to be resolved before this case proceeds to any
22  point.
23          THE COURT:  Right.
24          MR. RADO:  What some Courts have done is simply hold
25  off until that venue issue is resolved either by 1404 motions

84A3ROTC                    Conference

```
 1   filed with the district courts or an MDL panel motion.  And I
 2   just want to mention that to the Court, if that's something
 3   that could be done.
 4            THE COURT:  Wouldn't it be sensible to figure out who
 5   the lead plaintiff is and then to invite that person to, if
 6   they want to, make a motion to transfer the case to Maryland or
 7   not, to entertain it at that point?
 8            MR. RADO:  That would be one way to do it.
 9            THE COURT:  If you did it now, there might be a wide
10   difference of opinion among all of you.
11            MR. RADO:  Right.  There is nothing preventing the
12   judge in Maryland from also ruling on the motions before him.
13            THE COURT:  I recommend it.  No.  That's a little too
14   strong.  But I certainly have no opposition -- I have no,
15   actually, no position on what the judge in Maryland should do.
16   I think the judge in Maryland should be free to do whatever he
17   or she thinks is appropriate.
18            So, but what are you trying to say?
19            MR. RADO:  What I am suggesting is the best course may
20   be to wait until these issues are resolved.  Maybe we can hear
21   from defendant.
22            THE COURT:  Wait until they are resolved by who?
23            MR. RADO:  By either defendants who may file an MDL
24   motion.  That's often how they are resolved.  Or by the
25   plaintiffs themselves who may wish to transfer the action.  Or
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

84A3ROTC                          Conference

1  maybe we can hear about where they think the case should be.
2          THE COURT:  I get that.  There is an issue I am trying
3  to think how does it happen.  We could wait.  I am sure
4  something will happen if you wait long enough.
5          MR. RADO:  The defendants can move for an MDL in a
6  situation like this.  We have five cases or six cases in one
7  jurisdiction, I think five in another.  It make sense to do
8  that as opposed to have every case transferred under 1404.
9          MR. WEIDNER:  I'm James Weidner from Clifford Chance.
10 We represent the corporate defendant.  We have no dog in this
11 particular fight here.  Where we did have a dog --
12         THE COURT:  Which fight?
13         MR. WEIDNER:  Lead client.
14         THE COURT:  You don't care about that.  Do you care
15 about venue?
16         MR. WEIDNER:  Yes.  What we care about is all the
17 cases -- all of them -- be consolidated before one Court.
18 Since the plaintiffs don't seem to have any inclination for
19 filing a motion in that respect, we will within the next week
20 file a motion under 1407 before the MDL panel.
21         THE COURT:  You are going to make an application to
22 have all the cases -- are they pending in any other
23 jurisdictions?
24         MR. WEIDNER:  No.  Just two jurisdictions, Judge.
25         THE COURT:  How many cases all together?

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

84A3ROTC                    Conference

```
 1              MR. WEIDNER:  14 I believe.
 2              MR. BROWER:  There are 11.
 3              MR. WEIDNER:  There are 11 now?  Judge, apparently my
 4     chart is out of date.  There are 11.
 5              THE COURT:  You will be doing that --
 6              MR. WEIDNER:  Within the week.
 7              THE COURT:  Well, that answers your question.
 8              MR. RADO:  Yes.
 9              MR. WEIDNER:  Probably this venue.
10              THE COURT:  Anybody else?
11              MR. BURT:  Your Honor, Thomas Burt, Wolf Haldenstein.
12     I represent the First Affirmative and Ken Slater Group.  As you
13     already heard --
14              THE COURT:  He says you are not even a class member.
15     Should I let you talk?
16              MR. BURT:  I think you should, Judge.
17              THE COURT:  You may not have standing even.
18              MR. BURT:  As Mr. Brower said, Congress did intend
19     investment advisors like Fidelity.  First Affirmative is an
20     investment advisor.  And has --
21              THE COURT:  You are talking about FAFN?
22              MR. BURT:  FAFN is First Affirmative Financial
23     Network, Judge.  I'll answer a question you asked somebody
24     else.  I know those folks for six years now.
25              THE COURT:  Which folks?
```

26

84A3ROTC                    Conference

 1          MR. BURT:  First Affirmative.  I know their CEO, I
 2   know his right-hand man, I know --
 3          THE COURT:  No tool in that group, huh?
 4          MR. BURT:  I have met them.  These are not people that
 5   I've only known for three weeks.  I've known them for several
 6   years.
 7          First Affirmative has the standing to pursue the
 8   lawsuit.  That's going to come out in the briefing.  And we'll
 9   deal with it.
10          THE COURT:  How does he think you're not in the class?
11   I won't hold you or them to it.
12          MR. BROWER:  Me?
13          THE COURT:  No.  You are the one who thinks it.
14   You're confident that FAFN is a class member?
15          MR. BURT:  Yes, Judge.  It is -- unless Mr. Brower has
16   thought of something so creative that it is outside of my
17   imagination.
18          THE COURT:  He may have.
19          MR. BURT:  Whether the investment advisor can pursue
20   losses.  When he looks into it, he'll find that we have dotted
21   our i's and crossed our t's.
22          THE COURT:  So you think that -- you have a group too
23   in addition to FAFN?
24          MR. BURT:  We do, Judge.  Interestingly enough,
25   depending on how you count the class period, whether you count
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

27

84A3ROTC                    Conference

1  the last day or not, which there is a difference of one day.
2  Kenneth Slater, and Mr. Brower said before that Slater is two
3  entities.  Not really.  It is all his mother's money.
4          THE COURT:  Where is he?  I'm looking.
5          MR. BURT:  The FAFN Slater Group.  The other half is
6  Ken Slater on behalf of family money, two trusts that are
7  simply the assets of one person.
8          THE COURT:  I see.
9          MR. BURT:  It is all his mom's money.
10         If you include the last day of the class period, there
11  his losses go up so that -- I don't have it right in front of
12  me, but it is almost a tie with the Rawdens together.  I
13  thought the Court should know the lay of the land is really
14  Affirmative Slater, the Rawdens if taken as a couple, and
15  everybody else much further back, Kremser being fourth.
16         That's about all I have to say, Judge.
17         MR. BROWER:  Your Honor, I didn't say advisors.
18  Mr. Burt reworded what I said.  I said mutual funds.  Mutual
19  funds are corporations that own the securities they purchase.
20  And you buy shares in mutual funds.  Investment advisors,
21  particularly FN whatever.
22         THE COURT:  FAFN.
23         MR. BROWER:  Doesn't own the shares.  That's why he
24  has no standing.  They are individual accounts belonging to
25  individual customers.  Whether or not they have authority to

84A3ROTC                    Conference

1    bring lawsuits -- whether your broker, Merrill Lynch, can take
2    your brokerage account, and if you lost money, go off and where
3    it has some discretion to trade for you, go and off and bring
4    lawsuits for you under a statute that also has a fee shifting
5    provision, is a real question.  And I'm pretty sure --
6              THE COURT:  What's the answer to it?
7              MR. BROWER:  I haven't seen -- the papers were not
8    attached to the motions as they often are.
9              MR. BURT:  Judge, the answer to that is courts have
10   required a few different things.  But if you have express
11   permission or express power of attorney as an investment
12   advisor, you can pursue the loss of your beneficial owners as
13   you act as an attorney in fact, even without a express
14   provision.  You definitely can.  There are some cases that say
15   mere investment discretion is enough.  I don't know if those
16   cases have the better of the law.  Mr. Brower can brief it.
17             THE COURT:  What's the basis for FAFN?
18             MR. BURT:  Express power.
19             THE COURT:  You have written authorization from --
20             MR. BURT:  They have either been executed or will be
21   executed.  Either have been executed or will be executed, the
22   beneficial owner --
23             THE COURT:  How did the "will be executeds" come into
24   play?
25             MR. BROWER:  We'll need some discovery if they do
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

```
      84A3ROTC                    Conference
 1    this.
 2            MR. BURT:  Will be executed comes into play in that
 3    after checking with the beneficial owners to make sure they
 4    wanted First Affirmative to pursue the loss in this forum, they
 5    were going to execute limited powers of attorney to make it
 6    clear they had the power to do so, to forestall any objection
 7    to their standing.  And whether those have actually been signed
 8    or in the process I think doesn't matter.  By the time the
 9    opposition comes in, it will be done.  If they have the express
10    power to do it from the beneficial owners, then they can do it.
11    I don't think Mr. Brower is going to tell you that it is not
12    the law that if they have an express power of attorney to go
13    forward that they have it.
14            MR. BROWER:  I will tell him he's too late.
15            THE COURT:  How much worth of losses do you have in
16    your hand now, express powers?
17            MR. BURT:  I don't know.
18            MR. BROWER:  The question is when this motion was
19    filed.
20            THE COURT:  You don't know?
21            MR. BURT:  I don't know.  I don't know what's been
22    signed.
23            THE COURT:  That's puzzling.  How could you not know
24    it?
25            MR. BURT:  Because I'm dealing with First Affirmative,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

30

84A3ROTC                    Conference
 1    the head office in Colorado Springs.
 2              THE COURT:  Yes.
 3              MR. BURT:  Then there is a rep, then there's several
 4    clients who are beneficial holders.
 5              THE COURT:  Yes?
 6              MR. BURT:  So --
 7              THE COURT:  So to your knowledge nobody's signed.
 8              MR. BURT:  I don't reach out directly to the clients
 9    of First Affirmative.
10              THE COURT:  I am trying figure out what you know.  To
11    your knowledge nobody has authorized you to --
12              MR. BURT:  To my knowledge, everybody has told First
13    Affirmative that they have the authority to go forward.  Who
14    has actually signed the limited power of attorney, I don't
15    know.  And who just hasn't signed it, knows that they want
16    First Affirmative to do it and has received the piece of paper,
17    signed it and returned it, I don't know.  But I know that
18    everybody's told First Affirmative to go ahead.
19              THE COURT:  "Everybody" being how many people?
20              MR. BURT:  I don't know exactly.  It is between two
21    reps.  One of whom it's entirely family money, and I know the
22    rep and the family.  And the other one is another broker with
23    several investors.  How many is "several," I don't know.  A
24    handful.  It is not 300 people, Judge.  It is one rep with
25    family money and one broker with several clients, but "several"
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

31

84A3ROTC                      Conference

1   being not hundreds.  "Several" being a small number.
2           MR. BROWER:  Your Honor, of course the issue is when
3   they made a motion.
4           THE COURT:  I get it.
5           MR. BROWER:  Moreover, if you look at their numbers --
6           THE COURT:  I think this is a very helpful
7   conversation.
8           MR. BROWER:  I think Mr. Burt made the point his
9   numbers are also very weird because what they did is they took
10  separate accounts and they aggregated them as though they were
11  one account.
12          THE COURT:  I'll read all this in the oppositions.
13          MR. BURT:  In any event, Judge, Mr. Slater also has
14  losses that are far larger than Mr. Kremser.
15          THE COURT:  How about big are Mr. Slater's losses?
16          MR. BURT:  If you don't count the last day, they're
17  690, Judge.  If you do count the last day I believe they are
18  794.  That's all one person's money.
19          MR. BROWER:  But not Mr. Slater's, apparently,
20  according to Mr. Burt.
21          MR. BURT:  Judge, Mr. Slater is attorney in fact for
22  his mother's affairs.  And in fact Mr. Brower's previously
23  represented Mr. Slater.  I think he knows that.
24          MR. BROWER:  I have no idea.
25          THE COURT:  Okay.  I've heard enough.  So I'll look
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

32

84A3ROTC                              Conference
1    forward to the additional briefing in this case.
2              Nice to see you.
3                                      o0o
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KT INVESTMENTS, LLC, on behalf of itself and all others similarly situated, | Civil Action No. 2:07-CV-03388-TCP-ETB |
| Plaintiff, | |
| vs. | |
| MICHAEL STRAUSS, NICHOLAS R. MARFINO, MICHAEL A. McMANUS, JR., CATHLEEN C. RAFFAELI, JOHN A. JOHNSTON, IRVING J. THAU, KRISTIAN R. SALOVAARA, and STEVEN A. HOZIE, | JURY TRIAL DEMANDED |
| Defendants. | |

## DECLARATION OF KENNETH Z. SLATER AS MANAGER OF KT INVESTMENTS, LLC IN SUPPORT OF THE MOTION TO APPOINT THE TURCOT FAMILY/KT INVESTMENTS GROUP LEAD PLAINTIFF AND THE CONCOMITANT SELECTION OF LEAD COUNSEL

I, Kenneth Z. Slater, as manager of KT Investments, LLC duly declares as follows:

1. I am the manager of KT Investments, LLC ("KT Investments") a substantial institutional investor that manages a family trust. KT Investments, under my direction, manages real estate assets and various types of securities. I am a licensed attorney though I do not actively practice. KT Investments is one of the members of the Turcot Family/KT Investments Group, the proposed Lead Plaintiff. I have personal knowledge of the facts set forth herein and, if called as a witness, would testify competently thereto.

2. KT Investments and the Turcot Family together have suffered a substantial loss arising out the malfeasance of the defendants (an amount that exceeds $390,000) and I believe the Turcot Family/KT Investments Group possesses the largest financial interest in the outcome

of this litigation of any relevant movant for lead plaintiff. I also believe that, standing alone, the Turcot Family has the largest loss notwithstanding the inclusion of my loss calculations.

3.     Accordingly, this declaration is made in support of the Turcot Family/KT Investments Group's Motion for an Order Appointing the Turcot Family/KT Investments Group Lead Plaintiff (the "Motion").

4.     Moreover, by way of the Motion, I support the position that the Turcot Family should be appointed sole Lead Plaintiff if the Court decides it is appropriate to appoint a sole Lead Plaintiff. I, however, would be willing to remain active in the litigation and assist my chosen counsel in all possible ways and possibly serve as a proposed class representative if circumstances warrant my doing so. I do believe, however, that the interests of the Class would be best served by a Lead Plaintiff that consists of both an individual and institutional investor.

5.     The Turcot Family/KT Investments Group also seeks an order appointing Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Lead Counsel.

6.     KT Investments acquired American Home Mortgage Investment Corp. ("AHM" or the "Company") securities during the Class Period, as set forth in the Certification filed with this Motion and to the Complaint filed in this action annexed to the declaration of my attorney Gregory M. Nespole, a partner with Wolf Haldenstein.

7.     As evidenced by the Certification annexed to the Complaint filed by KT Investments on August 15, 2007, KT Investments suffered a loss in excess of $125,000 as a result of that acquisition of AHM stock.

8.     KT Investments has played an active role in this litigation from the outset. KT Investments directed its longstanding counsel Wolf Haldenstein to investigate the circumstances surrounding AHM's precipitous decline and necessity to seek protection in bankruptcy.

2

9.    Indeed, I played a substantial role in shaping the complaint's allegations and as evidenced in KT Investments' Certification, I have reviewed the complaint drafted by Mr. Nespole's firm and discussed the case with Mr. Nespole and his partner Mark C. Rifkin. I am thus very familiar with the allegations therein, and authorized my counsel to take the necessary steps to commence this litigation.

10.   I have discussed this case and my responsibilities as Lead Plaintiff extensively with Messrs. Rifkin and Nespole of Wolf Haldenstein and I understand that Lead Counsel owes a fiduciary duty to all members of the proposed Class to provide fair and adequate representation.

11.   I also understand that I have a fiduciary duty to the class and a responsibility to act in the Class's best interests.

12.   I have prior experience in this type of litigation. I was appointed lead plaintiff on behalf of the proposed class in an action styled *In re Bausch & Lomb, Inc. Securities Litigation,* Master File No. 01 CV (W.D.N.Y) and was later appointed a class representative pursuant to rule 23 of the Federal Rule of Civil Procedure. That action was settled by Mr. Rifkin and his firm on very satisfactory terms.

13.   Subsequent to filing this action and executing the Certification, I contacted the Wolf Haldenstein firm concerning perceived malfeasance in Thornburg Mortgage Inc. Mr. Nespole and his colleagues investigated the situation and we elected to proceed with a claim. As of this time, I do not intend to move for lead plaintiff in that action and, instead, focus my energy on this case.

14.   I understand that it is my responsibility as a member of the Turcot Family/KT Investments Group to keep fully informed at all times concerning the status and progress of this

3

action, the strengths and weaknesses of the case, and the prospects for any resolution of this matter.

15.     I have conferred with Mr. Raoul M. Turcot of the Turcot Family via conference call, along with our counsel. I believe that the combination of my experience along with that of Mr. Turcot - a sophisticated individual investor who suffered a large loss - will afford the class excellent and diverse representation.

16.     As a member of the Turcot Family/KT Investments Group, I will consult with Mr. Turcot, and our counsel when necessary on important motions, settlement discussions, trial preparation and trial, and shall have the authority and responsibility to direct counsel with respect to each of these events after receiving the benefits of Lead Counsel's advice. In addition, we will meet or otherwise communicate via telephone or via written correspondence at least quarterly amongst ourselves and Lead Counsel for status updates. We will communicate as often as is necessary to ensure the vigorous and efficient prosecution of this case.

17.     I understand that I have the right to select counsel as part of the lead plaintiff process. In connection therewith, I have made a considered judgment in retaining Wolf Haldenstein as lead counsel. I believe that the firm possesses extensive experience in prosecuting complex securities class actions and has the resources necessary to prosecute this action. Indeed, I have retained them in the past and together we achieved an excellent result in the *Bausch & Lomb Litigation* referenced above.

18.     I contacted Wolf Haldenstein on my own initiative to initiate my role in the case, rather than having been directly contacted by the attorneys and asked to serve in a lead plaintiff capacity.

4

19. I have discussed attorneys' fees with counsel and understand that they will be compensated on a contingency basis, and further understand that they will receive only what the Court awards them on successful result of the litigation, as Counsel's portion of the recovery.

20. In addition, I am aware that it may be necessary, and I am willing if the need arises, to travel in connection with this litigation.

21. I believe I and Mr. Turcot implemented sufficient procedures to provide for efficient prosecution of the action, including a regular schedule to discuss and evaluate the action as it progresses.

22. I also understand that the Turcot Family is prepared to serve as the sole Lead Plaintiff should the Court decide it is appropriate to select only one shareholder to serve as a Lead Plaintiff. I am amenable to that strategy but, as stated above, will remain active and available to assist counsel when needed.

23. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:

September 27, 2007

Kenneth Z. Slater
Manager of KT Investments, LLC

5

## PLAINTIFF'S CERTIFICATION

Kenneth Z. Slater, as Manager of KT Investments, LLC ("Plaintiff"), declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in American Home Mortgage Investment Corp. securities during the Class Period specified in the Complaint are as follows:

| Date | # Shares/transaction | Price |
|------|---------------------|-------|
| 6/2/05 | 1,000/purchase | $31.96 |
| 11/14/05 | 1,200/purchase | $29.01 |
| 11/28/05 | 1,300/purchase | $31.29 |
| 4/10/07 | 1,000/purchase | $20.46 |

5. During the three years prior to the date of this Certificate, Plaintiff has served as a representative party for a class in *In re Bausch & Lomb, Inc. Securities Litigation*, Master File No. 01 CV 6190 (W.D.N.Y.), under the federal securities laws

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___14___ day of August 2007.

_____
Kenneth Z. Slater

485869