**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH S. GELMIS, Individually and On Behalf OF All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>        vs.<br><br>EARL W. COLE, III, MICHAEL L. FALCONE, WILLIAM S. HARRISON, MARK K. JOSEPH, MELANIE M. LUNDQUIST, GARY A. MENTESANA, ROBERT J. BANKS, CHARLES C. BAUM, RICHARD O. BERNDT, EDDIE C. BROWN, ROBERT S. HILLMAN, DOUGLAS A. McGREGOR, ARTHUR S. MEHLMAN, FRED N. PRATT, JR., and MUNICIPAL MORTGAGE & EQUITY, LLC,<br><br>                       Defendants. | Civil Action No. 1:08-cv-00980-RMB |
| JULES ROTHAS, Individually and On Behalf OF All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>        vs.<br><br>MICHAEL L. FALCONE, WILLIAM S. HARRISON, MARK K. JOSEPH, MELANIE M. LUNDQUIST, DAVID B. KAY, and MUNICIPAL MORTGAGE & EQUITY, LLC,<br><br>                       Defendants. | Civil Action No. 1:08-cv-01120-RMB |

[Captions continued on the following pages.]

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS**
**OF THE YATES, MMA INVESTORS AND KREMSER GROUPS**
**FOR APPOINTMENT OF LEAD PLAINTIFF**

| | |
|---|---|
| ALEX D'ANGELO, Individually and On Behalf OF All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> EARL W. COLE, III, MICHAEL L. FALCONE, WILLIAM S. HARRISON, MARK K. JOSEPH, MELANIE M. LUNDQUIST, GARY A. MENTESANA, ROBERT J. BANKS, CHARLES C. BAUM, RICHARD O. BERNDT, EDDIE C. BROWN, ROBERT S. HILLMAN, DOUGLAS A. McGREGOR, CHARLES M. PINKNEY, ARTHUR S. MEHLMAN, FRED N. PRATT, JR., and MUNICIPAL MORTGAGE & EQUITY, LLC, <br><br> Defendants. | Civil Action No. 1:08-cv-01331-RMB |
| JUDITH GREENBERG, Individually and On Behalf OF All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> EARL W. COLE, III, MICHAEL L. FALCONE, WILLIAM S. HARRISON, MARK K. JOSEPH, MELANIE M. LUNDQUIST, GARY A. MENTESANA, ROBERT J. BANKS, CHARLES C. BAUM, RICHARD O. BERNDT, EDDIE C. BROWN, ROBERT S. HILLMAN, DOUGLAS A. McGREGOR, BARBARA C. LUCAS, ANGELA A. BARONE, ARTHUR S. MEHLMAN, FRED N. PRATT, JR., and MUNICIPAL MORTGAGE & EQUITY, LLC, <br><br> Defendants. | Civil Action No. 1:08-cv-02005-MGC |

[Captions continued on the following page.]

| | |
|---|---|
| NAOMI RAPHAEL, Individually and On Behalf OF All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL L. FALCONE, WILLIAM S. HARRISON, MELANIE M. LUNDQUIST, CHARLES C. BAUM, EDDIE C. BROWN, ROBERT S. HILLMAN, ARTHUR S. MEHLMAN, FRED N. PRATT, JR., and MUNICIPAL MORTGAGE & EQUITY, LLC, <br><br> Defendants. | Civil Action No. 1:08-cv-02190-RMB |
| ARNOLD J. ROSS, Individually and On Behalf OF All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> EARL W. COLE, III, MICHAEL L. FALCONE, WILLIAM S. HARRISON, MARK K. JOSEPH, and MUNICIPAL MORTGAGE & EQUITY, LLC, <br><br> Defendants. | Civil Action No. 1:08-cv-02199-RMB |

## <u>TABLE OF CONTENTS</u>

<u>Page no(s).</u>

PRELIMINARY STATEMENT ................................................................................. 1

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.    THE FAFN/SLATER GROUP IS THE MOST ADEQUATE PLAINTIFF UNDER THE PSLRA AND SHOULD BE APPOINTED LEAD PLAINTIFF ...................................... 2

    A.    The FAFN/Slater Group Has the Largest Financial Interest in the Relief Sought By the Class ...................................................................................................... 2

    B.    The FAFN/Slater Group Is An Appropriate Group ................................. 5

    C.    Considered Alone, Either Kenneth Slater Or  FAFN Is The Most Adequate Plaintiff ................................................................................................ 7

    D.    Both FAFN and Mr. Slater Have Standing ............................................ 9

    E.    The Kremser Group Is Inadequate ...................................................... 12

II.    WOLF HALDENSTEIN SHOULD BE APPOINTED LEAD COUNSEL TO ENSURE ADEQUATE RESOURCES ARE DEDICATED TO THE PROSECUTION OF THIS MATTER .................................................................................................. 15

    A.    The Appointment of Wolf Haldenstein Adler Freeman Herz LLP as Lead Counsel is Warranted to Ensure Adequate Representation for the Class .......................... 15

    B.    Wolf Haldenstein Is Optimal Counsel To Represent The Class........................... 16

CONCLUSION ........................................................................................................ 17

CERTIFICATE OF SERVICE ................................................................................. 18

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Alfaro v. Caprock Communications Corp.*,
  Case No. 3:00-CV-1613-R, 2000 U.S. Dist. LEXIS 21743 (N.D. Tex. Dec. 8, 2000) ...............9

*Andrada v. Atherogenics, Inc.*,
  05 Civ. 00061 (RJH), 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 19, 2005) ..........................2

*In re Baan Co. Securities Litigation*,
  186 F.R.D. 214 (D.D.C. 1999)....................................................................................................5

*Bell v. Ascendant Solutions, Inc.*,
  No. 3:01-CV-0166-P, 2002 WL 638571 (N.D. Tex. Apr. 17, 2002)...........................................6

*In re DaimlerChrysler AG Securities Litigation*,
  216 F.R.D. 291 (D. Del. 2003) .................................................................................................10

*Ezra Charitable Trust v. Rent-Way, Inc.* ("*Rent-Way I*"),
  136 F. Supp. 2d 435 (W.D. Pa. 2001)........................................................................................9

*Ezra Charitable Trust v. Rent-Way, Inc.* ("*Rent-Way II*"),
  218 F.R.D. 101 (W.D. Pa. 2003) ...............................................................................................9

*Ferrari v. Impath, Inc.*,
  03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y.  July 15, 2004) ......................15

*Garfinkel v. Memory Metals, Inc.*,
  695 F. Supp. 1397 (D. Conn. 1988)............................................................................................8

*In re Host America Corp. Securities Litigation*,
  No. 3:05 CV 1250 (JBA), 236 F.R.D. 102 (D. Conn. Apr. 10, 2006)........................................5

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................................10

*Kremser v. Quarles & Brady, LLP*,
  201 Ariz. 413 (Ct. App. 2001) .................................................................................................13

*Lax v. First Merchants Acceptance Corp.*,
  97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997).........................................2

*Newman v. Eagle Building Technologies*,
  209 F.R.D. 499 (S.D. Fla. 2002)..............................................................................................10

*In re Oxford Health Plans, Inc., Securities Litigation,*
  182 F.R.D 42 (S.D.N.Y. 1998) ..................................................................5

*In re Party City Securities Litigation,*
  189 F.R.D. 91 (D.N.J. 1999) ...................................................................15

*Roth v. Knight Trading Group, Inc.,*
  228 F. Supp. 2d 524 (D.N.J. 2002) ............................................................5

*Sofran v. Labranche & Co., Inc.,*
  220 F.R.D. 398 (S.D.N.Y. 2004) .........................................................7, 10

*Smith v. Suprema Specialties, Inc.,*
  206 F. Supp. 2d 627 (D.N.J. 2002) ..........................................................10

*In re Turkcell Iletisim Hizmetler, A.S. Securities Litigation,*
  209 F.R.D. 353 (S.D.N.Y. 2002) .............................................................10

*Walsh v. Northup-Grumman Corp.,*
  162 F.R.D. 440 (E.D.N.Y. 1995).................................................................8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.,*
  216 F.R.D. 248 (S.D.N.Y. 2003) ........................................................10, 13

## STATUTES AND RULES

Federal Rules of Civil Procedure
  Rule 23 ......................................................................... *passim*

Private Securities Litigation Reform Act (1995),
  15 U.S.C. § 78u-4(a), *et seq.*......................................................2, 12, 15

Securities Exchange Act (1934)
  Section 21D.............................................................................................1

15 U.S.C. § 77z-1(a)(3)(B) ...............................................................................5

## OTHER AUTHORITIES

Brian P. Murray, *Does An Asset Manager Have Standing Under The Federal Securities Laws*?
  79 St. John's L. Rev. 405 (Spring 2005)...................................................11

## PRELIMINARY STATEMENT

Movant, the FAFN/Slater Group, consisting of members First Affirmative Financial Network ("FAFN") and Kenneth Slater, who represents KT Investments, LLC and Kendall Investments, LLC, ("Slater") submits this memorandum of law in opposition to the competing motions of the Yates, MMA Investors and Kremser groups for appointment as lead plaintiff.

## INTRODUCTION

On March 31, 2008, the FAFN/Slater Group was one of seven movants for appointment as lead plaintiff of the instant captions (the "Actions"). Presently pending before the Court are four motions for consolidation and the appointment of lead plaintiff and lead counsel, pursuant to Section 21D of the Exchange Act.  As detailed in the FAFN/Slater Group's motion, its members constitute a small cohesive unit of two investors, FAFN, an institution and Mr. Slater, who represents investment vehicles that purchased and/or acquired shares of Municipal Mortgage & Equity, LLC. ("MMA" or the "Company") during the Class Period,[1] and suffered damages indentified in the initial motion as approximately $1,450,000 resulting from defendants' violations of the federal securities laws.

Thus, the FAFN/Slater Group, under the PSLRA, is both presumptively the most adequate lead plaintiff and the only Movant that has demonstrated its adequacy to protect the interests of the class.  Accordingly, its motion for appointment as lead plaintiff and its selections of lead counsel should be granted.

---

[1] The Class Period identified in the initial complaint and used in the FAFN/Slater Group's initial motion extends from January 30, 2003 through January 28, 2003, inclusive.  One movant, the Kremser Group, urges a class period that extends one futher day, as discussed below.

## ARGUMENT

I.   **THE FAFN/SLATER GROUP IS THE MOST ADEQUATE PLAINTIFF UNDER THE PSLRA AND SHOULD BE APPOINTED LEAD PLAINTIFF**

### A.   The FAFN/Slater Group Has the Largest Financial Interest in the Relief Sought By the Class

Section 15 U.S.C. § 78u-4(a)(3)(B)(i) of the Exchange Act requires the court to appoint "as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  "The PSLRA thus provides that the most adequate plaintiff has (1) 'the largest financial interest' in the relief sought by the class *and* (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure."  *Andrada v. Atherogenics, Inc.*, 05 Civ. 00061 (RJH), 2005 U.S. Dist. LEXIS 6777, at *8 (S.D.N.Y. Apr. 19, 2005) (emphasis added) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)).

The primary focus of this analysis is on the relative size of the losses experienced by the various movants for lead plaintiff.  In determining the largest financial interest, courts have generally weighed four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period [retained shares]; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.  *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 11, 1997); ("the four-factor inquiry has been widely accepted in the case law").

Counsel, representing the aforementioned proposed lead plaintiffs, appearing before the Court on April 10, 2008, was advised to take a position in our lead plaintiff motion papers as to who we think should be appointed lead plaintiff under the PSLRA.  Every motion filed today in this matter should agree that the FAFN/Slater Group should be appointed lead plaintiff.  Taking the figures from each movant's initial motion, the FAFN/Slater Group has the largest interest in

the litigation by every measure, whether judged by losses, total investment, net purchases or cost

of investment[2]:

| MOVANT | SHARES PURCHASED | NET SHARES PURCHASED | COST OF PURCHASES | LOSS |
|---|---|---|---|---|
| **FAFN/Slater Group** | **117,692** | **100,025** | **$2,465,895.13** | **$1,454,865.89** |
| MMA Investors | 75,525 | 62,025 | $1,568,741.78 | $1,002,735.38 |
| Kremser Group | 71,951.53 | 46,451.53 | $1,558,212.69 | $830,778.87 |
| Yates Group | 46,014 | 45,664 | $1,074,730.71 | $757,010.65 |

The Kremser Group has proposed a longer class period than the other movants. The

Kremser Group includes Mr. David Kremser who during the Class Period purchased MMA

shares as manager of Elk Meadows Investments, LLC and on his own behalf. The Kremser

Group's Class Period ("Kremser Class Period") is from January 23, 2003 through January 29,

2008. Seemingly, the Kremser Class Period is the combination of the first-filed complaint's

Class Period and their original complaint's Class Period of May 3, 2004 through January 29,

2008. Adding the additional day to their Class Period has the effect of including Mr. Kremser's

personal losses, since he purchased 25,000 shares on his own behalf on January 29, 2008.

Whether the Court chooses to use the Class Period established by every other proposed lead

plaintiff or the Kremser Class Period, the FAFN/Slater Group has the largest financial interest of

any movant as Mr. Kenneth Slater also purchased 25,000 MMA shares on January 29, 2008. If

the Court chooses to use the Kremser Class Period, the FAFN/Slater Group has losses totaling

$1,559,886.14 while the Kremser Group has losses totaling $921,650.33.

---

[2] Proposed lead plaintiffs Arnold Ross (*see* Docket No. 36) and Tony Broy (*see* Docket No. 37) have withdrawn their motions. The Rawden Group will not endeavor to be appointed lead plaintiff unless the FAFN/Slater Group cannot serve. *See* Docket No. 39. Accordingly, the data and calculations for Arnold Ross, Tony Broy and the Rawden Group are not included in the following charts.

The movants' losses in the Kremser Class Period are represented in the following chart:

| MOVANT | SHARES PURCHASED | NET SHARES PURCHASED | COST OF PURCHASES | LOSS |
|---|---|---|---|---|
| **FAFN/Slater Group** | **142,692** | **125,025** | **$2,804,895.13** | **$1,559,886.14** |
| Kremser Group | 100,951.53 | 75,451.53 | $1,837,752.69 | $924,138.87 |

If the Court considers only the size of the individuals or entities that constitute the Movant Groups, the members of the FAFN/Slater Group are each, individually, larger than any other investor movant. The largest individual investor for the January 30, 2003 through January 28, 2008 Class Period are represented in the following chart:

| MOVANT | SHARES PURCHASED | NET SHARES PURCHASED | COST OF PURCHASES | LOSS |
|---|---|---|---|---|
| **FAFN** | **62,019** | **44,352** | **$1,490,337.16** | **$763,522.80** |
| **Kenneth Slater** | **55,673** | **55,673** | **$1,056,557.97** | **$691,343.09** |
| David A. Kremser | 50,000 | 25,000 | $1,050,910.95 | $473,910.95 |
| Norman Feinberg | 20,600 | 20,600 | $419,731.62 | $286,243.62 |
| Robert Yates | 15,700 | 15,700 | $339,277 | $237,740.12 |

The largest individual investor for the January 30, 2003 through January 29, 2008 Class Period are represented in the following chart:

| MOVANT | SHARES PURCHASED | NET SHARES PURCHASED | COST OF PURCHASES | LOSS |
|---|---|---|---|---|
| **Kenneth Slater** | **80,673** | **80,673** | **$1,314,557.97** | **$792,800.42** |
| **FAFN** | **62,019** | **44,352** | **$1,490,337.16** | **$767,085.72** |
| David Kremser | 75,000 | 50,000 | $1,293,410.95 | $555,910.95 |

The FAFN/Slater Group or its members has the largest financial interest in the recovery sought by the class, by every definition; under either proposed class period; and whether the group as a whole or its members are considered. The FAFN/Slater Group is presumptively the most qualified investor, thus mandating appointment as lead plaintiff for the Actions. The only circumstance under which any other movant could prevail is if the FAFN/Slater Group were proven to fail the typicality or adequacy criteria of Federal Rules of Civil Procedure 23(a)("Rule

23"). The FAFN/Slater Group suffers no such deficiency.

      **B.      The FAFN/Slater Group Is An Appropriate Group**

      The PSLRA provides that the "most adequate plaintiff" may be either a "person or group of persons." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). The language of the statute itself makes clear the propriety of appointing a group as lead plaintiff: as noted above, it creates a rebuttable presumption that "the most adequate plaintiff is the person *or group of persons* that … in the determination of the court has the largest financial interest," and otherwise satisfies certain procedural and class action related requirements. In addition, every remaining movant for lead plaintiff is a group.

      The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation. Courts have routinely held that the appointment of a group of persons to act as lead plaintiff is appropriate under the PSLRA and, indeed, is sometimes favored in light of the diversity of experience and interests of the group members. *See In re Oxford Health Plans, Inc.* 182 F.R.D 42, 49 (S.D.N.Y. 1998). The majority of courts considering the issue have allowed a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class. *See Id.*, at 49; *See also In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C. 1999*); In re Host America Corp. Securities,* 236 F.R.D. 102, 106 (D.Conn. 2006) (groups of three to five the maximum); *Roth v. Knight Trading Group, Inc.*, 228 F. Supp. 2d 524, 529 (D.N.J. 2002) (appointing group of one investment advisor and one individual as lead plaintiff).

      FAFN and Mr. Slater have agreed to act as a group in this litigation. Mr. Slater has a wealth of experience to rely upon when acting on behalf of the Class as he is an attorney and

trustee.  As such, Mr. Slater understands the fiduciary duty he owes to the Class. FAFN is a sophisticated institutional investor hired by investors to invest money at its discretion.  The FAFN/Slater Group is very small and cohesive as there are only two members.  Courts have found diversity of class representation compelling.  Diversity of class representatives is preferred because it "helps to create balance among the demographics of the plaintiff group members, and improves diversity of experience. *Bell v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 WL 638571, at *5 (N.D. Tex. Apr. 17, 2002) (the Court appointed three investors as lead plaintiff where the two plaintiffs with the largest financial interest were a foreign corporation based in Israel and an individual residing in Germany).

Too large a group, however, can be unwieldy.  A group with five or more entities is hard to manage.  Lead plaintiffs struggling to juggle schedules just to confer with each other, distracts from the ultimate task of representing the Class.  In this scenario, all of the group members will not be heard.  Certain members dominating a large, unwieldy group at the expense of smaller members is not what Congress had in mind when it enacted the PSLRA.

Mr. Slater and FAFN's CEO submitted individual declarations stating that they would consult with each other and proposed lead counsel Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") when necessary on important motions, settlement discussions, trial preparation and trial.  In addition, Mr. Slater and FAFN declared that they would meet or otherwise communicate via telephonic or written correspondence at least quarterly with Wolf Haldenstein for status updates.

Calls between two investors and their single firm are much easier to schedule and execute, and therefore are likely to occur more regularly, than a conference call with five members, and two firms, as would be required for the Kremser Group.  *See* Declaration of David

A.P. Brower in support of the Kremser Group's motion, together with attachments A and B thereto.

The small combination of Mr. Slater and FAFN will afford the Class excellent, cohesive and diverse representation. Groups featuring institutional and individual investors are favored by some courts. *See Sofran v. Labranche & Co.,* 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (institutional investor and several individual investors appointed).

### C.    Considered Alone, Either Kenneth Slater Or FAFN Is The Most Adequate Plaintiff

Movant Kenneth Slater represents KT Investments, LLC and Kendall Investments, LLC. As stated in his March 31, 2008 Declaration, Mr. Slater requests to be appointed lead plaintiff as part of the FAFN/Slater Group. Mr. Slater also stated his willingness to serve as the sole lead plaintiff should the Court decide it is appropriate to select only one shareholder to serve as a lead plaintiff.

Mr. Slater, affirmed that the investment vehicles for which he represents lost more than $690,000.[3] Of the movants presently before the Court, Mr. Slater's losses represent the largest by any single investor except, depending on the class period, FAFN. As demonstrated in this memorandum Mr. Slater easily satisfies the adequacy and typicality requirements of Rule 23.

Movant FAFN, an institution, is the type of lead plaintiff Congress had in mind when it created the PSLRA. Mr. George Gay is the Chief Executive Officer of FAFN, which is the investment advisor that made the relevant MMA investments for FAFN's clients. FAFN's clients suffered a substantial loss arising from defendants' malfeasance in an amount that exceeds $760,000 regardless of the Class Period employed. FAFN's clients gave FAFN

---

[3] Per the Kremser Class Period, Mr. Slater's losses are $792,800.42.

discretionary authority to make investment purchases or sales in the clients' account, in accordance with an investment policy that guides management of the clients' account without the prior knowledge or approval of the client. If an investment advisor has full and complete discretion and authority to purchase and sell securities then that advisor can be appointed lead plaintiff.

Mr. Slater and FAFN seek to represent a Class that purchased MMA shares during the Class Period, who have identical, non-competing and non-conflicting interests. Mr. Slater and FAFN, individually or as a group satisfy the typicality requirement because the investment vehicles they represent: (i) acquired MMA common stock; (ii) at market prices allegedly artificially inflated as a result of defendants' violations of the federal securities laws; and (iii) suffered damages thereby. Thus, typicality is satisfied since the claims asserted by Mr. Slater and FAFN "arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Walsh v. Northup-Grumman Corp.*, 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

Under Rule 23 the representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23 is met by: (1) the absence of potential conflict between the named plaintiff and the class members, and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *Garfinkel v. Memory Metals, Inc.,* 695 F. Supp. 1397, 1405 (D. Conn. 1988).

There is no conflict, real or potential, between either Mr. Slater or FAFN and the Class. Mr. Slater and FAFN suffered the same financial losses that the Class suffered, in fact, they have suffered more than any other movant and relish the opportunity to represent the Class and

retrieve the money lost because of defendants' fraud.

### D.    Both FAFN and Mr. Slater Have Standing

Since the passage of the PSLRA, several cases have held that investment advisors and managers, under some circumstances, have standing to sue on the investments they make for clients.  One such case included a discussion of the issue which raised several factors that have recurred in other cases.  In *Ezra Charitable Trust v. Rent-way*, 136 F. Supp. 2d 435 (W.D. Pa. 2001)("*Rent-Way I*"), the Court appointed an asset manager as lead plaintiff, because denying standing to investment advisers "would, in our view, eliminate a number of potentially highly capable lead plaintiffs based on an unduly narrow interpretation of 'financial interest' under the PSLRA."  The Court then noted that such a restrictive rule would "eliminat[e] an entire class of potential lead plaintiffs that may often be strongly aligned with plaintiff classes as well as competent to adequately oversee the efforts of counsel would not best serve the purpose" of the PSLRA.

The Court noted several factors that supported its conclusion: that the investment adviser was attorney-in-fact for the clients (*Id.* at 441); that it was authorized to bring the suit (*Id.*); and that it had discretionary authority over the client's investments (*Id.* at 442).  As to this last factor, the Court said, "because of this unrestricted decision-making authority, we conclude that [the adviser] is a 'purchaser' under the federal securities laws with standing to sue in its own name."

In a later class certification decision, *Ezra Charitable Trust v. Rent-way*, 218 F.R.D. 101 (W.D. Pa. 2003)("*Rent-Way II*"), it became clear that the asset manager was not the attorney-in-fact for the clients.  The Court then held that this was not a "controlling factor" and clarified that its prior opinion turned on the power to "independently determine which securities to purchase for its clients' accounts."  *Id.* at 108.  *See Alfaro v. Caprock Comm. Corp.*, Case No. 3:00-CV-1613-R, 2000 U.S. Dist. LEXIS 21743, at *7 (N.D. Tex. Dec. 8, 2000)(unfettered investment

discretion alone grants standing).

Since *Rent-Way I*, courts have used each of the several factors discussed by the *Rent-Way* courts, generally marshalling them in the service of the holding that investment advisors can sue, and be named as lead plaintiffs, in their own right. Some courts reach this conclusion with little discussion. *See, e.g., In re DaimlerChrysler AG Sec. Litig.,* 216 F.R.D. 291, 298-99 (D. Del. 2003). Other courts have relied on explicit authority. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2004)(manager with explicit authority to sue did have standing to bring the claim in its own name). Some turn on factor expressly disclaimed in *Rent-Way II*, the power to act as attorney-in-fact. *See Kaplan v. Gelfond,* 240 F.R.D. 88, 95 (S.D.N.Y. 2007); *Roth v. Knight Trading Group, Inc.,* 228 F. Supp. 2d 524, 529-31 (D.N.J. 2002).

Other cases have reached the same result via other reasoning: that the PSLRA was intended to favor institutions as lead plaintiffs, *Sofran v. LaBranche & Co.,* 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004); or that the adviser demonstrated an intent to take the litigation seriously and prosecute it actively, *Newman v. Eagle Bldg. Tech.*, 209 F.R.D. 499, 506 (S.D. Fla. 2002).

By contrast, courts that have denied standing to investment advisors are relatively few in number, and have held that mere discretion is not sufficient where the investment manager is not attorney in fact and does not have the authority to pursue the claim. *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.,* 209 F.R.D. 353, 358 (S.D.N.Y. 2002); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627 (D.N.J. 2002). The latter case seems directly at odds with the *Rent-Way II* court's later holding that attorney-in-fact power is not necessary for an adviser with unfettered discretion.

A thorough discussion of the decisions on investment adviser standing is contained in

Brian P. Murray, *Does An Asset Manager Have Standing Under The Federal Securities Laws*?, 79 St. John's L. Rev. 405 (Spring 2005). To briefly summarize, investment advisers generally have standing to bring claims and act as lead plaintiff where their investment discretion is unfettered. Some courts have additionally relied on other factors, including explicit authority to act as attorney-in-fact and pursue a claim. A relative handful have rejected standing when this authority is absent, though courts are divided on this point.

In this case, both Mr. Slater and FAFN meet any standard. Mr. Slater represents the two entities identified in his March 31, 2008 Declaration, which are investment vehicles for the assets of his aged mother, Shirley Slater. Mr. Slater, exercises full power over the affairs of these entities, including the power to bring and dispose of legal claims. FAFN received direct authorization from its clients, the beneficial owners of the MMA shares it purchased. The clients have since affirmed FAFN's power to act as attorney-in-fact in this regard by executing limited powers of attorney with regard to legal claims arising from the MMA investment.

The very arguments that Mr. Kremser's counsel make demonstrate that both FAFN and Mr. Slater have standing. In the certification annexed as Exhibit A to Mr. Brower's March 31, 2008 Declaration, Mr. Kremser identifies the plaintiff as "David A. Kremser + Elk Meadow Investments, LLC" and then signs for "David Kremser individually and d/b/a Elk Meadows Investments, LLC." On the immediate following page, he identifies his purchases on the last day of the longest class period, January 29, 2008, with an asterisk and a note reading, "Personal account; all other trades conducted by David Kremser as manager for Elk Meadow Investments, LLC. If Mr. Kremser, as an investment manager for the Elk Meadow entity, has standing to bring the suit on its behalf, then FAFN and Mr. Slater, also acting for persons or entities who are the beneficial owners of the investment and acting with authority, have standing, and are typical

and adequate of the class they seek to represent.

> ### E.  The Kremser Group Is Inadequate

Each of the remaining FAFN/Slater Group's competing applicants for lead plaintiff against MMA suffers because they do not have the largest financial interest in the relief sought by the Class.  The first step in determining the most adequate lead plaintiff is straightforward: courts adopt a presumption that the most adequate lead plaintiff is the entity that "has the largest financial interest in the relief sought by the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  The Kremser Group, as detailed in its "Movants' Purchases and Losses" chart attached to its motion for appointment as lead plaintiff and selection of lead counsel, details a loss of only $924,138.87.  The Kremser Group's losses are significantly less than those suffered by the FAFN/Slater Group's approximate $1,450,000 loss.  Accordingly, the Kremser Group is clearly ***not*** the entity with the "largest financial interest" in the litigation, as the FAFN/Slater Group's transactions and loss calculations illustrate a substantially larger financial interest in the Actions.  As a result of the foregoing, it is clear that the Kremser Group does not have the largest financial interest of the Movants seeking lead plaintiff status in the MMA litigation.  Accordingly, it has not satisfied the Rule 23 requirements necessary for appointment as lead plaintiff against MMA.

Finally, Mr. Kremser's personal loss arises from purchases made entirely on the 29th of January, 2008.  These purchases were made at prices under $10 per share.  While purchasing after all the wrongdoing is disclosed has no effect on adequacy or typicality, these purchases cannot be said to have been made in reliance on the material misstatements or omissions.  The losses Mr. Kremser suffered on his personal purchases arose from the further fall in stock prices after the news was out, based on the price of the stock over a 90-day look-back period.  Since Mr. Kremser will be unable to show loss causation or damages as to these purchases, they should not count towards his loss.  His loss should be calculated, for this reason, based on a class period

ended January 28, 2008; those losses are shown above as $473,910.95.

Even more troubling to the Kremser Group's lead plaintiff prospects is that the Group's largest member has a standing issue. Mr. Kremser's certification states that he is the manager of Elk Meadows. As the Kremser Group's counsel has argued, mere authority to purchase stock will not automatically confer standing to sue. *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003).

Unlike FAFN and Mr. Slater, Mr. Kremser's counsel has not disclosed who exactly Mr. Kremser invests for or what the source of his authority is. Mr. Kremser, while treating himself and the Elk Meadow entity separately in his certification, states in his declaration (at Exhibit B to the aforementioned Brower Declaration) that "I have been managing my own portfolio for 15 years …" His declaration does not discuss the Elk Meadow entity or who its beneficial owners are. He does not even say outright that he has authority to act for it beyond investing its funds, or even that he has discretion over the investment decision.

While Mr. Kremser's counsel has not described Elk Meadow Investments, LLC, there is at least some indication that it is a family investment vehicle. In *Kremser v. Quarles & Brady, LLP*, 201 Ariz. 413 (App. Ct. 2001), Mr. Kremser and Elk Meadow were plaintiffs together with Bernice E. Kremser, Michael P. Kremser, Stanley A. Kremser; and Holly M. Kremser. In that case, Mr. Kremser had dealings with a company that he became an interim officer of, and to which Elk Meadow made a loan. *Id.* at 415. The case itself does not disclose whether these apparent family members have interests in the entity. This Court is left to wonder if Mr. Kremser is investing for his own account only (as his declaration suggests) or for both himself and some group of family members (as his certification suggests). If the latter, even if Mr. Kremser is a trustee or otherwise empowered to take all actions for the entity, the argument

13

applies equally to Mr. Slater, who acts for all purposes as the trustee for the entities that contain Shirley Slater's investments.

His certification also states that between his personal stake and as manager of Elk Meadows he purchased a total of 50,000 shares of MMA.  However, the same certification actually shows purchases of 75,000 shares:  Mr. Kremser purchased and sold 25,000 MMA shares before November 30, 2007.  Mr. Kremser subsequently purchased 25,000 MMA shares between January 2-9, 2008 for Elk Meadow.  Then, on January 29, 2008, he purchased 25,000 shares of MMA common stock for his personal account.  Mr. Kremser purchased 75,000 shares, not 50,000 shares reflected as a total.

As demonstrated above, investment managers have standing to bring class action lawsuits for securities violations if they have sole authority to invest their client's money or, at most, if they act as attorneys in fact.  Mr. Kremser's certification does not demonstrate that he meets either standard.

The Kremser Group's fortunes rise and fall with Elk Meadows.  Mr. Kremser may not have standing to bring suit on behalf of Elk Meadows.  Elk Meadows represents more than two-thirds of Mr. Kremser's purported losses.  Without Elk Meadows, Mr. Kremser has personally lost less than $75,000, a far cry from the $555,910.95 his certification claims he lost.  Not only is Mr. Kremser's $75,000 loss insufficient to be lead plaintiff as compared to the individual members of the FAFN/Slater Group, it is not even the largest loss within the Kremser Group.  Calculated without this entity's losses, the Kremser Group's losses fall from $924,138.87 to less than $500,000.00.

## II.   WOLF HALDENSTEIN SHOULD BE APPOINTED LEAD COUNSEL TO ENSURE ADEQUATE RESOURCES ARE DEDICATED TO THE PROSECUTION OF THIS MATTER

### A.   The Appointment of Wolf Haldenstein Adler Freeman Herz LLP as Lead Counsel is Warranted to Ensure Adequate Representation for the Class

The PSLRA provides that the appointed lead plaintiff can recommend counsel to represent the class.  15 U.S.C. 78u-4(a)(3)(B)(v).  "The decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the district court."  *In re Party City,* 189 F.R.D. 91, 114 (D.N.J. 1999); *see also* Conference Report at 685 ("[Congress] does not intend to disturb the court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interest of the plaintiff class").  The court must determine whether the proposed class counsel is "qualified, experienced, and generally able to conduct the litigation." *Ferrari v. Impath, Inc.*, 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *19 (S.D.N.Y.  July 15, 2004).  Courts may decline to approve Lead Plaintiff's suggested counsel "to protect the interests of the class."  *Id.,* at *25 (*citing* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)).

In considering the appointment of class counsel, Rule 23(g)(1) of the Federal Rules of Civil Procedure provides the following guidelines:

> (C) In appointing class counsel, the court
>
> (i)  must consider:
>
> - the work counsel has done in identifying or investigating potential claims in the action,
>
> - counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
>
> - counsel's knowledge of the applicable law, and
>
> - the resources counsel will commit to representing the class; [and]

> (ii)  may consider any other matter pertinent to counsel's ability
> to fairly and adequately represent the interests of the class.

Fed. R. Civ. P. 23(g)(1).

In a complex class action involving millions of dollars, defendants can be expected to expend substantial legal resources in their defense.  To adequately represent the plaintiff class in this action, counsel will have to employ significant in-house and outside resources such as forensic accountants, investigators and damage analysts.  Given the complexities of the case and the extensive experience and resources of the law firm, the appointment of Wolf Haldenstein as Lead Counsel is warranted to ensure the effective representation of the class.  Wolf Haldenstein has litigated numerous complex securities class actions involving a variety of financial instruments including bring them to trial, if necessary, and would draw on its collective experiences and resources to zealously represent all Class Members in this litigation.

### B.    Wolf Haldenstein Is Optimal Counsel To Represent The Class

Wolf Haldenstein has a strong, established and unblemished reputation for providing a full range of sophisticated legal services, including a long history of prosecuting class actions involving complex securities matters.  In addition to offices in New York, Wolf Haldenstein has offices in California and Illinois truly giving Wolf Haldenstein a national presence.  Wolf Haldenstein was one of the lead or other primary counsel in securities class action cases that have recouped billions of dollars on behalf of investor classes.  The firm has received a great deal of favorable judicial recognition which indicates the high regard in which it is held.  The following is a partial list[4] of substantial recoveries obtained in representative past class action

---

[4] The Court is respectfully directed to the Affidavit of Thomas H. Burt filed with the FAFN/Slater Group's opening memorandum on this motion, at Exhibit D, for a more detailed recitation of Wolf Haldenstein Adler Freeman & Herz LLP's achievements and qualifications.

cases in which Wolf Haldenstein acted as Lead Counsel or in some other significant role and is illustrative of the experience it has in litigation of this magnitude:

- *In re Initial Pub. Offering Sec. Litig.*, 21 MC 92 (SAS) (S.D.N.Y.) (executive committee member; proposed settlement guaranteeing $1 billion class recovery)

- *In re MicroStrategy, Inc. Securities Litigation*, Civ. No. 00 473 A (E.D. Va.) (class recovered $160 million in cash and securities)

- *Kurzweil v. Philip Morris Cos.*, 94 Civ. 2373, 94 Civ. 2546 (S.D.N.Y.) (securities fraud) (class recovered $116.5 million in cash)

## CONCLUSION

For the foregoing reasons, and those set forth in its opening motion and supporting memorandum, the FAFN/Slater Group respectfully requests that the Court grant its motion to appoint FAFN/Slater Group as lead plaintiff in the Action; and approve Wolf Haldenstein Adler Freeman & Herz LLP as lead counsel for the Class; and deny all competing motions.

DATED: April 17, 2008

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s/ Thomas H. Burt
Thomas H. Burt, Esq. (TB-7601)
George T. Peters, Esq. (GP-6203)
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

**Proposed Lead Counsel**

507230v9

17

## <u>CERTIFICATE OF SERVICE</u>

I, George T. Peters, one of Movant's attorneys, hereby certify that on the 17th day of April, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.


<u>/s/ George T. Peters, Esq.</u>
George T. Peters, Esq.

Dated: April 17, 2008

18