# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH S. GELMIS, Individually And On Behalf of All Others Similarly Situated, ) ) ) )<br><br>Plaintiff, )<br><br>vs. )<br><br>EARL W. COLE, III, et al., )<br><br>Defendants. ) ) ) ) | **CASE NUMBER: 08-CV-00980**<br><br>**JUDGE RICHARD M. BERMAN** |

(Captions continued on following pages)

**MEMORANDUM IN FURTHER SUPPORT OF THE KREMSER GROUP'S MOTION TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS**

|  |  |
|---|---|
| JULES ROTHAS, Individually And On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>MUNICIPAL MORTGAGE & EQUITY, LLC, et al.,<br><br>     Defendants. | **CASE NUMBER: 08-CV-01120**<br><br>**JUDGE RICHARD M. BERMAN** |
| ARNOLD J. ROSS, Individually And On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>EARL W. COLE, III, et al.,<br><br>     Defendants. | **CASE NUMBER: 08-CV-01299**<br><br>**JUDGE RICHARD M. BERMAN** |
| ALEX D'ANGELO, Individually And On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>MUNICIPAL MORTGAGE & EQUITY, LLC, et al.,<br><br>     Defendants. | **CASE NUMBER: 08-CV-01331**<br><br>**JUDGE RICHARD M. BERMAN** |

| | |
|---|---|
| JUDITH GREENBERG, Individually And On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | **CASE NUMBER: 08-CV-02005** |
| vs. ) | **JUDGE RICHARD M. BERMAN** |
| MICHAEL L. FALCONE, et al., ) ) | |
| Defendants. ) | |

| | |
|---|---|
| NAOMI RAPAHEL, Individually And On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | **CASE NUMBER: 08-CV-02190** |
| vs. ) | **JUDGE RICHARD M. BERMAN** |
| MUNICIPAL MORTGAGE & EQUITY, LLC, et al., ) ) ) | |
| Defendants. ) | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION .................................................................................................... 1

   A.    The Kremser Group Is the Presumptive Lead Plaintiff .................................... 3

     1.    The Kremser Group Is a Proper Lead Plaintiff Group ............................... 3

     1.    Both FAFN and Slater Lack Standing to Bring This Suit ......................... 7

   B.    The Rawden Group Has Conceded It is Not the Most Adequate Plaintiff and Three
     of Its Members Have No Loss Causation and Have No Damages ..................................... 17

     1.    Prices in Daryl Bonyor's Certification Are Inaccurate ............................. 19

     2.    MMA Investors Is Not An Appropriate Group Under the PSLRA ...................... 20

     3.    Counsel for MMA Violated New York Ethical Rules ................................ 22

   C.    The Yates Group ............................................................................ 23

   D.    The Court Should Approve The Kremser Group's Choice of Lead Counsel ........... 23

   CONCLUSION .................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.,* 74 F. Supp. 2d 352, 361-62 (S.D.N.Y. 1999) ................................................................................................................. 18

*Bank One S'holders Class Action,* 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000)................................. 8

*Berger v. Compaq Comp. Corp.,* 257 F.3d 475, 478 n.2 (5th Cir 2001) ........................................ 20

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) ..................................................... 7

*Bowman v. Legato Sys., Inc.,* 195 F.R.D. 655, 658 (N.D. Cal. 2000) ........................................... 22

*Brooks v. Interlink Electronics, Inc*., CV 05-8133 PA (SHx), Order (C.D. Cal. July 17, 2006).. 17

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 573, 580 (D.N.J. 2001) ........................................................................................................................... 8

*Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 U.S. Dist. LEXIS 22059, at **5-7 (N.D. Cal. Dec. 14, 2001) .......................................................................................................... 11

*Dura Pharm.*, 544 U.S. 336 (2005) ............................................................................................ 17

*In re Baan Sec. Lit.,* 186 F.R.D. 214, 216-217 (D.D.C. 1999) ..................................................... 20

*In re Cardinal Health Inc. Sec. Litig.,* 226 F.R.D. 298, 311 (S.D. Ohio 2005)...................... 10, 21

*In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001)...................................................... 20

*In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 918-20 (E.D. Mich. 2005) .......................... 18

*In re Comverse Tech., Inc. Sec. Litig*, 2007 U.S. Dist. LEXIS 14878, *13 (E.D.N.Y. March 2, 2007) ............................................................................................................................. 18

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522, 2006 U.S. Dist. LEXIS 25819, at * 27-28 (N.D. Cal. May 3, 2006) ............................................................... 18

*In re Eaton Vance Corp. Sec. Litig*, 219 F.R.D. 38, 42 (D. Mass. 2003) .................................... 14

*In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005)................................................ 4, 11

*In re Gemstar-TV Guide Int'l Inc.* 209 F.R.D. 447, 450-451 (C.D. Cal. 2002) ........................... 21

*In re Gibson Greetings Securities Litigation*, 159 F.R.D. 499 (S.D. Ohio) ................................ 16

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003) ......................................................................................................................... 18

*In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) .................. 11, 21

*In re Network Assocs., Inc. Sec. Litig.,* 76 F. Supp.2d 1017, 1026 (N.D. Cal. 1999)....... 4, 8, 9, 21

*In re NYSE Specialists Securities Litigation*, 240 F.R.D. 128 (S.D.N.Y 2007)..................... 12, 13

*In re Oxford Health Plans Inc., Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) ...................... 4, 7

*In re Peregrine Sys., Inc. Sec. Litig.,* No. 02-cv-870-J (RBB), 2002 U.S. Dist. LEXIS 27690, at
    **56-7, 60 (S.D. Cal. Oct. 9, 2002) ................................................................. 10

*In re Sonus Networks, Inc. Sec. Litig.,*229 F.R.D. 339,342-43 (D. Mass. 2005)......................... 20

*In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-19 (N.D. Ohio 1999) ..................... 11, 12

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 358 (S.D.N.Y 2002)............. 8

*In re Veeco Instru., Inc*., 233 F.R.D. 330, 334-35 (S.D.N.Y. 2005)............................................. 17

*In re Versata, Inc. Sec. Litig*., No. 01-cv-1439, 2001 U.S. Dist. LEXIS 24270, at *17 (N.D. Cal.
    Aug. 17, 2001) ...................................................................................................... 4, 21

*In re Vonage IPO Sec. Litig*., Civil No. 07-177-FLW, 2007 U.S. Dist. LEXIS 66258, *27-*28,
    *30 & n.8 (D.N.J. Sept. 6, 2008) ................................................................................ 20

*Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 330 (S.D.N.Y. 1993) ................................ 16

*Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007)................................................................ 9

*Lax v. First Merchants Acceptance Corp.,* Case No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at
    **12-14 (N.D. Ill. Aug. 6, 1997) ................................................................................ 11

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc*., No. 00-3605, 2000 U.S. Dist.
    LEXIS 16712 at *13-14 (D.N.J. Nov. 16, 2000) ....................................................... 5

*Montoya v. Mamma.com Inc.*, 2005 U.S. Dist. LEXIS 10224, *7-8 (S.D.N.Y. May 31, 2005) .... 5

*Newman v. Eagle Building Technologies*, 209 F.R.D. 499, 503 (S.D. Fla. 2002)......................... 3

*Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. 2005).................. 9

*Rozenboom v. Van Der Moolen Holding, N.V., No. 03-Civ. 8284,* 2004 U.S. Dist. LEXIS 6382 at
    *11 (S.D.N.Y. Apr. 14, 2004)............................................................................... 4, 5

*Singer v. Nicor, Inc.*, 02 C 5168, 2002 U.S. Dist. LEXIS 19884, at **7-9 (N.D. Ill. Oct. 16,
    2002) .................................................................................................................... 11

*Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-35 (D. N.J. 2002) ............. 9, 11, 12

*Sofran v. LaBranche & Co.,* 220 F.R.D. 398, 400-03 (S.D.N.Y. 2004) .......................................... 4

*Switzenbaum v. Orbital Sciences Corp.,* 187 F.R.D. 246, 250 n.5 (E.D. Va. 1999) ................... 11

*Warth v. Seldin*, 422 U.S. 490 (1975) ....................................................................................... 12

*Weinberg v. Atlas Air Worldwide Holdi*ngs, Inc., 216 F.R.D. 248**,** 255 (S.D.N.Y. 2003) ............ 9

*Weiss v. Friedman, Billings, Ramsey Group, Inc., et al.*, 2006 U.S. Dist LEXIS 3028 (S.D.N.Y. 2006) ........................................................................................................................... 18

*Weisz v. Calpine Corp.,* No. C02-1200-SBA, 2002 U.S. Dist. LEXIS 27831, at *22 ................. 10

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................................ 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...................................................................................... 23

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................................. 23

15 U.S.C. §77z-1(a)(2)(A) ........................................................................................................ 13

15 U.S.C. §78u-4(a) ................................................................................................................... 2

15 U.S.C. §78u-4(a)(2)(A)(vi) .................................................................................................. 14

15 U.S.C. §78u-4(a)(3)(A) ........................................................................................................ 23

15 U.S.C. §78u-4(a)(3)(B)(ii)(I)(bb) .......................................................................................... 8

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ................................................................................................ 6

15 U.S.C. §78u-4(a)(3)(B)(iv) .................................................................................................... 9

The Kremser Group, with losses of $924,138.87, respectfully submits this memorandum of law in further support of its motion for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and in opposition to all competing motions.

## I.  INTRODUCTION

Eleven related securities class actions have been filed on behalf of all purchasers of Municipal Mortgage & Equity, LLC ("MuniMae" or the "Company") common stock during the period from January 30, 2003 and January 29, 2008, inclusive (the "Class Period") and/or in connection with the Company's February 3, 2005 Secondary Public Offering and through the Company's dividend reinvestment plan.  On March 31, 2008, in addition to the Kremser Group, six other motions were filed by movants seeking appointment as lead plaintiffs in this action.  On April 11, 2008, Arnold J. Ross's motion to withdraw was granted.  On April 17, 2008 Tony Broy withdrew.  Five movants remain, one of which (the Rawden Group) concedes it is not the presumptive lead plaintiff.  FAFN/Slater Group, Rawden Group, and the so-called "MMA Investors," claim losses greater than the Kremser Group.  However, none of these "groups" meets the applicable requirements of the PSLRA or the other Lead Plaintiff requirements.

The movant with the purported largest losses, FAFN/Slater Group, consists of First Affirmative Financial Network ("FAFN"), and two investment vehicles -- KT Investments LLC ("KT") and Kendall Investments LLC ("Kendall") -- represented by an individual, Kevin Slater. Fist and foremost, counsel for FAFN/Slater has conceded that FAFN had no authority to bring this lawsuit for its clients (April 10, 2008 Transcript of status conference at 14:17 – 15: 22).  *See* Declaration of Kim E. Miller ("Miller Decl.") submitted herewith at Exhibit A.  Indeed, FAFN, which does not own the shares, had no standing to file a lawsuit or make a lead plaintiff motion for its customers' accounts.

Moreover, Mr. Slater, the representative of KT and Kendell, is individually, or through one of these entities, a frequent plaintiff for the Wolf Haldenstein firm.  However, Mr. Slater failed to file a proper PSLRA certification, which would, *inter alia*, have elucidated his prior activities

and his relationship with his counsel.  The failure to submit a certification in the form required by 15 U.S.C. §78u-4(a), alone disqualifies him.  Moreover, based on Mr. Slater's counsel's open court statements, it is clear that Mr. Slater is not the person with the financial interest in the losses claimed by Kendall and KT – rather, the financial interest is that of his mother who has neither sought to be a lead plaintiff nor appeared in this case.  Indeed, there is no evidence Mr. Slater's mother – the real party in interest – is even aware this action exists.

The movant with the purported next largest loss, the Rawden Group, has already conceded that it is not the presumptive lead plaintiff.  *See* The Rawden Group's Response To Competing Motions For Consolidation, Appointment of Lead Plaintiff.  Although it effectively abandoned its motion here, since the Rawden Group has not withdrawn, the substantive reasons for which it should not be appointed lead plaintiff must be addressed herein.  It is not surprising that the Rawden's have conceded they are not the most adequate plaintiff, as three of its four members sold ***all*** of their MuniMae holdings prior to the curative disclosures on January 28 and 29, 2008 that ended the Class Period.  Since there are no alleged partial curative disclosures linked to the alleged wrongdoing, *see, e.g.*, Gelmis Complaint at ¶¶116-119; Rothas Complaint at ¶¶47-50, these Rawden Group members cannot show loss causation under the Securities Exchange Act of 1934 (the "Exchange Act") and thus, have no claim here. Only a single member of the Rawden Group, Joseph Rawden, still held shares at the end of the Class Period, but Mr. Rawden only claims losses of less than $380,000 (well below the Kremser Group's losses), and, in any event, failed to make a timely motion as a sole lead plaintiff movant.

Finally, the movant group claiming the third largest losses, "MMA Investors," has not shown that it has authority to include all of its purported losses.  MMA Investors is also a group that lacks cohesiveness and has not demonstrated its willingness and ability to work together to manage the litigation effectively and oversee counsel.  In fact, there is nothing to indicate any of the members of the group have ever communicated with one another or even understand that they are collectively moving to be appointed lead plaintiff in this litigation.  Finally, MMA Investors chosen counsel engaged in direct solicitations of clients in direct violation of applicable

2

New York Ethics Rules.

Accordingly, the Kremser Group is the "most adequate plaintiff" because it is the only properly constituted movant "group" and it has the largest financial interest among the competing movants who also satisfy the Fed. R. Civ. P. Rule 23 typicality and adequacy prongs. The Kremser Group, with losses of $924,138.87, is a cohesive group that properly submitted certifications and declarations with its opening motion demonstrating its understanding of its responsibilities as lead plaintiff and its willingness and ability to effectively manage this litigation.

## ARGUMENT

### A.    The Kremser Group Is the Presumptive Lead Plaintiff

For the reasons discussed in Sections B-D herein below, none of the three movant groups which allege higher losses than the Kremser Group constitute either proper "groups" under the PSLRA or can otherwise claim to be the presumptive lead plaintiff. Therefore, the Kremser Group is the presumptive lead plaintiff. For the reasons discussed in this Section, the Kremser Group is both typical and adequate and therefore the presumption that the Kremser Group is the most adequate lead plaintiff cannot be rebutted and the Kremser Group's motion should be granted and its selection of counsel should be approved.

#### 1.    The Kremser Group Is a Proper Lead Plaintiff Group

The PSLRA expressly refers to the "*person or group of persons* that…has the largest financial interest in the relief sought…" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Thus, the fact that the Kremser Group is moving as a "group" does not affect its suitability to serve as lead plaintiff, because it is the type of group contemplated by Congress under the PSLRA to serve as lead plaintiff in federal securities law actions. As an initial matter, the aggregation of losses by a group for the purposes of the PSLRA is proper. "The idea that plaintiffs may aggregate their losses into a group to show the largest financial interest derives from the language of the PSLRA, which states that the most adequate plaintiff is the 'person or group of persons.'" *Newman v. Eagle Building Technologies*, 209 F.R.D. 499, 503 (S.D. Fla. 2002) (quoting 15

U.S.C. §78u-4(a)(3)(B)(iii)(I)).  Accordingly, most courts have concluded that the PSLRA authorizes plaintiffs to aggregate their losses for the purposes of lead plaintiff determination.  *See e.g., In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005) (the "majority view" in the Second Circuit holds that "unrelated investors may aggregate;" and the Court concluded that "where aggregation would not displace an institutional investor as presumptive Lead Plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as Lead Plaintiff, assuming they meet other necessary requirements."); *Sofran v. LaBranche & Co.,* 220 F.R.D. 398, 400-03 (S.D.N.Y. 2004) (aggregating losses of four individual investors with one institutional investor and appointing as lead plaintiff group).

In addition, in determining a proper group under the PSLRA, courts have concluded that a group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive. *See, e.g., Rozenboom v. Van Der Moolen Holding, N.V., No. 03-Civ. 8284,* 2004 U.S. Dist. LEXIS 6382 at *11 (S.D.N.Y. Apr. 14, 2004) (*citing Weltz v. Lee*, 1909 F.R.D. 129, 133 (S.D.N.Y.)); *In re Oxford Health Plans Inc., Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998). These courts have noted that the "text of the PSLRA does not limit the composition of a 'group of person' to those only with a pre-litigation relationship, nor does the legislative history provide a sound enough foundation to support such a gloss." *See In re Versata, Inc. Sec. Litig*., No. 01-cv-1439, 2001 U.S. Dist. LEXIS 24270, at *17 (N.D. Cal. Aug. 17, 2001)(citing *In re Baan Sec. Litig.,* 186 F.R.D. 214, 216 (D. D.C. 1999)).  Other courts have required a group seeking appointment as lead plaintiff to "explain and justify its composition and structure to the court's satisfaction." *See, e.g., In re Versata,* 2001 U.S. Dist. LEXIS 24270, at *17; *In re Network Assocs., Inc. Sec. Litig.,* 76 F. Supp.2d 1017, 1026 (N.D. Cal. 1999).

Here the Kremser Group satisfies the most stringent requirements for a "group" to act as lead plaintiff under the PSLRA developed by the courts.  As shown in the sworn declarations previously submitted by the individual members of the Kremser Group, the Kremser Group is a small, cohesive group of investors who have agreed to prosecute this Action together; to

4

regularly consult with each other regarding the prosecution of this litigation through face-to-face and electronic communications; how they will share information; how they will manage the litigation together a group; how the litigation will be managed on a day-to-day basis; how decisions will be made and executed; and how counsel will be managed.  These declarations militate heavily in favor of the appointment of the Kremser Group as lead plaintiff. *See, e.g., Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc*., No. 00-3605, 2000 U.S. Dist. LEXIS 16712 at *13-14 (D.N.J. Nov. 16, 2000) ("cohesiveness of a group" demonstrated through declarations "advis[ing] [the court] of" *inter alia* "its sophistication; ability and inclination to actively oversee the litigation"; "the past and continued meetings between the [group's members] and outside counsel"; "the fact that the investors chose outside counsel (not vice versa)"; procedures and protocols to make decisions in the case).

The Kremser Group includes five sophisticated individual investors, each with a significant financial interest in the litigation, who were in communication with each other prior to the filing of The Kremser Group's motion, have agreed upon a litigation strategy, and have signed Declarations submitted with their opening motion – *unlike any other competing movant group*.[1] Therefore, the group has cohesiveness and manageability, two prime concerns of the courts in appointing groups as lead plaintiffs under the PSLRA. As Judge Brieant explained in *In re Oxford*, "the PSLRA expressly contemplates the appointment of more than one plaintiff, and this Court finds no basis in the statute for the distinction drawn by the SEC between competing and non-competing groups of plaintiffs. . . ." 182 F.R.D. at 22-24. *See also Montoya v. Mamma.com Inc.*, 2005 U.S. Dist. LEXIS 10224, *7-8 (S.D.N.Y. May 31, 2005) (appointing a "diverse yet cohesive" group of investors); *Rozenboom*, 2004 U.S. Dist. LEXIS 6382 (citing cases saying that "previously unrelated persons may be acceptable as a lead plaintiff candidate so long as the

---

[1] As the operating agreement submitted herewith (Miller Decl. Ex. B at Sections 4.1-4.8) shows, Mr. Kremser is the registered agent and sole manager of  Elk Meadows Investments, LLC ("Elk Meadows"), a Kremser family company, and is authorized to act on its behalf.  Elk Meadow's transactions are set forth in Mr. Kremser's certification.

group is relatively small.").[2]

By contrast, as demonstrated below, none of the other so-called "groups" can meet the initial standing requirement of the PSLRA to be appointed a lead plaintiff because none are a proper "group of persons" under the PSLRA.  Unless an aggregated lead plaintiff movant is a proper "group" as that term has been interpreted by the courts, regardless of the size of its aggregated members' aggregated losses, it cannot be considered for appointed as a lead plaintiff let alone granted the presumption of being the "most adequate plaintiff."  That presumption is reserved only for the "person or group of persons" that meets the PSLRA definitions of those terms.  Therefore, with respect to the other movants "group's" applications, the Court will not need to reach the second step of the statutory process of considering possible arguments to rebut that presumption against other competing "groups," because none of them can meet the threshold requirement of being a cognizable "group" at all; instead, they are improper movants, masquerading as a "group," disqualified *ab initio* from seeking to be appointed Lead Plaintiff, and there can be no PSLRA presumption in their favors to rebut.  The Kremser Group, which, as demonstrated below, is the only proper "group" under the PSLRA from among the competing movants, should be appointed Lead Plaintiff in the consolidated Action.

Further demonstrating that the Kremser Group is the "most adequate plaintiff" here, unlike all other movants, the Kremser Group's motion encompasses class members with both Section 11 and Section 10(b) claims (*see*, *e.g.*, Kremser Opening Br. at 1), and included a member with those Section 11 claims.  The PSLRA requires that the lead plaintiff have a sufficient interest in the outcome of the case to ensure vigorous advocacy.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)

_____

[2] Although case law permits groups to serve as lead plaintiff, should this Court decide to select an individual plaintiff instead, David Kremser of the Kremser Group, with $555,910 in losses, would be the appropriate lead plaintiff.  Mr. Kremser made a timely motion, in the alternative, for appointment as an individual in the even the Court determines that a single lead plaintiff rather than a group is appropriate.  Declaration of David A. P. Bower in Support of the Motion of the Kremser Group to Consolidate Related Actions; To Be Appointed Lead Plaintiff; And to Approve Proposed Lead Plaintiff's Choice of Counsel ("Brower Decl."), Exh. B.

(providing that the financial stake in the outcome of the litigation is reasonably representative of the ability of a party or parties to function as lead plaintiff).  Nevertheless, none of the other lead plaintiff movant groups includes a representative of members of the Class with Section 11 damages.  "The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was *not intended to obviate the principle of providing the class with the most adequate representation* and in general the Act must be viewed against established principles regarding Rule 23 class actions."  *In re Oxford*, 182 F.R.D. at 49  (emphasis added).  Rule 23 requires that the claims of the representative parties are typical of the claims of the class and that the representative parties will fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a).  No movant other than the Kremser Group satisfies this adequacy or typicality requirement of Rule 23 for Class members with Section 11 claims.  Because of the differences between the standards of proof and remedies, the interests of Class members with Section 11 claims will need a separate representative with standing to assert those claims.  The Kremser Group provides that representation, making it the "most adequate" lead plaintiff here.

**B.    The FAFN/Slater Group Has No Standing and Is Otherwise Inadequate**

**1.    Both FAFN and Slater Lack Standing to Bring This Suit**

The FAFN/Slater Group cannot be appointed lead plaintiff because FAFN is a money manager, not the owner of the shares or the accounts holding the shares at issue here.  It is FAFN's *clients*, **not FAFN** who suffered the purportedly $763,522.80 in losses in MuniMae stock that FAFN attempts to claim as its own.  FAFN is not a Class member, has no financial interest in this litigation, and its counsel has already admitted that at the time this motion was made pursuant to the statutorily mandated deadline on March 31, 2008, FAFN did not have the legal authority to sue or to seek lead plaintiff status utilizing its client's losses as its own.  *See* Miller Decl. Ex. A, April 10, 2008 transcript at.14-15.

FAFN is *not* Class members and did not incur any loss on transactions in Muni Mae shares during the Class Period.  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) (holding that only actual purchasers and sellers of securities have standing to sue under

securities laws).  Instead, it acted on behalf of undisclosed and non-participating customers/clients.  It is those absent customers and clients who possess whatever potential claims that might exist; it is they who would have to apply for payment in a claims administration if there were a recovery here, and it is they – and only they -- who have a "financial interest in the relief sought by the Class."  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii)(I)(bb).  Thus, FAFN suffered no compensable loss, let alone the greatest financial interest. *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 358 (S.D.N.Y 2002) (holding that an asset manager seeking lead plaintiff appointment must demonstrate standing to pursue claims under the Exchange Act by evidencing that it has "attorney-in-fact" authority to bring suit on behalf of its clients *at the time the action is commenced*).

Indeed, it is for this very reason that courts have held that "investors" like FAFN are disfavored and routinely rejected as lead plaintiffs under the PSLRA. *See*, *e.g., Bank One S'holders Class Action*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (finding an investment advisor atypical and inadequate because it "is not simply a buyer for its own account, standing instead in the place of whatever number of investors are participants in its managed fund"); *Turkcell*, 209 F.R.D. at 357-58 (holding that an investment advisor lacks standing to claim client's financial interest); *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 573, 580 (D.N.J. 2001) (finding that plaintiff whose actual stock ownership was in question lacked standing to assert claims on behalf of shareholders); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999) (denying investment advisors' motion).

In *Bank One S'holders,* the court reasoned that investment advisors do not suffer compensable losses because they are not "simply a buyer for its own account, standing instead in the place of whatever number of investors are participants in its managed fund.... [T]his Court does not view that posture as qualifying [Movant] for the 'most adequate plaintiffs' desigation ....." 96 F. Supp. 2d at 784. Here, too, FAFN was not buying for its own account, it has not provided any evidence (*i.e.*, investment agreements from its individual clients); and it failed with their moving papers to demonstrate express attorney-in-fact authority from its clients *to file a*

***lawsuit and/or move for lead plaintiff*** on behalf of its clients for the losses its clients suffered ***prior*** to filing its motion. *See id.*; *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-35 (D. N.J. 2002) (reducing an investment advisor's claimed losses from $2.1 million to $310,000, representing the difference between its claimed interest and those the advisor actually had evidenced standing to claim).   A money manager such as FAFN has standing to bring suit for its clients only "if it is authorized to act as attorney-in-fact with unrestricted decision making authority for the funds at issue." *Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007); *Accord Weinberg v. Atlas Air Worldwide Holdi*ngs, Inc., 216 F.R.D. 248**,** 255 (S.D.N.Y. 2003) (same); *Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. 2005).   However, "a client's grant of authority to an investment manager to purchase stock on his or her behalf ***does not also confer authority to commence suit on his or her behalf.*"** *Weinberg*, 216 F.R.D. at 255 (citing *Smith,* 206 F. Supp. 2d at 634-35) (emphasis added).   Indeed, nothing in the submission of FAFN evidence standing, ***at the time they moved to be appointed a lead plaintiff group***, to claim a pecuniary interest on behalf of the others it purports to represent in this case – a failure fatal to this so-called "groups" application. *See id*. at 634-36.[3]

FAFN did not submit proof of its authority with its lead plaintiff motion because it did not possess it.   FAFN, however, was required to provide evidence that it had power of attorney or other documentary evidence of authority to maintain this action or make a lead plaintiff motion on behalf of the stock's beneficial owners. *In re Optionable Securities* Litigation, 1:07-cv-03753-LAK, Oct. 31, 2007 Order, Miller Decl. Ex. C.   Even a PSLRA certification -- had FAFN even provided one, which it did not – would be insufficient to demonstrate its authority.   *In re Optionable Sec*. Litig., 1:07-cv-03753-LAK, Oct. 16, 2007 Order, Miller Decl. Ex. D   (citing *Weisz v. Calpine*, 2002 U.S. Dist. LEXIS 27831 , *23-24 (S.D.N.Y. Aug. 19, 2002).

As became clear in the April 10, 2008 status conference held before this Court, FAFN did

---

[3] At the very least, the Court should allow limited discovery on the questions raised herein regarding FAFN's adequacy. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv); *In re Network Assoc.*, 76 F. Supp. 2d at 1027 (discovery into the adequacy of investment manager allowed).

not have such authority at the time it made its motion to serve as lead plaintiff.  Counsel for FAFN/Slater stated that authorization for this suit "***will be executed… after checking with the beneficial owners to make sure they wanted First Affirmative to pursue the loss in this forum…. By the time the opposition comes in, it will be done.***"  *Id*. (emphasis added). Unfortunately, the time to have authority from these numerous disparate clients, the need foe which is admitted by FAFN's conduct in belatedly trying to obtain them, was ***before*** purporting to act on their behalf.  It is simply too late to attempt to manufacture *post facto* "legal authority" that FAFN and its counsel lacked when they made the motions.  FAFN had no authority when it filed this motion and this fatal defect cannot be cured now.  Furthermore, FAFN's apparent desire to, *post facto,* obtain the requisite authority to bring lawsuits from its customers is too little too late.  That authority needed to be obtained ***before*** FAFN made an unauthorized motion before this Court.  Since it had no authority to make the motion claiming the losses of its clients, the FAFN/Slater Group's motion, in it entirety, is null and void.  *See, e.g., In re Cardinal Health Inc. Sec. Litig.,* 226 F.R.D. 298, 311 (S.D. Ohio 2005) (failure to provide proof that one is acting as attorney-in-fact over account in bringing suit subjects one to unique defense); *Weisz v. Calpine Corp.,* No. C02-1200-SBA, 2002 U.S. Dist. LEXIS 27831, at *22 (N.D. Cal. Aug. 19, 2002) (failure of proposed lead plaintiff to provide evidence that it is authorized to bring suit renders it inadequate); *In re Peregrine Sys., Inc. Sec. Litig.,* No. 02-cv-870-J (RBB), 2002 U.S. Dist. LEXIS 27690, at **56-7, 60 (S.D. Cal. Oct. 9, 2002) (failure to provide authority to sue was fatal to appointment as lead plaintiff).

    FAFN's counsel's attempts to obtain authority and submit it now is tantamount to making a new motion for lead plaintiff and that new motion is time-barred.  Indeed, "[t]he plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed ***after*** the sixty (60) day window has closed." *Telxon*, 67 F. Supp. 2d at 818.  Courts strictly construe the 60-day deadline so as not to "render the strict timeliness set forth in the PSLRA meaningless" and thwart "Congress's attempt to expedite the lead plaintiff appointment process." *Id*. at 819; *Lax v. First Merchants Acceptance Corp.,* Case

No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at **12-14 (N.D. Ill. Aug. 6, 1997). Thus, without exception, "*[a]ll* motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action." *Telxon*, 67 F. Supp. 2d at 818.  Given the strictures of this rule, courts have repeatedly rejected bids to amend or correct defects in the initial lead plaintiff submissions after the sixty (60) day deadline. *Id.* at 819 (refusing to consider larger losses based on expanded class period in complaint filed by movant after the 60-day period had elapsed, because "supplementation [of a claimed loss] is not contemplated by the PSLRA"); *Switzenbaum v. Orbital Sciences Corp.,* 187 F.R.D. 246, 250 n.5 (E.D. Va. 1999) (refusing to allow a group to enhance its losses by adding members after the deadline had passed); *Singer v. Nicor, Inc.*, 02 C 5168, 2002 U.S. Dist. LEXIS 19884, at **7-9 (N.D. Ill. Oct. 16, 2002) (refusing to consider proposed lead plaintiff's "amended motion," brought to correct a "'mathematical miscalculation'"); *Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 U.S. Dist. LEXIS 22059, at **5-7 (N.D. Cal. Dec. 14, 2001)(refusing to appoint late-filing movant with "by far the largest financial interest in the relief sought by the class").[4]

Furthermore, "[w]hile some courts have permitted investment managers to serve as lead plaintiffs, those courts generally have required showings that such money managers qualify as a single person under the Reform Act." *Smith*, 206 F. Supp. 2d at 634.  In *Smith*, the court declined to appoint an investment manager as lead plaintiff, even though it had the greatest losses, because the investment manager merely provided separate account services for diverse, unaffiliated investors and did not "submit[] any evidence that it received permission to move on its clients' behalf." *Id.*  Given the absence of evidence establishing that its investors otherwise acted as a "single person," the court concluded that the investment manager was not a suitable lead plaintiff. *Id.*.  *See also In re eSpeed, Inc. Sec. Litig.,* 232 F.R.D. at 98 ("[T]he transactions in question must have been executed as if by a single person.").  According to counsel for

---

[4] The 60-day period for moving to be appointed lead plaintiff is absolute. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-19 (N.D. Ohio 1999); *In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000). No exception exists, even where, as here, a class period has been expanded by a subsequent complaint.  *See Telxon*, 67 F. Supp. 2d at 818.

FAFN/Slater, the shares FAFN is attempting to use to secure lead plaintiff status are drawn from at least two different brokers, one who represents a family, and the other who handles "several" clients who are beneficial owners of MuniMae stock.  Miller Decl. Ex. A.  Therefore, FAFN cannot demonstrate it qualifies as a single person because the multiple accounts were, in fact, handled by different money managers at FAFN.  Therefore, a separate basis to deny FAFN lead plaintiff status is its lack of a "single person" identity with respect to the transactions at issue in this case.  Rather, because FAFN merely manages its clients' funds, it does not have a "financial interest in the relief sought by the class" as is required by the PSLRA.  It is FAFN's various brokers' numerous individual clients who suffered losses from the purchase of Muni Mae securities.  Under such circumstances, a money manager cannot step into its clients' shoes for the purposes of the PSLRA or the federal securities laws.  *See Warth v. Seldin*, 422 U.S. 490 (1975); *Turkcell*, 209 F.R.D. at 357-58 (holding that an investment advisor lacks standing to claim client's financial interest); *Smith*, 206 F. Supp. 2d at 633-34 (same).

Similarly, Kevin Slater, the representative of the other two members of FAFN/Slater Group, TK and Kendall, purports to bring this action on behalf of two accounts which were revealed in the status conference to be his mother's.  Slater too has failed to provide evidence that he is authorized to bring this suit on her behalf and/or that he has any personal financial interest in the outcome of this case. Nevertheless, his declaration misleadingly states, in first person, that: "I [Kevin Slater] suffered a substantial loss." But the group's attorney recently conceded in court that the losses were suffered by Slater's mother.  Miller Decl. Ex. A, p. 15.  As in *Smith*, "nothing before the Court even indicates that the members know that this action has commenced." *Id.*  Moreover, the courts in this District have taken a hash view of representing ownership in shares to be appointed a lead plaintiff when those shares are not actually owned by the movant.  In *In re NYSE Specialists Securities Litigation*, 240 F.R.D. 128 (S.D.N.Y 2007), Judge Sweet decertified a lead plaintiff because it was shown the lead plaintiff did not own the shares it had claimed at the lead plaintiff motion stage.  *See id.,* at 139.  Refusing to allow that former lead plaintiff to be re-appointed by substituting the correct party in interest, the court

held, not only that such post-deadline correction was improper, *id.,* at 139, but more to the issue here, that:

> In addressing the initial motions for lead plaintiff in this action, it was acknowledged that "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class." *Pirelli* [*Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.]*, 229 F.R.D. [395], 416 [(S.D.N.Y. 2004)] (citing *Savino* [*v. Computer Credit, Inc.*], 164 F.3d [81], 87 [(2d Cir. 1998)]; *Kline [v. Wolf*], 702 F.2d [400,] 403 [(2d Cir. 1983)]
>
> *                *                *
>
> Despite Martin's efforts to minimize the significance of his actions, the failure of Martin and Empire NJ to have the complaint and lead plaintiff motion in this action filed by the entity which actually purchased shares during the class period is not inconsequential. *See In re* [*Initial Public Offering Sec. Litig.*, Nos. 01 Civ. 9741, 01 Civ. 10899, 2004 U.S. Dist. LEXIS 26000, 2004 WL 3015304, at *7 (S.D.N.Y. Dec. 27, 2004)] ("a failure to offer a lead plaintiff who purchased shares during the class period [] is not an 'inconsequential pleading error'"). Martin has also repeatedly submitted or caused to be submitted to this Court signed statements regarding Empire NJ's securities transactions during the proposed class period and Empire NJ's ownership of the claims asserted in this consolidated action, the validity of which have been called into question.

*Id.,* at 144.

    Here, in addition to FAFN claiming authority it did not have over shares it did not own, and then attempting to cover-over that fatal defect by obtaining *post facto* authorizations, Mr. Slater has claimed losses that were not his, but which were, at best, those of the companies he has identified, and at worst, his mother's, who has not stepped forward.  In any event, neither FAFN nor Slater have the ability to personally pursue the claims here and, therefore, cannot serve as lead plaintiff.

### 2.    Failure to Provide Required PSLRA Certifications Is Fatal

    FAFN/Slater Group's failure to provide certifications is a direct violation of the PSLRA and is fatal to FAFN/Slater Group's ability to represent the Class.  15 U.S.C. §77z-1(a)(2)(A) ("Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint.")

> The purpose of the certification is "to ensure more effective representation of investors in securities ... class actions by transferring control of the litigation from

the attorneys to the investors.*"* **"Failure of the named plaintiff to file a
certification with the complaint ... [is] fatal to maintenance of the putative
class action."**

*In re Eaton Vance Corp. Sec. Litig*, 219 F.R.D. 38, 42 (D. Mass. 2003) (denying certification of a
class where the only named plaintiff to purchase shares in a fund failed to provide a certification
with his complaint and was therefore precluded from serving as a class representative.) (citations
omitted).

Rather than filing the required sworn PSLRA certification, Mr. Slater instead put in a
declaration that purports to address ***some of the issues*** that the PSLRA requires be sworn to the
PSLRA certification.  Somewhat disturbingly, he avoids others.  For instance, Slater does *not* say
the list of transactions attached to ***his lawyer's*** declaration are all of the purchases and sales of
MuniMae stock made during the Class Period by him, his companies, other companies or
accounts he controls, or his mother.  Nor does he even state that he has listed all the transaction
in the two accounts he purports to control.  As a result, it is impossible, even assuming Mr. Slater
could aggregate KT and Kendall's accounts, and claim authority to sue for those accounts that he
has chosen to proffer, to determine whether trades in other accounts may have resulted in lower
losses than Mr. Slater claimed – or even a gain.  He further fails to agree to one of the most basic
responsibilities of a class representative, *e.g.*, willingness to be deposed, and fails to indicate he
will not seek or accept any payment for his services as a plaintiff beyond his *pro rata* share of a
recovery to the Class.  *See* 15 U.S.C. §78u-4(a)(2)(A)(vi).  The omission of these critical
undertakings by Mr. Slater (as well as FAFN) mandate disqualification.

The omission of a sworn certification making all of the requisite representations is especially
troubling in light of Mr. Slater's extensive history as a frequent proposed lead plaintiff for the
Wolf Haldenstein firm.  Indeed, by moving in various differing capacities, Mr. Slater appears to
have avoided exceeding the statutory cap on the number of times an individual may serve as lead
plaintiff.  For example, as a client of the Wolf Haldenstein firm, Mr. Slater made this motion in
his own name.  Previously, however, in his capacity as "manager of KT Investment, LLC," Mr.
Slater: (1) filed a complaint against Garrett Thornburg, *et al*. (Miller Decl. Ex. E) (case currently

pending); (2) moved for lead plaintiff as part of the Turcot Family/KT Investments Group in *KT Investments, LLC v. Michael Strauss et. al.*, 2:07-cv-03388-TCP-ETB (E.D.N.Y) (hereinafter "AHM Litigation") (Miller Decl. Ex. F), (lead plaintiff motion denied); (3) served as lead plaintiff in *In re Bausch & Lomb, Inc. Sec. Litig.*, Master File No. 01 CV (W.D.N.Y.)(Miller Decl. Ex. G); (4) filed a derivative action on behalf of Washington Mutual (Miller Decl. Ex. H) (litigation pending); and (5) filed *Slater v. Central Parking Corporation* in his own name (Miller Decl. Ex. I).

In the AHM Litigation, Mr. Slater filed a declaration "as Manager of KT Investments, LLC" in support of the Turcot Family/KT Investments Group's motion for appointment as lead plaintiff, declaring: "*I am the manager of KT Investments, LLC ("KT Investments") a substantial institutional investor that manages a family trust.*   KT Investments, under my direction, manages real estate assets and various types of securities.  *I am a licensed attorney though I do not actively practice….KT investments directed its longstanding counsel Wolf Haldenstein* to investigate the circumstances surrounding AHM's precipitous decline and necessity to seek protection in bankruptcy."   Miller Decl. Ex. J at p. 2.   The Declaration continues, "[s]ubsequent to filing this action and executing the Certification, I contacted the Wolf Haldenstein firm concerning the perceived malfeasance in Thornburg Mortgage Inc.  Mr. Nespole and his colleagues investigated the situation and we elected to proceed with a claim.  As of this time, *I do not intend to move for lead plaintiff in that action and, instead, focus my energy on this case*."  *Id*., at 3.  This declaration raises a number of important questions that have not been answered by Mr. Slater here,  For instance, since Mr. Slater indicates that he is a licensed attorney, and since he failed to provide a PSLRA certification, would he expect to be tasked with and compensated for legal work in this case were he appointed lead plaintiff, in addition to receiving his *pro rata* share of any recovery, despite the fact that he has admitted he does not "actively practice?"  If so, who would control the allocation of work and fees – the lead plaintiff as co-counsel, or lead counsel who is supposed to be under the control of the lead plaintiff?   These types of thorny questions have led courts in this District to deny class

certification based on the ethical obligation of a lawyer to "avoid even the appearance of professional impropriety." *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 330 (S.D.N.Y. 1993). *See also id.*, at 327-330 (Finding a plaintiff lawyer inadequate under Rule 23(a)(4) where he had served and was serving as a plaintiff and co-counsel with the lawyers representing in other past and pending actions, because, *inter alia*, "[Plaintiff] has a significant financial interest in maintaining the goodwill of [his lawyers]"). In light of Mr. Slater's involvement in the WaMu derivative litigation and the other pending litigations above, as well as potentially other, undisclosed cases, and Mr. Slater's statement in the AHM Litigation that he prefers "focus my energy" on a single case, what has changed such that it would now be appropriate for him to juggle multiple litigations?

### 3. The Failure of FAFN and Mr. Slater To Provide Records Of All Accounts Mandates Their Rejection As Lead Plaintiff

Additionally, it is clear that FAFN and Mr. Slater have investment authority over more than the accounts that they have provided to the Court for consideration. Without disclosing whether other customers of Mr. Slater and FAFN also purchased MuniMae shares and whether those customers continue to hold MuniMae shares, the Court cannot find them adequate to represent the Class here. In *In re Gibson Greetings Securities Litigation*, 159 F.R.D. 499 (S.D. Ohio), the court denied class certification to a money managers because of conflicts between the money manager's investments in Gibson stock and his customers investments in those shares, finding that his fiduciary duties to his customers to protect their investment and his fiduciary duty as a class representative to obtain the greatest possible recovery conflicted, rendering him inadequate. *See id.* at 501. Similarly here, FAFN and Mr. Slater have "cherry picked" the accounts and information they have disclosed. Without full and complete detail of all investments in MuniMae in all accounts held at FAFN and by the various Slater-related persons and entities, there is no way to demonstrate that, as is required under Fed. R. Civ. P. 23, that these movants do not have antagonisms and conflicts with other members of the Class rendering them unfit under the PSLRA to serve as lead plaintiffs.

### B. The Rawden Group Has Conceded It is Not the Most Adequate Plaintiff and Three of Its Members Have No Loss Causation and Have No Damages

The Rawden Group has effectively abandoned their effort to be appointed lead plaintiff here. Three of the four members of the Rawden Group, Beth Rawden, the Richard/Liz Bordow Living Trust, and Niel Nielsen **sold all** of their MuniMae shares in the period **prior** to the Company's first corrective disclosure on January 28, 2008.[5]  Persons who sold stock prior to the single disclosure causing the drop in share price are unlikely to be able to show loss causation under *Dura Pharm.*, 544 U.S. 336 (2005).  Such persons have no claim and, therefore, are not Class members and cannot serve as lead plaintiffs. *See Brooks v. Interlink Electronics, Inc*., CV 05-8133 PA (SHx), Order (C.D. Cal. July 17, 2006)(refusing to appoint lead plaintiff movant with largest alleges losses because the movant had sold all of its shares before the disclosures associated with the harm alleged in the action) Miller Decl. Ex. J.  This, of course, also constitutes a unique defense making them unable to satisfy the typicality requirement of the PSLRA.  *See In re Veeco Instru., Inc*., 233 F.R.D. 330, 334-35 (S.D.N.Y. 2005) ("Decatur sold all its stock … prior to the issuance of the curative disclosure…. Under the reasoning of the United States Supreme Court in [*Dura*], I question whether Decatur Plan can prove loss causation -- or, for that matter, loss. The Decatur Plan is, at the very least, subject to a unique defense to which Steelworkers is not subject.").

The Supreme Court in *Dura* made clear that a plaintiff who has sold its shares before the truth was revealed to the market has suffered no loss and in fact, may have gained from the alleged fraudulent activity. 125 S.Ct. at 1631-32.  "*While the Dura Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when*

---

[5] According to the trade data, the Rawden Group supplied, Beth Rawden sold all of her shares between December 4, 2007 and December 10, 2007; The Richard/Liz Bordow Living Trust sold all of its shares between October 24, 2007 and January 17, 2008; and Niel Nielsen sold all of his shares between August 16, 2005 and June 25, 2007.  Felderman Declaration to the Rawden Group's Opening Motion ("Felderman Decl.") Ex. A and Ex E.  These sales consisted of each of these three members' **entire** MuniMae position prior to the revelation of the truth on January 28 and January 29, 2007.

*selecting a lead plaintiff*." *In re Comverse Tech., Inc. Sec. Litig*, 2007 U.S. Dist. LEXIS 14878, *13 (E.D.N.Y. March 2, 2007) (citations omitted) (emphasis added). In determining the group with the greatest financial interest, the calculation must be limited to *recoverable* losses. *See id.* at 22. The sale here of all of their MuniMae securities before January 29, 2008 eliminates any basis for these members of the Rawden Group to claim a recoverable loss. *See, e.g., In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522, 2006 U.S. Dist. LEXIS 25819, at * 27-28 (N.D. Cal. May 3, 2006) (no loss causation for those plaintiffs who purchased and sold stock at the inflated price prior to the corrective disclosure) (citing *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1026 (9th Cir. 2005)); *In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 918-20 (E.D. Mich. 2005) (no loss causation where plaintiffs traded in and out of stock but did not hold any stock 5 months before the disclosure, holding that "[i]f an investor sells its stock 'before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.'"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003); *Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.,* 74 F. Supp. 2d 352, 361-62 (S.D.N.Y. 1999).

While some courts have found that loss causation may still be shown in the event of a partial disclosure (*see, e.g. Weiss v. Friedman, Billings, Ramsey Group, Inc., et al.*, 2006 U.S. Dist LEXIS 3028 (S.D.N.Y. 2006)), no such disclosures are alleged in the complaints in this action. The revelation of the truth came at the end of the Class Period in back-to-back disclosures on January 28 and January 29, 2008. Nor could any such "partial" disclosures be alleged in an amended pleading. The below stock chart, reflecting the price of MuniMae common stock during the relevant time period, demonstrates graphically that this is not a case where the truth emerged in a series of partial disclosures. To the contrary, here, the truth was not revealed until January 28-29, 2008, at which point the stock straight-line plummeted. Gelmist Complaint at ¶118; Rothas Complaint at ¶48.



Thus, because Beth Rawden, the Richard/Liz Bordow Living Trust, and Niel Nielsen sold all of their shares *prior* to the Company's late January corrective disclosures at the end of the Class Period, those three members' claimed losses cannot be linked to the misrepresentations alleged in this action.  These issues render the Rawden Group incapable of representing the Class in this Action.

Without these three members, the Rawden Group is left with only Joseph Rawden.  Joseph Rawden's purported losses of $379,623.52, which are lower than the losses of the Kremser Group and Mr. Kremser himself, and, unlike, Mr. Kremser, Mr. Rawden did not make a timely motion, even in the alternative, to be appointed individually as lead plaintiff. Therefore, the Rawden Group is not the presumptive lead plaintiff.

     **D.**     **"MMA Investors" Loss Calculation Is Wrong**

          **1.**     **Prices in Daryl Bonyor's Certification Are Inaccurate**

The trade information sworn to as part of Daryl Bonyor's PSLRA certification is, in a number of instances, facially wrong, rendering the "MMA Investors" loss calculation inaccurate. Miller Decl. K. For example, Bonyor's trades exceed the *highest* daily price or fall below the

*lowest* daily price on several occasions.  Because of these discrepancies – and the lack of source data to determine the correct figures – it is impossible to verify Bonyor's actual losses.  Courts have not hesitated to deny class certification on adequacy groups where information contained in PSLRA certifications was incorrect. *See, e.g., In re Vonage IPO Sec. Litig.*, Civil No. 07-177-FLW, 2007 U.S. Dist. LEXIS 66258, *27-*28, *30 & n.8 (D.N.J. Sept. 6, 2008) (holding proposed lead plaintiff inadequate, including because of "misinformation" stated in certification, for failure to select competent class counsel);  *In re Sonus Networks, Inc. Sec. Litig.*,229 F.R.D. 339,342-43 (D. Mass. 2005) (same).  Once Ms. Bonyor's losses of $180,486 are eliminated from the MMA Investors' claimed losses, the group's losses decline to $822,249.37, which are less than those of the Kremser Group.

## 2.    MMA Investors Is Not An Appropriate Group Under the PSLRA

"MMA Investors" purports to consist of five investors: Norman Feinberg, Robert Stark, Leonard Klorfine, Daryl Bonyor, and Alan Fetch.  To the extent that MMA Investors' losses include joint accounts of Robert and Jamie Stark, or accounts of Jamie Stark alone, Robert Stark cannot act on her behalf and, therefore, all such losses are not properly included by MMA Investors.  The omission of Jamie Stark, a necessary party, as a member of the MMA Investors, is not coincidental.  Courts have agreed "that groups with more than five members are too large to work effectively," *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001); *Berger v. Compaq Comp. Corp.,* 257 F.3d 475, 478 n.2 (5th Cir 2001); *In re Baan Sec. Lit.,* 186 F.R.D. 214, 216-217 (D.D.C. 1999) (citing the SEC's memorandum as stating "a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and lawyers ... ordinarily this should ***be no more than three to five persons***.") (emphasis added)).  By excluding Mrs. Stark as a group member (but including her losses), the MMA Investors seeks to have it both ways: inflate their losses without making their group impermissibly large.  However, they must at the very least exclude Jamie Stark's losses (which are, presumably, half of those Robert Stark's claims of $161,755), by $80,877, reducing the MMA Investors to $921,858.38 (or as low as $741,372.38 with Bonyor's trades excluded also) –

losses less than those of the Kremser Group.[6]

Furthermore, in addition to being over-sized under the PSLRA for an appropriate "group," the members of MMA Investors failed to provide evidence with their motion that they have met, discussed the case and how it will be litigated, have the ability to work together, and that they have a plan to manage this litigation effectively. *See Network Assocs.*, 76 F.Supp.2d at 1024 ("[A]n incoherent group with no decision-making apparatus would be far too unwieldy to satisfy Rule 23."). Unlike the Kremser Group's five sophisticated investors who submitted a declaration with their motion attesting to their ability and willingness to work together to manage this litigation, oversee their chosen counsel, and fulfill their responsibilities as lead plaintiff, MMA Investors is made up of five investors who signed certifications over the course of more than a month and have no apparent connection. The MMA Investors failed to submit such evidence at the outset, or any evidence that its putative members met and devised a plan for prosecution of the Action ***before*** the group was formed. *See, e.g., In re Versata*, 2001 U.S. Dist. LEXIS 24270, at *18, 25 (found that for such a "group" to qualify as a lead plaintiff, its members were required to submit a declaration regarding its members' respective individual desire to take pro-active roles in vigorously representing the class and directing counsel, and the group required a regular meeting calendar, a mechanism for emergency meetings, and a procedure to resolve disagreements between members and to avoid impasses); *In re Microstrategy,* 110 F. Supp. 2d. at 437; *In re Network Assocs,* 76 F. Supp. 2d. at 1026 (if a proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied or modified as the court sees fit)[7]. Absent evidence of

---

[6]  MMA Investors also includes losses for Klorfine Interests Ltd., but no information about the organization of this entity, its management, its purpose, or the authority of any other member of the MMA Investor Group to act on its behalf in this suit has been provided. Such information needed to be proffered when the lead plaintiff motion was made.

[7]  *See also In re Cardinal Health, Inc. Sec. Litig*., 226 F.R.D. 298, 307 (S.D. Ohio 2005)(following *Versata*); *In re Gemstar-TV Guide Int'l Inc.* 209 F.R.D. 447, 450-451 (C.D. Cal. 2002)(court refused to appoint as lead plaintiff a group with seven members, because their size made it difficult to come to a consensus in decision-making and they failed to describe procedures by which it would operate including, when and how it would meet, procedures for

cohesiveness and manageability *from the time the so-called "group" is formed*, such an aggregation of investors is not a "group" within the meaning of the PSLRA.

### 3. Counsel for MMA Violated New York Ethical Rules

In violation of the express advertising and solicitation rules of the New York State Bar Association—the Bar of the state in which The Rosen Firm maintains its principle offices—The Rosen Firm, counsel for MMA Investors, has in the past 36 months posted over 34 solicitation notices on Yahoo message boards. Section EC 2-19(b) of the New York Lawyer's Code of Professional Responsibility, dealing with advertisements or solicitations directed at or targeted to a specific recipient or recipients , specifically prohibits advertisement or solicitation "by real-time or interactive computer-based communication… unless the recipient is a close friend, relative, former client or existing client."

On January 29, 2008, The Rosen Firm posted a message on a Yahoo Business & Finance message board whose topic was Municipal Mortgage stocks. The post was entitled "INVESTOR NOTICE – Attorney Advertisement,"[8] and it indicated that The Rosen Firm was "preparing a complaint" against the Company, and asked that anyone with information that would assist in the investigation or wishing to obtain more information about the proposed class action contact the firm. The posting was signed by Larry Rosen, Esq. and Phil Kim, Esq. and listed contact information for both the attorneys and The Rosen Firm. *See* Miller Decl. Ex. L. The Rosen Firm filed the first complaint in this Action on January 30, 2008, suggesting the advertisement was successful.

Message boards are, by their very nature, interactive computer-based communication forums. Users post messages and other users respond to or comment on those messages. In the case of

---

possible "emergency" meetings, or how its members would engage in the group's decision-making process); *Bowman v. Legato Sys., Inc.,* 195 F.R.D. 655, 658 (N.D. Cal. 2000) (rejecting proposed lead plaintiff group based in part on the appearance that members of the group "were hand-picked" by a law firm "for the sole purpose of obtaining lead plaintiff status," which runs afoul of the stated goals of the PSLRA

[8]http://messages.finance.yahoo.com/Business_%26_Finance/Investments/Stocks_%28A_to_Z%29/Stocks_M/threadview?bn=11773&tid=1058&mid=1058

the message board used by The Rosen Firm for their posting, investors use the forums as a means of communicating and discussing issues related to the purchase and sale of securities. The Rosen Firm admits by the very subject line of their posting that it was advertising, and being posted on a board specifically related to the Company, the message amounts to direct solicitation of clients in a place where the attorneys should reasonably know that the specific need for their services exits.

Furthermore, the posting was in direct violation of Rule 6(g) of the Terms of Service of the Yahoo message board, which prohibits the posting of "any unsolicited or unauthorized advertising… or any other form of solicitation, except in those areas (such as shopping) that are designated for such purpose."[9]  The Rosen Firm's use of improper client solicitation in violation of the New York Ethical Rules renders the firm inadequate to serve as class counsel under Fed. R. Civ. P. 23(g).[10]

### C.     The Yates Group

The Yates Group claims losses of $757,010.65.  Even assuming these loss calculations are correct and the Yates Group is otherwise adequate to serve as Lead Plaintiff, its losses are far lower than those of the Kremser Group.

### D.     The Court Should Approve The Kremser Group's Choice of Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Thus, this Court should not disturb the Lead Plaintiffs' choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Kremser Group has selected Brower Piven and KGS to serve as proposed Lead Counsel for the Class.  These firms have not only prosecuted complex securities fraud actions,

---

[9] http://info.yahoo.com/legal/us/yahoo/utos/utos-173.html

[10]  Notably, this posting preceded the filing of any of the related MuniMae securities actions. Therefore, this posting is not protected or preempted by the notice provisions of the PSLRA, which permit business wire notification of the pendency of n action brought under the PSLRA after that action is commenced.  See 15 U.S.C. §78u-4(a)(3)(A).

but have also successfully prosecuted many other types of complex class actions.  This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, the Kremser Group respectfully request that this Court: (1) consolidate all related actions, (2) appoint the Kremser Group to serve as lead plaintiff in this action; (3) approve the Kremser Group's selection of Brower Piven and KGS as Co-Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: April 17, 2008                      Respectfully submitted,

                                           BROWER PIVEN
                                             A Professional Corporation

                                           _____/s/ David A.P. Brower_____
                                           David A.P. Brower
                                           488 Madison Avenue
                                           Eighth Floor
                                           New York, New York 10022
                                           Telephone: (212) 501-9000
                                           Facsimile:  (212) 501-0300

                                           BROWER PIVEN
                                             A Professional Corporation
                                           World Trade Center-Baltimore
                                           401 East Pratt Street, Suite 2525
                                           Baltimore, Maryland 21202
                                           Telephone: (410) 332-0030
                                           Facsimile:  (410) 685-1300

                                           -and-

                                           KAHN GAUTHIER SWICK, LLC
                                           Kim E. Miller (KM-6996)
                                           12 East 41st Street, 12th Floor
                                           New York, NY 10017
                                           Telephone:   (212) 696-3730
                                           Facsimile:   (504) 455-1498

KAHN GAUTHIER SWICK, LLC
Lewis S. Kahn
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for the Kremser Group and
Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on April 17, 2008.


                    /s/ Kim E. Miller
                    Kim E. Miller