**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiffs and Class

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSEPH S. GELMIS, INDIVIDUALLY AND ON BEHALF     CASE No.: 08-CV-980 (RMB)
OF ALL OTHERS SIMILARLY SITUATED,

        Plaintiff,

        vs.

EARL W. COLE, III, MICHAEL L. FALCONE,
WILLIAM S. HARRISON, MARK K. JOSEPH, MELANIE
M. LUNDQUIST, GARY A. MENTESANA, ROBERT J.
BANKS, CHARLES C. BAUM, RICHARD O. BERNDT,
EDDIE C. BROWN, ROBERT S. HILLMAN, DOUGLAS A.
McGREGOR, ARTHUR S. MEHLMAN, FRED N. PRATT,
JR., and MUNICIPAL MORTGAGE & EQUITY, LLC,

        Defendants.

------------------------------------------------------------------------X
[caption continues]

**MMA INVESTORS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINIFF MOTION AND IN OPPOSITION TO COMPETING MOTIONS**

<u>CLASS ACTION</u>

------------------------------------------------------------------------X
JULES ROTHAS, Individually and on Behalf of All Others                  CASE NO. 08-CV-01120 (RMB)
Similarly Situated,

       Plaintiff,                    CLASS ACTION

       vs.

MUNICIPAL MORTGAGE & EQUITY, LLC, MARK K.
JOSEPH, MICHAEL L. FALCONE,
WILLIAM S. HARRISON, and DAVID B. KAY,

       Defendants.
------------------------------------------------------------------------X

------------------------------------------------------------------------X
ARNOLD J. ROSS, Individually and on Behalf of All Others                CASE NO. 08-CV-1299 (RMB)
Similarly Situated,

       Plaintiff,                    CLASS ACTION

       vs.

EARL W. COLE, III, MICHAEL L. FALCONE,
WILLIAM S. HARRISON, MARK K. JOSEPH, and
MUNICIPAL MORTGAGE & EQUITY, LLC,

       Defendants.
------------------------------------------------------------------------X

------------------------------------------------------------------------X
ALEX D'ANGELO, Individually and on Behalf of All Others                 CASE NO. 08-CV-01331 (RMB)
Similarly Situated,

       Plaintiff,                    CLASS ACTION

       vs.

MUNICIPAL MORTGAGE & EQUITY, LLC, MICHAEL L.
FALCONE, WILLIAM S. HARRISON, EARL W. COLE,
III, MARK K. JOSEPH, and MELANIE M. LUNDQUIST,

       Defendants.
------------------------------------------------------------------------X

*[Caption continues]*

```
-----------------------------------------------------------------------X
NAOMI RAPHAEL, Individually and on Behalf of All Others    CASE NO. 08-CV-02190 (RMB)
Similarly Situated,

                Plaintiff,                                 CLASS ACTION

        vs.

MUNICIPAL MORTGAGE & EQUITY, LLC, MARK J.
JOSEPH, MICHAEL L. FALCONE, WILLIAM S.
HARRISON, MELANIE M. LUNQUIST, DAVID B.
KAY,CHARLES C. BAUM, EDDIE C. BROWN, ROBERT
S. HILLMAN, ARHTUR S. MEHLMAN, and FRED N.
PARATT, JR.

                Defendants.
-----------------------------------------------------------------------X
```

**PRELIMINARY STATEMENT**

Plaintiffs Norman Feinberg, Robert W. Stark, Leonard Klorfine, Daryl Bonyor, and Alan Fetch (collectively "Movants" or "MMA Investors") respectfully submit this Reply Memorandum of Law in Further Support of their Lead Plaintiff Motion and in Opposition to the four other competing lead plaintiff motions.

The MMA Investors have the largest financial interest of any of the four other competing lead plaintiff groups that has made a *prima facie* demonstration of the group's typicality and adequacy. The two movants that claim greater financial interests are not appropriate lead plaintiffs. The FAFN/Slater group has no standing because its members never submitted any proof of their authority to represent the beneficial owners who actually suffered the losses. The Rawden Group, has effectively withdrawn its motion,[1] inflated its losses by over double by including losses on "in-and-out" trades for which they

---

[1] The Rawden Group filed a response to the competing lead plaintiff motions on April 17, 2008, conceding it did not have a larger financial interest of as compared to the FAFN/Slater Group. However, the response stated that in the event the FAFN/Slater Group is not appointed Lead Plaintiffs, the Rawden Group "stands ready, willing, and able" to serve as Lead Plaintiff.

suffered no compensable loss. Thus, the MMA Investors have the largest financial interest amongst the remaining movants, as summarized below.

| Movant | Approximate Losses as Claimed by Each Movant |
|---|---|
| 1.   ~~FAFN/Slater Group~~ | ~~$1,454,865.~~89 Lacks Standing/Inadequate |
| 2.   ~~Rawden Group~~ | ~~$1,324,322.17~~ 100% inflated loss/ "in-and-out" |
| **3.   MMA Investors** | **$1,002,735.38** |
| 4.   Kremser Group | ~~$924,138.87~~[2]  $792,258.87 or $664,109.41. |
| 5.   Yates Group | $757,010.65 |

Moreover, the MMA Investor group is the most adequate group because it is a cohesive unit and can act independently to oversee this action, as evidenced by the group's declaration previously filed with the Court. As explained in their opening papers, each of the members of the MMA Investors is adequate and his or her claims are typical. Thus, the MMA Investors are entitled to presumption that they are the "most adequate plaintiffs." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Heedless of the facts and law, the Kremser Group puts forward scattershot arguments in a misguided effort to rebut the presumption of adequacy favoring the MMA Investors; such as the suggestion that certain members *might* not have authority to pursue the litigation or the absolutely unfounded accusation that MMA Investors' counsel violated New York ethics rules. The Court should dismiss the Kremser Group's false rumor-mongering as nothing more than distractions from the main issues at hand.

Other movants attempt to hedge their bets and suggest that if the Court won't appoint their group for having the largest financial interest, then it should break apart the groups and appoint an individual

---

[2]  This figure represents the Kremser Group's initially reported losses of $924,138.87. These losses are inflated, as they included shares purchased outside of the Class Period alleged in the first-filed action among all actions. Mr. Kremser and Mr. Kornfeld included purchases of 29,000 shares made on January 29, 2008. While some movants filed complaints that alleged class periods inclusive of January 29, 2008, the January 28, 2008 disclosure was the "corrective disclosure" for the purposes of the fraud-on-the-market presumption of reliance. Omitting these shares, the Kremser Group suffered losses of $792,258.87. In any event, the approximate losses initially reported by the Kremser Group are still less than the MMA Investors' losses. As noted by another movant, if losses for "in-and-out" trades are removed as well, which they should be, then the Kremser Group's losses are even smaller, at $664,109.41. *See* Yates Group Opp., at p. 15 (Docket No. 44).

member as lead plaintiff. However, these movants cannot have it both ways. A group cannot argue that it is a cohesive unit on the one had, yet on the other hand, be ready and willing to abandon their group to be appointed as a sole lead plaintiff. Cohesive means well-integrated or unified. This either-or strategy runs afoul of the letter and spirit of the PSLRA and renders meaningless these groups' assertions of cohesiveness. Because the MMA Investors has the largest financial interest of any group that has demonstrated standing to pursue this action, the Court should appoint MMA Investors as Lead Plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**ARGUMENT**

**I.      THE FAFN/SLATER GROUP IS INADEQUATE**

As noted in the MMA Opp.[3], under applicable Southern District caselaw, FAFN must make a showing that it has unrestricted decision making authority with attorney-in-fact powers from the beneficial owners of MMA stock in order to have standing to pursue this litigation. *See* MMA Opp. at 6-7.[4] FAFN has never submitted *any* evidence of authority from the FAFN clients who suffered the losses in MMA stock. As a result, the Court should infer the FAFN clients never gave their authority to FAFN to prosecute this lawsuit on their behalf.

First, at the April 10, 2008 hearing, FAFN's counsel admitted he was not sure if written powers of attorney were executed as of that date, which in itself is fatal. *See* Kim Decl.,[5] Ex. 1, pp. 28:17-29:13. Second, at the same hearing, FAFN's counsel promised that evidence of authority would be obtained

---

[3]     All references to "MMA Opp. at __" herein refer to the Memorandum of Law filed by the MMA Investors. Docket No. 42.

[4]     *Weinberg v. Atlas Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003); *Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007); *see also In re eSpeed, Inc. Secs. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005) ("In order for an investment advisor to attain standing on behalf of investors[,] the transactions in question must have been executed as if by a single person. Moreover, the advisor must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients."); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp.2d 627, 633-34 (D.N.J. 2002).

[5]     All references to "Kim Decl., ___" herein refer to the Reply Declaration of Phillip Kim filed herewith.

"[b]y the time the opposition comes in." *See* Kim Decl., Ex. 1, pp. 29:2-13. The required evidence[6] has not been proffered as promised.

Third, the Court should infer that FAFN never held authority from some or all of its clients that are the beneficial owners of MMA stock when it moved to serve as lead plaintiff. FAFN's proposed counsel are experienced securities lawyers, and are aware of the requirement to make an evidentiary showing of proper authority. Yet, in the Declaration submitted by Mr. Gay, FAFN's CEO, there is absolutely no description of FAFN's authority, discretion, or attorney-in-fact power to act for the beneficial owners. Also missing was any descriptive information about the beneficial owners (FAFN clients) who suffered losses in MMA stock, the number of advisors who represent those clients, or any other identifying information from which proper authority might be demonstrated. *See* MMA Opp. at 7.

This is no surprise. Unlike a typical investment advisor, FAFN is merely a loose confederation of otherwise independent investment advisors who can join the FAFN network with varying degrees of affiliation and authority. *See* Kim Decl., Ex. 2. Virtually any person can join FAFN by simply paying FAFN an annual fee at three different membership levels. The first level is called the "Subscriber Member Services". *Id.* This subscription level appears to be merely an agreement to use some of FAFN's infrastructure and client lists. *Id.* Another level is a called the "Selling Member Services", which includes all items from the Subscriber Member level along with a listing on the Company's website, sales leads, and the like. *Id.* This level allows members to place asset management business with FAFN through the subscriber's own broker-dealer or registered investment advisor. The next level is "IAR Member Services". This stratum of "membership" includes the items of the two previous levels, and additionally, and only at this level, is all fee business done through FAFN and supervised by FAFN staff. *Id.*

---

[6] *Weinberg*, 216 F.R.D. at 255 (relying on signed declaration from the investment advisor stating that he is "the attorney-in-fact for its clients with full power to bring suit for their investment losses."); *In re EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp.2d 435, 441 (W.D. Pa. 2001).

It is noteworthy that such differences exist between and amongst the many beneficial owners of MMA shares and *their* disparate investment advisors that FAFN now seeks to pool together and represent. At the April 10, 2008 hearing, FAFN's counsel referred to one of the representatives as merely a "rep" or representative, and the other as a "broker." *See* Kim Decl., Ex. 1, p. 30:20-31:1. Thus, it can be inferred that the beneficial owners of MMA stock are customers of differently tiered representatives of FAFN, and that certain of these representatives operate at membership levels over which FAFN has no authority or control. In essence, it appears that a substantial portion of the MMA shares FAFN seeks to represent are held by clients of FAFN members who are not registered investment advisers with FAFN – demonstrating that FAFN has no authority or control over the members' clients or the MMA shares they hold. Without proper authority over the client accounts, FAFN has no standing to pursue this litigation as a lead plaintiff.[7]

Moreover, since FAFN has never provided information as to the specific level of membership the subject representatives and brokers have within FAFN and has never described the number and identities of the clients these brokers or advisers purport to represent, the Court not determine whether the "representatives" or "brokers" and each of their clients are sufficiently in privity with FAFN. Absent privity, FAFN cannot serve as lead plaintiff. *See Weinberg*, 216 F.R.D. at 255 (explaining that without evidence of privity, a defendant would not have res judicata effect from conclusion of suit, thus under Fed. R. Civ. P. 17(a), the real parties in interest must be named) (citing *Ezra*, 136 F. Supp.2d at 433)).

Moreover, Mr. Slater has never submitted proof of his actual authority to represent the two investment vehicles. Coupled with Mr. Slater's serial litigation activity with his proposed counsel as set forth in the MMA Opp. at 8-10, this glaring absence demonstrates that Mr. Slater is inadequate to serve as a lead plaintiff.

---

[7]     *See* Footnote no. 4.

Because there is no evidence before the Court that FAFN or Mr. Slater has unrestricted decision making authority with attorney-in-fact status over the beneficial owners of MMA stock with full power to bring suit, FAFN and Mr. Slater do not have standing to sue, let alone to serve as lead plaintiffs.

## II. THE RAWDEN GROUP'S LOSSES ARE INFLATED BY OVER 100% THROUGH REPORTING OF "IN-AND-OUT" TRADES

As noted in the MMA Opp. at 10-13, the Court must exclude the "in-and-out" losses of two members of the Rawden Group in their loss calculation because these losses are not compensable damages under §10(b). This reduces the Rawden Group's losses to $613,925.64, an amount that would put the Rawden Group's losses at the *lowest* level amongst the competing movants. A recent opinion in the Northern District of California exemplifies the pitfalls of appointing a complete "in-and-out" trader as a lead plaintiff. In *In re Impax Laboratories, Inc. Secs. Litig.*, 2008 WL 1766943 * 7 (N.D. Cal. Apr. 17, 2008), the court had appointed a complete "in-and-out" trader as lead plaintiff – prior to the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005). At the motion to dismiss stage, Defendants argued that the lead plaintiff purchased and sold all of its shares before any corrective disclosures and hence could not have suffered any compensable losses under *Dura*. The *Impax* court agreed and held that the lead plaintiff suffered no loss and had no standing in the action. 2008 WL 1766943 at * 7. Thus, the Court dismissed the lead plaintiff's claims and was forced to consider a new round of lead plaintiff motions.[8] *Id.* The same would hold true in this case if the Court were to appoint the Rawden Group whose two members are complete "in-and-out" traders. Surely, when the Court later finds – as it must under *Dura* - that two of the Rawden Group's members have no damages and hence standing, there will be numerous motions to intervene in this action and another drawn out and costly lead plaintiff motion battle will ensue. There is no reason to expose the class to

---

[8] The Court appointed the lead plaintiff in *Impax* on March 21, 2005, just a month prior to the Supreme Court's ruling in *Dura* on April 19, 2005 clarifying the requirements for pleading loss causation and hence damages in §10(b) cases - which render the Rawden Group's losses non-compensable. *See, In re Impax Securities Litigation,* 04-cv-04802-JW (N.D. Cal., Docket 41, March 21, 2005).

8

such undue disruption. As such, the Rawden Group should not be considered for appointment as Lead Plaintiff.

### III.     THE MMA INVESTORS SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.     MMA Investors Are the Presumptively Most Adequate Plaintiffs

##### 1.     MMA Investors Have the Largest Financial Interest

As explained above, the two movants that asserted losses larger than the MMA Investors cannot be appointed as Lead Plaintiffs, because one (FAFN/Slater Group) lacks standing to pursue the action and is otherwise inadequate; and the other (the Rawden Group) has losses half of the what the group reported, or just $613,925.64. Thus, the MMA Investors, with compensable losses of $1,002,735.38, have the largest financial interest in the litigation.

##### 2.     MMA Investors Are a Proper Group Under the PSLRA

All of the lead plaintiff movants here agree that unrelated groups of investors may be appointed as lead plaintiffs pursuant to the PSLRA. Likewise, all movants agree that in order for a group to be appointed, there must be some evidence that the members of the group will act collectively and separately from their lawyers, *i.e.,* as a cohesive group. *In re Taragon Corp. Secs. Litig.*, 2007 WL 4302732 * 2 (S.D.N.Y. Dec. 6, 2007) ("The issue is not whether losses or holdings may be aggregated by members of the group seeking to become the lead plaintiff; indisputably, they may. But…, there must be some evidence that the members of the group will act collectively and separately from their lawyers.") (citing *Weltz v. Lee*, 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001)).

Here, the MMA Investors have made an adequate demonstration by filing a Joint Declaration with the Court explaining the group's formation, the modes of communication that have been and will be used by group members, the group's decision-making process, and each group members' awareness of their fiduciary duties. *See* Docket no. 43-2. The MMA Investors' Joint Declaration is the only declaration providing specific information as to how disputes will be settled, the specific modes of

communication available to the group (a toll-free conference call line and group e-mail lists), and the like. These facts are sufficient to demonstrate that the MMA Investors will act efficiently and effectively together, and separate from counsel, to effectively monitor the litigation.

The Yates Group,[9] without citing to any authority, claims there is a requirement that a Joint Declaration of a proposed group be filed simultaneously with the initial motion in order to be "timely." The Yates Group itself is inadequate under this reasoning because the Yates Group filed its Joint Declaration *after* the Lead Plaintiff motion deadline and is therefore "untimely". *See* Docket no. 32. More importantly, the Yates Group's focus on form over substance is not supported by any legal authority. As noted above, the relevant question is whether a proposed group is cohesive, can act separately from counsel, and can effectively manage the litigation. The MMA Investors have sufficiently addressed these questions through their Joint Declaration. *See* Docket no. 43-2.

### 3. MMA Investors Otherwise Satisfy the Requirements of Rule 23

Because the MMA Investors have the largest financial interest and are a proper group under the PSLRA, the MMA Investors have made a *prima facie* showing of their adequacy and typicality. Therefore, the MMA Investors are entitled to a presumption as the most adequate plaintiffs pursuant to the PSRLA. 15 U.S.C. § 78u-4(a)(3)(B)(iii). As set forth below, no movant has credibly rebutted with *proof* the presumption in favor of the MMA Investors, and the Court should appoint the MMA Investors' and each of its members as Lead Plaintiffs.

### B.   THE PRESUMPTION IN FAVOR OF THE MMA INVESTORS HAS NOT BEEN REBUTTED

This presumption in favor of the MMA Investors can only be rebutted with *proof*. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculation, conjecture, and innuendo are not sufficient *proof* to rebut the

---

[9] It is noteworthy that the Yates Group consists of five members and two law firms as proposed lead counsel. It is unclear why the Yates Group retained two large plaintiffs' law firms as proposed co-lead counsel. Having two firms individually and jointly discuss, draft, and review each filing may add additional logistical obstacles to the efficient prosecution of this action.

presumption. *Constance Sczesny Trust*, 223 F.R.D. at 324 ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence ….").[10]

No proof exists to rebut the MMA Investors' adequacy other than indiscriminate arguments proffered by the Kremser Group that serve as distractions. The Kremser Group is just desperately throwing up "kitchen sink" arguments because its financial losses are far below other competing movants. Each of these alleged inadequacies is easily revealed as immaterial distractions as demonstrated below

### 1.    The Financial Interest Calculations of MMA Investors Are Accurate

The Kremser Group suggests that Ms. Bonyor's certification is facially incorrect. This assertion is without merit. Each transaction involved precisely the number of shares and prices listed in the initial certification. There are two clerical errors with respect to the date of two trades. Two purchases listed as "10/7/05" were mistyped in Ms. Bonyor's certification as "10/17/05" - an insignificant typographical error. In addition, all of the trade dates cited in her certification were listed as settlement dates; however, certain listed transactions actually reported the trade dates. To remedy these immaterial clerical errors, Ms. Bonyor has submitted herewith an amended certification providing both the settlement and trade dates for each transaction, and a chart setting forth the trade and settlement dates along with the corresponding historical stock price of MMA stock on that date. *See* Kim Decl., Exs. 3, 4. It is well settled that such minor clerical errors are of no moment and are not determinative of Ms. Bonyor's adequacy to serve as a lead plaintiff. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co., Inc.*, 229 F.R.D. 395, 407 (S.D.N.Y. 2004) (the "adequacy of any certificat[ions] submitted here will not be considered a determinative factor at this [lead plaintiff]

---

[10]    *See also Sofran v. LaBranche & Co.,* 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that PSLRA requires proof, "speculation" insufficient)*; Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006 ) (same); *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 547-48 (N.D. Tex. 1997) ("speculative assertions are insufficient to rebut the presumption" of adequacy).

stage.")[11]

The Kremser Group next suggests that the losses of Robert Stark should be discounted, or that his wife must also be a lead plaintiff because both he and she signed the certification form. This argument is without merit. As set forth in his Declaration, signed by Mr. Stark and also his wife, Mr. Stark has full authority to pursue this litigation on behalf of his and his wife's investment losses, and Mr. Stark has the authority to bind himself and his wife with respect to the claims asserted in this action. *See* Kim Decl., Ex. 5. Thus, Mr. Stark has standing, and Mrs. Stark is not a necessary party. *See Weinberg*, 216 F.R.D. at 255; *see also* Fed. R. Civ. P. 17(a).

### 2. The Family Partnership Mr. Klorfine Founded, Funded and Manages Has Standing

The Kremser Group also suggests that Mr. Klorfine does not have authority to serve as lead plaintiff on behalf of his family investment partnership, Klorfine Interests, Ltd. Mr. Klorfine is the managing general partner of Klorfine Interests, Ltd., a family limited partnership he founded and funded in 1998 for the benefit of himself and his immediate family. *See* Kim Decl., Ex. 6, ¶ 3. His wife, daughter, and son are the general partners. *Id*. He made the investment decision to buy the MMA stock set forth in his certification, and at all times he has had full discretionary authority over the partnership's investments, full authority to bring this lawsuit on its behalf and attorney-in-fact-power over the partnership. *See Id.,* ¶¶ 2-5. Thus, Mr. Klorfine's standing is not an issue. *See Weinberg*, 216 F.R.D. at 255.

### 3. The Rosen Law Firm Did Not Violate New York Ethics Rules

The Kremser Group has falsely accused the Rosen Law Firm of violating New York ethics rules

---

[11] *See also In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998) (appointed group of unrelated investors despite certification deficiencies and permitting correction of such); *In re Advance Tissue Sciences Litig.*, 184 F.R.D. 346, 351 n.12 (S.D. Cal. 1998) (same).

for posting an advertisement on an internet message board concerning MMA[12]. In truth, the New York Departmental Disciplinary Committee has specifically reviewed the posting that the Kremser Group seeks to makes an issue of, and the Committee has not taken issue with its propriety under the applicable rules. *See* Kim Decl., ¶¶10-14. Pursuant to the Firm's practice and the New York rules on attorney advertising, the Rosen Law Firm contemporaneously filed a copy of this message board posting by sending it to Sherry Cohen, Esq., of the Committee. *See* DR-103C1; Kim Decl., Ex. 7. If an advertisement is incomplete, potentially violates a rule, or is otherwise improper, the disciplinary committee will contact the attorney and will inform the attorney to remove, edit, or change the advertisement and will explain to the attorney why such action is necessary. *See* Kim Decl., ¶ 11. Here, after reviewing this specific message board posting, the Committee never suggested that the MMA internet posting was an improper "targeted" advertisement/solicitation that violated any rule. *See* Kim Decl., ¶ 14.[13] Thus, this unscrupulous, mean-spirited attempt by the Kremser Group (*$664,109.41* in losses) to leapfrog the MMA Investors (*$1,002,735.38* in losses) should not be countenanced by the Court.[14]

---

[12] The accusation by the Kremser group is disingenuous. The message board posting is no different than the practice of both the Kremser Group's proposed counsel and the plaintiffs' securities bar practice of issuing investigative announcements about *potential* class actions urging investors to join a prospective case. These investigative announcements are typically listed under company-specific pages. *See* Kim Decl., 8.

[13] Message board postings like the one at issue are available to anyone on the internet and are even searchable through search engines, and thus are not an inappropriate targeted solicitation under the rules. An illustrative example is contained in Section EC 2-19(c) of the New York Lawyer's Code of Professional Responsibility: "an advertisement by a patent lawyer is not directed or targeted within the meaning of the definition solely because the magazine is geared toward inventors. … The fact that some recipients of such advertisements might actually be in need of specific legal services at the time of the communication does not transform such advertisements into a solicitation." Indeed, the Disciplinary Committee has agreed, as no instruction has been provided to the Rosen Law Firm to cease the practice, nor has any notification has been received that the practice violates any rules. *See* Kim Dec., ¶ 14.

[14] There should be no adverse inference that a proposed lead plaintiff is inadequate because it learned of the lawsuit from a notice. The PSLRA envisions law firms soliciting clients to join litigation—indeed, it is a requirement of the statute. *See Rovner v. Vongage Holdings Corp.*, 2007 WL 446658 * 1 (D.N.J. Feb. 7, 2007) ("plaintiffs filing securities class action publish notice of the pendency of the class action to solicit prospective lead plaintiffs.") (citing *In re Cendant Corp. Secs. Litig.*, 404 F.3d 173, 194 no. 11 (3d Cir. 2005)); *see also In re Resource America Secs. Litig.*, 202 F.R.D. 177, 187 (E.D. Pa. 2001) (at class certification stage appointing class representative who chose counsel after responding to notice on internet).

Because the MMA Investors are the movant with the largest financial interest that has made a *prima facie* demonstration that it satisfies the typicality and adequacy requirements of Rule 23, and no movant has credibly rebutted the presumption in favor of the MMA Investors, the Court should appoint the MMA Investors as Lead Plaintiff.

## III.     THE COURT SHOULD NOT DISAGGREGATE THE COMPETING MOVANTS

As noted in the MMA Investors' Opp., the Court should refuse to disaggregate the lead plaintiff groups because disaggregating the groups would constitute an untimely "revised" motion under the PSLRA. *See* MMA Opp. at 15-16. Initially, the FAFN/Slater Group asserted that their's is a cohesive group with the largest financial interest. Now that FAFN realizes it has no authority to act on behalf of the real beneficial owners of MMA stock it purports to represent, the FAFN /Slater Group asks that the Court break apart their group and appoint only one of its members lead plaintiff. Logically, if a group is so willing to break apart, how can a group be considered "cohesive?" Breaking apart groups and forming new lead plaintiff movants after lead plaintiff motions have been filed is improper. Just as courts have refused to permit lead plaintiff movants to form new or larger groups after the filing of initial motions, this Court should prohibit groups from forming new and more discreet lead plaintiff movants after filing of the lead plaintiff motion.[15] As such, the Court should not disaggregate the four competing investor groups before the Court.

## CONCLUSION

For the foregoing reasons, the MMA Investors respectfully request the Court issue an Order: (1) appointing the MMA Investors and each of its members as Lead Plaintiffs of the class; (2) approving the

---

[15] *See Meyer v. Paradigm Medical Industries*, 225 F.R.D. 678, 681-82 (D. Utah 2004) (rejecting a belatedly created group; but aggregating losses); *In re XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. 13, 19-20 (D.D.C. 2006) (acknowledging groups can be appointed lead plaintiffs, but rejecting groups formed by members who had initially moved separately) (citing cases); *see also In re Nature's Sunshine Products, Inc.*, 2006 WL 2380965 *1 (D. Utah. Aug. 16, 2006) (appointing group of unrelated investors as lead plaintiffs because, inter alia, the group aggregated before motions were filed).

MMA Investors' selection of The Rosen Law Firm, P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

                                        Respectfully submitted,

Dated: April 28, 2008

                              **THE ROSEN LAW FIRM, P.A.**

                              /s/ Phillip Kim
                            Phillip Kim, Esq. (PK 9384)
                            Laurence M. Rosen, Esq. (LR 5733)
                            350 Fifth Avenue, Suite 5508
                            New York, New York 10118
                            Telephone: (212) 686-1060
                            Fax: (212) 202-3827
                            Email: pkim@rosenlegal.com
                            Email: lrosen@rosenlegal.com

                            [Proposed] Lead Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April, 2008, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ Phillip Kim